# EXHIBIT 2



**COMMERCIAL LINE OF CREDIT**  
**AGREEMENT AND NOTE**  
**Open End**

**Great Plains National Bank**  
601 NW 13th Street  
Oklahoma City, Oklahoma 73103  
(405)720-4772  
www.gpbankok.com

| LOAN NUMBER | AGREEMENT DATE | LINE OF CREDIT LIMIT | MATURITY DATE |
|---|---|---|---|
| 705244044 | December 16, 2019 | $8,250,000.00 | September 16, 2020 |

**LOAN PURPOSE:** PURCHASE LARGE QUANTITY OF DIGGING MATS

**BORROWER INFORMATION**  
CM HEAVY MACHINERY LLC  
PO BOX 309  
OKEMAH, OK 74859

**LINE OF CREDIT AGREEMENT AND NOTE.** This Commercial Line of Credit Agreement and Note will be referred to in this document as the "Agreement."

**LENDER.** "Lender" means Great Plains National Bank whose address is 601 NW 13th Street, Oklahoma City, Oklahoma 73103, its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity identified above in the BORROWER INFORMATION section who signs this Agreement.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on demand by Lender, or if no demand is made, on or before the Maturity Date, the Borrower promises to pay the principal amount of Eight Million Two Hundred Fifty Thousand and 00/100 Dollars ($8,250,000.00) or such lesser amount as shall have been advanced by Lender, from time to time, to or on behalf of Borrower under the terms of this Agreement, and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Agreement will be paid according to the following required payment schedule: Beginning on January 16, 2020, monthly payments of accrued and unpaid interest. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date unless demanded earlier. All payments received by the Lender from the Borrower for application to this Agreement may be applied to the Borrower's obligations under this Agreement in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** Interest will begin to accrue on December 16, 2019. The initial variable interest rate on this Agreement will be 5.750% per annum. This interest rate may change on December 17, 2019, and every day thereafter. Each date on which the interest rate may change is called the "Change Date." Prior to each Change Date, Lender will calculate the new interest rate based on Prime Rate as Published in the Wall Street Journal in effect on the Change Date (the "Index") plus 1.000 percentage points (the "Margin").

If the Index is not available at the time of the Change Date, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under the Agreement will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount. Interest on this Agreement is calculated on an **Actual/360** day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Agreement. The unpaid balance of this loan after the Maturity Date, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to 21.000% per annum.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5.000% of the amount past due, subject to a minimum charge of $24.00.

**LINE OF CREDIT TERMS.** The advances under this Agreement are discretionary. The Borrower acknowledges and agrees that although the Borrower may from time to time request an advance under this Agreement up to a maximum amount equal to the Line of Credit Limit, the Lender in no way is obligated to make such advance, Lender may at any time, with or without cause, refuse to extend credit, and all advances will be made by Lender in its sole and absolute discretion and subject to the terms and conditions of this Agreement.

**Advances.**

- Advances under this Agreement may be requested orally or in writing by the Borrower or by an authorized person.
- The total of any pending advances requested and the unpaid principal amount, at any given time, cannot exceed the Line of Credit Limit.
- All advances made will be charged to a loan account in Borrower's name on Lender's books, and the Lender shall debit such account the amount of each advance made to, and credit to such account the amount of each repayment made by Borrower.

Case 24-80617   Doc 20-2   Filed 08/19/24   Entered 08/19/24 16:03:01   Desc Exhibit 1 - Commerical Line of Credit Agreement and Notce   Page 2 of 4

**Suspension and Termination.** Subject to Lender's right to make any advances under this Agreement in its sole and absolute discretion, advances under this Agreement will be available until the earliest of any date or event described below occurs: (a) demand by the Lender, (b) the Maturity Date, (c) the date the Line of Credit is canceled by Borrower, or (d) the date the Line of Credit is canceled by the Lender due to an occurrence of an Event of Default.

**SECURITY TO NOTE.** Security (the "Collateral") for this Agreement is granted pursuant to the following security document(s):

- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $8,250,000.00, dated December 16, 2019 evidencing a lien on the property located at 3 TRACTS, OKEMAH OK 74859.
- Security Agreement dated December 16, 2019 evidencing security interest in ALL BUSINESS ASSETS INCLUDING ACCOUNTS RECEIVABLE, INVENTORY, AND EQUIPMENT
  3 TRACTS OKEMAH, OK, Account Number 0349 : CERTIFICATE OF DEPOSIT # 0349 with a Current Value of $500,000.00 and a Hold Value of $500,000.00, 3 TRACTS, OKEMAH OK 74859.

**GUARANTY.** In support of this transaction, a Guaranty dated December 16, 2019 has been executed by CLINT MICHAEL MEADORS.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Agreement, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**PAYABLE ON DEMAND.** This is a demand note. Payment is due upon the earlier to occur of (a) Lender's demand or (b) the Maturity Date.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Agreement immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Agreement or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Agreement or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Agreement is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

© 2004-2019 Compliance Systems, Inc. 5b163f0e-cc9c9015 - 2019.155.0.2
Commercial Line of Credit Agreement and Note - DL4006                Page 2 of 3                www.compliancesystems.com

CSi

Case 24-80617    Doc 20-2    Filed 08/19/24    Entered 08/19/24 16:03:01    Desc Exhibit 1 - Commerical Line of Credit Agreement and Notce    Page 3 of 4

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Agreement is governed by the laws of the state of Oklahoma except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses in connection with the enforcement of this Agreement including, without limitation, reasonable attorneys' fees, to the extent permitted by law.

**ADDITIONAL PROVISIONS.** Abundance of Caution Mortgages on the borrower's commercial building and Clint Meador's primary residence and land.
Advances limited to available amounts on monthly borrowing base (submitted monthly),

By signing this Agreement, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

CM HEAVY MACHINERY LLC

By: CLINT MICHAEL MEADORS    Date: 12/10/19
Its: Member

LENDER: Great Plains National Bank

By: Ryan Ward    Date: 12/7/19
Its: Branch President

Case 24-80617    Doc 20-2    Filed 08/19/24    Entered 08/19/24 16:03:01    Desc Exhibit 1 - Commerical Line of Credit Agreement and Notce    Page 4 of 4