# EXHIBIT 6

## IN THE DISTRICT COURT OF OKFUSKEE COUNTY
## STATE OF OKLAHOMA

**GREAT PLAINS NATIONAL BANK, a national banking association,**

        Plaintiff,

v.

**CM HEAVY MACHINERY, LLC and CLINT MICHAEL MEADORS,**

        Defendants,

**AND**

**INTERNAL REVENUE SERVICE, OKLAHOMA TAX COMMISSION, OKFUSKEE COUNTY, OKLAHOMA, by and through THE BOARD OF COUNTY COMMISSIONERS OF OKFUSKEE COUNTY and THE OKFUSKEE COUNTY TREASURER,**

        Additional Defendants.

Case No. ___CJ-24-34___



FILED
IN DISTRICT COURT
OKFUSKEE COUNTY, OKLA.

JUN 0 6 2024

SHERRI L. FOREMAN, COURT CLERK
BY_____ DEPUTY

### PLAINTIFF'S VERIFIED PETITION

Comes now, Plaintiff Great Plains National Bank, a national banking association ("Plaintiff" or "GPNB"), for its causes of action against Defendants CM Heavy Machinery, LLC ("Borrower" or "CM Heavy"), and Clint Michael Meadors ("Guarantor" or "Mr. Meadors") (collectively "Defendants"), alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     GPNB is a national banking association that maintains offices and does business in Oklahoma.

2.     Defendant CM Heavy Machinery, LLC, is an Oklahoma limited liability company.

3.     Upon information and belief, defendant Clint Michael Meadors is a resident in or around Okfuskee County, Oklahoma.

4.     This Court has jurisdiction over the parties and the subject matter of this action.

5.     Venue is proper in Okfuskee County, Oklahoma, pursuant to 12 O.S. §§ 131, 142.

**FIRST CAUSE OF ACTION**
(Promissory Note – Loan No. 705244044)

6.     The allegations contained in the foregoing paragraphs are incorporated herein.

7.     On or around December 16, 2019, for good and valuable consideration, GPNB, CM Heavy, and Mr. Meadors entered into that certain Business Loan Agreement for Loan No. 705244044, wherein GPNB agreed to loan to CM Heavy the principal amount of $8,250,000.00 for the purpose of purchasing a large quantity of digging mats (the "Loan"). A copy of the Business Loan Agreement is attached as Exhibit "A" hereto.

8.     On or about December 16, 2019, for good and valuable consideration, CM Heavy executed and delivered to GPNB that certain Promissory Note payable to GPNB in the original face amount of $8,250,000.00 (the "Prior Note"). A copy of the Note is attached as Exhibit "B" hereto.

9.     On or about September 30, 2020, for good and valuable consideration, CM Heavy executed and delivered to GPNB that certain Promissory Note payable to GPNB in the original face amount of $5,786,839.90 (the "Note"), as a modification to the Prior Note. A copy of the Note is attached as Exhibit "C" hereto.

10.     The Note was extended six (6) times from April 21, 2021, to July 21, 2022, to allow CM Heavy additional time to sell mats to pay down the Loan amount and make interest payments (collectively, with the Prior Note and the Note, the "Notes").

Case 24-80617     Doc 20-6     Filed 08/19/24     Entered 08/19/24 16:03:01     Desc Exhibit 6 -- State Court Petition     Page 3 of 66

11. On October 11, 2023, GPNB and CM Heavy entered that certain Loan Modification Agreement, therein modifying the Business Loan Agreement and the Notes. A copy of the Loan Modification Agreement is attached as Exhibit "D" hereto.

12. CM Heavy has failed and refused to pay the Note in accordance with its terms and the terms of the Business Loan Agreement and, therefore, GPNB accelerated the Note.

13. CM Heavy is in default under the terms of the Note because, among other reasons, it did not make the monthly installments under the Note when due and failed to pay the indebtedness owed under the Note, now more than sixty (60) days overdue, and failed to provide monthly financial documents pursuant to the Additional Reporting Requirements.

14. There is due and owing to GPNB under the Note the principal sum of $3,880,689.55, together with $578,607.12 in interest accrued through May 20, 2024, fees in the amount of $104,650.53, and $5,323.89 in late charges. Interest accrues after May 20, 2024, at the default rate of 538.984659722 per diem, until paid (the "Indebtedness").

15. GPNB has been compelled to employ attorneys to prosecute this action and is entitled to reasonable attorney's fees and other reasonable costs of collection under the terms of the Note and applicable state law.

WHEREFORE, GPNB requests judgment in its favor and against CM Heavy on the Note in the principal sum of $3,880,689.55, together with: (a) interest accrued through May 20, 2024, in the amount of $578,607.12; (b) interest accruing on the principal after May 20, 2024, at the default rate of 538.984659722 per diem, until paid; (c) late charges in the amount of $5,323.89; (d) fees in the amount of $104,650.53; (e) all costs of collection including reasonable attorney's fees; and (f) for such other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### (Foreclosure of Security Interest)

16. The allegations contained in the foregoing paragraphs are incorporated herein.

17. To secure performance of CM Heavy's obligations to GPNB, including without limitation the Note, CM Heavy granted to GPNB a security interest in and to all assets of CM Heavy, including but not limited to equipment, accounts, inventory, instruments, general intangibles, investment property, chattel paper, titled vehicles, and deposit accounts, wherever located, now owned or hereafter acquired, and all proceeds thereof (collectively "Business Property"), as described in that certain Commercial Security Agreement dated December 16, 2019, as amended by the Commercial Security Agreement dated September 30, 2020 (the "Security Agreement"), and as last amended by the Loan Modification Agreement, and executed and delivered to GPNB by CM Heavy. A true and correct copy of the Security Agreement is attached as Exhibit "E" hereto.

18. GPNB perfected its security interest by filing the financing statements, copies of which are attached at Exhibit "F" hereto.

19. Without limitation to other defaults, due to CM Heavy's default under the Note, CM Heavy is in default under the Security Agreement.

20. GPNB's interest in and to the Business Property are senior and prior to the interest of all Defendants in and to the Business Property.

WHEREFORE, GPNB requests the Court to: (a) order, adjudge, and decree that GPNB has valid security interests and liens in and to the Business Property, which are senior and prior to the interest therein, if any, of all Defendants; (b) enter judgment in favor of GPNB and against all Defendants for possession of the Business Property; (c) order all Defendants, jointly and severally, to turn over possession of the Business Property to GPNB and to provide GPNB an updated

4

schedule of CM Heavy's account debtors; (d) enter a judgment permitting GPNB to foreclose its interests in the Business Property and sell the Business Property in accordance with Oklahoma law, or, at GPNB's option, to turn over the Business Property to the Sheriff of Okfuskee County for sale; and (e) provide such other and further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION
(Replevin – 12 O.S. §1571)

21.     The allegations contained in the foregoing paragraphs are incorporated herein.

22.     Because of Borrower's default under the Note and Security Agreement, GPNB has a special ownership interest in the Business Property and is entitled to immediate possession of the Collateral.

23.     The Borrower is wrongfully detaining the Business Property and have failed to turn it over to GPNB in compliance with the Security Agreement.

24.     On information and belief, GPNB estimates the actual value of the Collateral is approximately $1,200,000.00.  A statement of the value of each article of the Business Property is impracticable at this time given the circumstances.

25.     The Business Property has not been taken in execution on any order or judgment against GPNB, or for the payment of any tax, fine, or amercement assessed against GPNB, or by virtue of an order of delivery issued under 12 O.S. § 1571, *et seq*., or any other mesne or final process issued against GPNB.

WHEREFORE, the GPNB seeks and requests replevin and relief as follows: (a) That the Clerk of this Court issue a Notice to be served upon the Borrower, which shall notify them that: (1) an Order of Delivery of the Business Property is sought; (2) the Borrower has the right to object by written response filed with the Court Clerk and delivered or mailed to GPNB's attorney within five days after service of this Petition; (3) the Order of Delivery shall be issued by the Clerk in the

5

event no written response is filed within the five-day period; and (4) pursuant to 12 O.S. § 1571.1, any person who willfully and knowingly damages property in which there exists a valid right to issuance of an order of delivery, or on which such order has been sought under the provisions of 12 O.S. § 1571, or who transfers or conceals it, with intent to interfere with the enforcement of the order, or who removes it from the jurisdiction of this Court with the intention of defeating enforcement of an order of delivery, or who willfully refuses to disclose its location to an officer charged with executing an order for its delivery, or who, when in possession of such property, willfully interferes with the officer charged with executing such order, shall be guilty of a misdemeanor, and in addition to such criminal penalties as provided by law, shall be liable to GPNB for double the amount of damage done to the property, together with a reasonable attorney's fee to be fixed by the Court; (b) That the Court issue an Order of Delivery for the immediate delivery of the Business Property to GPNB; (c) That the Court enter judgment in favor of GPNB against the Borrower for the possession of the Business Property, decreeing that the Bank's interests in the Business Property are senior and prior to the interests of the Borrower and any other defendant, if any; (d) That the Court enter judgment against the Borrower for a reasonable attorney's fee to be determined by the Court and taxed as costs; (e) That the Court enter judgment against the Borrower for all costs of collection, enforcement and sale; and (f) That the Court grant GPNB such other and further relief as the Court may deem just and proper.

### FOURTH CAUSE OF ACTION
(Appointment of Receiver)

26.     The allegations contained in the foregoing paragraphs are incorporated herein.

27.     Pursuant to 12 O.S. § 1551(A), GPNB seeks a court order appointing a receiver in this action. In support, GPNB can show that conditions of the Security Agreement have not been performed, and the Security Agreement provides for the appointment of a receiver (under the

6

"Appoint Receiver" Section on Page 4 of the Security Agreement, GPNB shall be entitled to the appointment of a receiver upon any failure of CM Heavy to comply with any term, obligation, covenant, or condition contained in the Security Agreement, the Note, or any related documents.

WHEREFORE, GPNB prays that this Court appoint a receiver of GPNB's choosing to maintain, collect, and manage the Business Property, and that the Court also authorize a receiver to market the Business Property for sale.

## FIFTH CAUSE OF ACTION
(Foreclosure of Mortgage)

28. The allegations contained in the foregoing paragraphs are incorporated herein.

29. To secure performance of CM Heavy's obligations to GPNB, including without limitation the Note, CM Heavy granted to GPNB a mortgage covering the following described real property in Okemah, Okfuskee County, Oklahoma, together with all improvements now or hereafter erected on such property, and all easements, appurtenances, and fixtures now or hereafter a part of such property:

NORTH HALF OF THE SOUTHWEST QUARTER (N/2 SW/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA, AND THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER (NW/4 SE/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE SOUTH HALF OF THE SOUTHWEST QUARTER (S/2 SW/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE NORTHWEST QUARTER (NW/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA

Address: 3 TRACTS, OKEMAH, Oklahoma 74859
Legal Description: THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER (NE/4 SE/4), SECTION TWENTY-SIX (26), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE WEST HALF OF THE SOUTHEAST QUARTER (W/2 SE/4), SECTION TWENTY-SIX (26), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER (SE/4 SE/4) SECTION TWENTY-SIX (26), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA. AND THAT PART OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4) OF SECTION TWENTY-FIVE (25), TOWNSHIP ELEVEN (11) NORTH, RANGE NINE (9) EAST OF THE INDIAN MERIDIAN, OKFUSKEE COUNTY, STATE OF OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4); THENCE ON A GRID BEARING OF N00 DEGREES 59'49"E ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER OF THE NORTHWEST QUARTER (SE/4 NE/4) A DISTANCE OF 25.00 FEET; THENCE S89 DEGREES 20'31"W ON A LINE PARALLEL WITH THE SOUOTH LINE OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 SE/4) A DISTANCE OF 50.00 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF PRESENT STATE HIGHWAY NO. 27 AND THE POINT OF BEGINNING; THENCE CONTINUING S89 DEGREES 20'31"W A DISTANCE OF 330.51 FEET; THENCE N00 DEGREES 49'06"E A DISTANCE OF 681.44 FEET; THENCE N89 DEGREES 20'31"E A DISTANCE OF 308.92 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF PRESENT STATE HIGHWAY NO. 27; THENCE S00 DEGREES 59'49"E ALONG SAID WEST RIGHT OF WAY LINE A DISTANCE OF 681.25 FEET TO THE POINT OF THE BEGINNING, CONTAINING 5.00 ACRES. AND THE

COMMENCING AT THE SE/C SE SW; THENCE S89DEG48'43"W 745' TO THE POB; THENCE N00DEG21'00"W 100'; THENCE N45DEG51'27"E 180.09'; THENCE N00DEG21'00"W 944.97'; THENCE N59DEG16'00"W 291.91'; THENCE S89DEG48'45"W 455.56'; THENCE S00DEG20'40"E 1319.98'; THENCE N89DEG48'43"E 575.69' TO THE POB & THAT PART OF THE SW SW LYING SOUTH OF THE NORTH CANADIAN RIVER & NW SW SOUTH OF THE RIVER, LESS AND EXCEPT A 10 ACRE TRACT 24-10-9 BEARDEN TWP 1969 MELODY 12X50 VIN #8958 OTC #601899054002 (STG VALUE) 19.24 Acres

(the "Real Property"), as evidenced by that certain Commercial Real Estate Mortgage dated December 16, 2019, and as last amended by the Amended and Restated Commercial Real Estate Mortgage dated October 11, 2023 (the "Mortgage"). The Mortgage was filed on October 17, 2023, in Book 1327, commencing on Page 358, in the Office of the Okfuskee County Treasurer. A true and correct copy of the Mortgage is attached as Exhibit "G" hereto.

30.    GPNB is the lawful holder of the Mortgage and, by the terms and conditions thereof, GPNB may foreclose the Mortgage in the event of the CM Heavy's default under the Note.

31.    Without limitation to other defaults, due to CM Heavy's default under the Note, CM Heavy is in default under the Mortgage.

8

32.     GPNB has complied with all the terms, conditions, and provisions of the Mortgage and is duly empowered to bring this action.

33.     GPNB's interest in and to the Real Property are senior and prior to the interest of all Defendants in and to the Real Property.

34.     Additional Defendant Internal Revenue Service may claim some right, title, and interest in and to the Real Property by virtue of unpaid taxes. GPNB alleges that such interest is junior, inferior, and subject to the lien of the Mortgage.

35.     Additional Defendants Okfuskee County, Oklahoma, by and through the Board of County Commissioners of Okfuskee County, Oklahoma, and the Okfuskee County Treasurer (the "County"), may claim an interest in the Real Property by virtue of unpaid taxes. GPNB alleges that the interest of said defendants is junior, inferior, and subject to the lien of the Mortgage.

36.     Additional Defendant Oklahoma Tax Commission may claim an interest in the Real Property by virtue of unpaid taxes. GPNB alleges that such interest is junior, inferior, and subject to the lien of the Mortgage.

WHEREFORE, GPNB seeks an *in rem* judgment with respect to the Real Property as follows: (a) foreclosing the Mortgage, declaring the Mortgage a valid first priority lien on the Real Property subject only to any unpaid ad valorem taxes, if any, and any superior or senior liens as determined by the Court; (b) ordering the Real Property sold (with or without appraisement, at the option of GPNB and as provided by law); (c) ordering the proceeds arising from the sale to be applied first to the payment of GPNB's costs herein (including reasonable attorney's fees), then toward the payment of ad valorem taxes, if any, and liens determined by the Court to be superior and senior to the Mortgage, and then toward the payment and satisfaction of the claims and judgments of GPNB on the Note, and ordering the surplus of such proceeds, if any, to be paid into

9

the Court to abide further order of the Court; (d) adjudging the right, title, and interest of Defendants and each Additional Defendant of the Real Property, except those arising out of unpaid ad valorem taxes, if any, or any superior or senior liens as determined by the Court, to be subject, junior, and inferior to the Mortgage, and that upon confirmation of sale, ordering Defendants and all persons claiming by, through, or under Defendants since the commencement of this action to be forever barred, foreclosed, and enjoined from asserting or claiming any right, title, interest, estate, or equity of redemption in the Real Property or any part thereof; and (e) for such other and further relief as GPNB may be entitled.

### SIXTH CAUSE OF ACTION
(Guaranty – Clint Michael Meadors)

37.     The allegations contained in the foregoing paragraphs are incorporated herein.

38.     Defendant Clint Michael Meadors, an individual, executed and delivered to GPNB his guaranty dated December 16, 2019, as last amended by the Loan Modification Agreement dated October 11, 2023, unconditionally guaranteeing payment of CM Heavy's indebtedness owed to GPNB (the "Meadors Guaranty"). A true and correct copy of the Meadors Guaranty is attached as Exhibit "H" hereto.

39.     Without limitation, by virtue of CM Heavy's default under the Note, the Meadors Guaranty is in default.

40.     Mr. Meadors has failed and refused to pay the Meadors Guaranty in accordance with the terms of the Meadors Guaranty.

41.     There was due and owing from Mr. Meadors to GPNB under the Note the principal sum of $3,880,689.55, together with $578,607.12 in interest accrued through May 20, 2024, fees in the amount of $104,650.53, and $5,323.89 in late charges. Interest accrues after May 20, 2024, at the default rate of 538.984659722 per diem, until paid.

10

42.     GPNB has been compelled to employ attorneys to prosecute this action and is entitled to reasonable attorney's fees and other reasonable costs of collection under the terms of the Meadors Guaranty and applicable state law.

WHEREFORE, GPNB requests judgment in its favor and against Defendant Clint Michael Meadors on the Meadors Guaranty on the Note in the principal sum of $3,880,689.55, together with: (a) interest accrued through May 20, 2024, in the amount of $578,607.12; (b) interest accruing on the principal after May 20, 2023, at the default rate of 538.984659722 per diem, until paid; (c) late charges in the amount of $5,323.89; (d) fees in the amount of $104,650.53; (e) all costs of collection including reasonable attorney's fees; and (f) for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Daniel V. Carsey, OBA No. 21490
Alexandra A. Crawley, OBA No. 34634
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
(405) 553-2313 (o)
(405) 553-2855 (f)
dcarsey@hallestill.com
acrawley@hallestill.com

**ATTORNEYS FOR PLAINTIFF**

11

**VERIFICATION**

STATE OF OKLAHOMA )
                                ) ss
COUNTY OF _Oklahoma_ )

     I, Blake D. Johnson, of lawful age, being first duly sworn, upon oath state that I have read the foregoing Petition, that I am familiar with the matters set forth therein, and that the same is true to the best of my information and belief.

                                                             Blake D. Johnson

Subscribed and sworn to before me this ___5___ day of __June__ 2024.

                                                    Notary Public

My Commission Expires:_____
My Commission Number is:_____



**BUSINESS LOAN AGREEMENT**

**Great Plains National Bank**
601 NW 13th Street
Oklahoma City, Oklahoma 73103
(405)720-4772
www.gpbankok.com

| AGREEMENT DATE | LOAN NUMBER | AGREEMENT/ACCOUNT NUMBER |
|---|---|---|
| December 16, 2019 | 705244044 | 705244044 |

**BORROWER INFORMATION**
CM HEAVY MACHINERY LLC
PO BOX 309
OKEMAH, OK 74859

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Oklahoma

**GUARANTOR INFORMATION**

CLINT MICHAEL MEADORS
PO BOX 309
OKEMAH, OK 74859

**Type of Entity:** Individual
**State of Residence:** Oklahoma

**AGREEMENT.** This Business Loan Agreement will be referred to in this document as the "Agreement." This Agreement is made by Great Plains National Bank (Lender), CM HEAVY MACHINERY LLC (Borrower) and CLINT MICHAEL MEADORS (Guarantor). The consideration is the promises, representations, and warranties made in this Agreement and the Related Documents.

**DEFINITIONS.** These definitions are used in this Agreement.

"**Collateral**" means the Property that any Party to this Agreement or the Related Documents may pledge, mortgage, or give Lender a security interest in, regardless of where the Property is located and regardless of when it was or will be acquired, together with all replacements, substitutions, proceeds, and products of the Property.

"**Events of Default**" means any of the events described in the "Events of Default" section of this Agreement.

"**Financial Statements**" mean the balance sheets, earnings statements, and other financial information that any Party has, is, or will be giving to Lender.

"**Indebtedness**" means the Loan and all other loans and indebtedness of Borrower to Lender, including but not limited to Lender's payments of insurance or taxes, all amounts Lender pays to protect its interest in the Collateral, overdrafts in deposit accounts with Lender, and all other indebtedness, obligations, and liabilities of Borrower to Lender, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising.

"**Loan**" means any loan or loans described in the "Identification of Loan" section of this Agreement.

"**Parties**" means any Borrower and Guarantor signing this Agreement.

"**Party**" means any Borrower and Guarantor signing this Agreement.

"**Property**" means the Parties' assets, regardless of what kind of assets they are.

"**Related Documents**" means all documents, promissory notes, security agreements, leases, mortgages, construction loan agreements, assignments of leases and rents, guaranties, pledges, and all other documents or agreements executed in connection with this Agreement as such documents may be modified, amended, substituted, or renewed from time to time. The term includes both documents existing at the time of execution of this Agreement and documents executed after the date of this Agreement.

**IDENTIFICATION OF LOAN.** The following loan and all other indebtedness, obligations, and liabilities of Borrower to Lender, due or to become due, now existing or hereafter arising, as well as any and all amendments, modifications, extensions, and renewals thereof are subject to this Agreement:

• Loan Number 705244044 with a principal amount of $8,250,000.00

**BORROWER'S REPRESENTATIONS AND WARRANTIES.** The statements made in this section will continue and remain in effect until all of the Indebtedness is fully paid to Lender. Each Borrower represents and warrants to Lender the following:

**Borrower's Existence and Authority.** Each Borrower is duly formed and in good standing under all laws governing the Borrower and the Borrower's business, and each Borrower executing this Agreement has the power and authority to execute this Agreement and the Related Documents and to bind that Borrower to the obligation created in this Agreement.

**Financial Information and Filing.** All Financial Statements provided to Lender have been prepared and will continue to be prepared in accordance with generally accepted accounting principles, consistently applied, and fully and fairly present the financial condition of each Borrower, and there has been no material adverse change in Borrower's business, Property, or condition, either financial or otherwise, since the date of Borrower's latest Financial Statements. Each Borrower has filed all federal, state, and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Each Borrower has made reasonable provision for these types of payments that are accrued but not yet payable. The Borrower does not know of any deficiency or additional assessment not disclosed in the Borrower's books and records.

All financial statements or records submitted to Lender via electronic means, including, but not limited to, facsimile, open internet communications or other telephonic or electronic methods, including, but not limited to, documents in Tagged Image Format Files ("TIFF") and Portable Document Format ("PDF") shall be treated as originals, and will be fully binding with full legal force and effect. Parties waive any right they may have to object to such treatment. Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the Party submitting such records.

**Title and Encumbrances.** Borrower has good title to all of the Borrower's assets. All encumbrances on any part of the Property were disclosed to Lender in writing prior to the date of this Agreement.

**Compliance with General Law.** Each Borrower is in compliance with and will conduct its business and use its assets in compliance with all laws, regulations, ordinances, directives, and orders of any level of governmental authority that has jurisdiction over the Borrower, the Borrower's business, or the Borrower's assets.

**Environmental Laws.** Each Borrower is in compliance with all applicable laws and rules of federal, state, and local authorities affecting the environment, as all have been or are amended.

**No Litigation/No Misrepresentations.** There are no existing or pending suits or proceedings before any court, government agency, arbitration panel, administrative tribunal, or other body, or threatened against Borrower that may result in any material adverse change in the Borrower's business, property, or financial condition, and all representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**COVENANTS.** On the date of this Agreement and continuing until the Indebtedness is repaid and Borrower's obligations are fully performed, Borrower covenants as follows.

**Notices of Claims and Litigation/Notice of Adverse Events.** Borrower will promptly notify Lender in writing of all threatened and actual litigation, governmental proceeding, default, and every other occurrence that may have a material adverse effect on Borrower's business, financial condition, or the Property.

The borrower will have access to $4,250,000.00 at closing and will be governed by a borrowing base and the remaining $4,000,000.00 is committed subject to A) Preselling the mats and B) GPB receiving a 5% down payment from the buyers (Down Payment held at GPB in borrower's proceeds account).

CM Heavy Machinery LLC -Monthly Accounts Receivable Aging and Inventory reports due within 15 days of month end.

CM Heavy Machinery LLC - Monthly Borrowing base due within 15 days of month end.

**Other Information.** From the date hereof until the Indebtedness is fully repaid and all of Debtors' obligations are fully performed and satisfied, the Parties cited below agree, unless otherwise consented to in writing by the Lender, they will submit the following:

CM HEAVY MACHINERY LLC - Unaudited Financial Statements within 90 days after the end of each fiscal Year in form acceptable to Lender.

CM HEAVY MACHINERY LLC - Reviewed Tax Returns within 30 days after the end of each fiscal due by October 31st of each year in form acceptable to Lender.

CLINT MICHAEL MEADORS - Unaudited Personal Financial Statements within 90 days after the end of each fiscal Year in form acceptable to Lender.

CLINT MICHAEL MEADORS - Reviewed Personal Tax Returns within 30 days after the end of each fiscal due by October 31ST in form acceptable to Lender.

**EVENTS OF DEFAULT.** The occurrence of any of the following events will be an Event of Default.

**Noncompliance with Lender Agreements.** Default by Borrower or Guarantor under any provision of this Agreement, the Related Documents, or any other agreement with Lender.

**False Statements.** If a Party made or makes a false or misleading misrepresentation in this Agreement, in the Related Documents, in any supporting material submitted to Lender or to third parties providing reports to Lender, or in Financial Statements given or to be given to Lender.

**Material Adverse Change.** Any material adverse change in the Borrower's business, financial condition, or the Property has occurred or is imminent; if the full performance of the obligations of any Party is materially impaired; or if the Collateral and its value or Lender's rights with respect thereto are materially impaired in any way. The existence or reasonable likelihood of litigation, governmental proceeding, default, or other event that may materially and adversely affect a Party's business, financial condition, or the Property.

**Insolvency or Liquidation.** A Party voluntarily suspends transaction of its business or does not generally pay debts as they mature. If a Party has or will make a general assignment for the benefit of creditors or will file, or have filed against it, any petition under federal bankruptcy law or under any other state or federal law providing for the relief of debtors if the resulting proceeding is not discharged within thirty days after filing. If a receiver, trustee, or custodian is or will be appointed for a Party.

**Default on Unrelated Debt.** If Borrower or Guarantor materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated.

**Judgments or Attachments.** If there is entered against a Party a judgment that materially affects the Borrower's business, financial condition, or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

**Collateral Impairment.** Lender has a good-faith belief that Lender's rights in the Collateral are or will soon be impaired or that the Collateral itself is or soon will be impaired.

**Termination of Existence or Change in Control.** If Borrower or Borrower's business is sold or merged or if Borrower or Borrower's business suspends business or ceases to exist.

**CSi**

**Insecurity.** If Lender has a good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

**Death.** The death of an individual who is a Party, a partner in a partnership that is a Party, a member in a limited liability company that is a Party, an officer of a corporation that is a Party, or an individual of similar position in any other type of business organization that is a Party.

**REMEDIES ON DEFAULT.**

**Remedies, No Waiver.** The remedies provided for in this Agreement, the Related Documents, and by law are cumulative and not exclusive. Lender reserves the right to exercise some, all, or none of its rights and reserves the right to exercise any right at any time that Lender has the right, without regard to how much time has passed since the right arose. Lender may exercise its rights in its sole, absolute discretion.

**Acceleration, Setoff.** Upon an Event of Default, the Loan and the Indebtedness may, at Lender's sole option, be declared immediately due and payable. Lender may apply the Parties' bank accounts and any other property held by Lender against the Indebtedness.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Agreement, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**EXPENSES.** The Parties agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of the Parties' books and records. The Parties also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Parties and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

**GOVERNING LAW/PARTIAL ILLEGALITY.** This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the state of Oklahoma except to the extent that federal law controls. If any part, term, or provision of this Agreement is determined to be illegal or in conflict with state or federal law, the validity of the remaining portion or provisions of this Agreement will not be affected, unless the stricken portion or provision adversely affects Lender's risk of realizing Lender's anticipated return, in which case Lender may, in its sole discretion, deem the Loan matured.

**NOTICES.** All notices required under this Agreement must be in writing and will be considered given: (i) on the day of personal delivery, or (ii) one business day after deposit with a nationally recognized overnight courier service, or (iii) three business days after deposit with the United States Postal Service sent certified mail, return receipt requested. Any of these methods may be used to give notice. All notices must be sent to the party or parties entitled to notice at the addresses first set forth in this Agreement. Any Party may change its address for notice purposes on five days prior written notice to the other Parties.

**INTEGRATION AND AMENDMENT.** This Agreement and other written agreements among the Parties, including but not limited to the Related Documents, are the entire agreement of the Parties and will be interpreted as a group, one with the others. None of the Parties will be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by those Parties burdened by the modification.

**FURTHER ACTION.** The Parties will, upon request of Lender, make, execute, acknowledge, and deliver to Lender the modified and additional instruments, documents, and agreements, and will take the further action that is reasonably required, to carry out the intent and purpose of this transaction.

**CONTINUING EFFECT.** Unless superseded by a later Business Loan Agreement, this Agreement will continue in full force and effect until all of the Parties' obligations to Lender are fully satisfied and the Loan and Indebtedness are fully repaid.

**HEADINGS.** All headings in this Agreement are included for reference only and do not have any effect on the interpretation of this Agreement.

**COUNTERPARTS.** This Agreement may be executed by the Parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**TRANSFERS.** Borrower may not assign or transfer its rights or obligations under this Agreement without Lender's prior written consent. Lender may transfer its interest in Lender's sole discretion. Borrower waives all rights of offset and counterclaim Borrower has against Lender. The purchaser of a participation in the loan may enforce its interest regardless of any claims or defenses Borrower has against Lender.

**JURISDICTION.** The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality. The Parties authorize any action brought to enforce the Parties' obligations to Lender be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. The Parties authorize Lender to elect the court at Lender's sole discretion.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ADDITIONAL PROVISIONS.** "Borrowing Base" - Limited to 80% advance rate on eligible AR, 80% advance rate on Inventory, and 100% advance rate on CD # ▮▮▮▮0358, less $250,000 carve out for working capital LLC.
"Ineligible AR" - Receivables over 90 days from date of Invoice.

By signing this Agreement, Borrower acknowledges reading, understanding and agreeing to all its provisions and receipt of a copy hereof.

CM HEAVY MACHINERY LLC

By: CLINT MICHAEL MEADORS    Date 12/10/19
Its: Member

## AGREEMENT OF GUARANTOR

Guarantor (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to furnish the Financial Statements to Lender that Lender reasonably requests; (iv) agrees to those portions of this Agreement that apply to Guarantor; (v) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (vi) confirms that Guarantor received a copy of this Agreement, the Guaranty, and the other documents Guarantor requested.

CLINT MICHAEL MEADORS    Date 12/10/19
Individually

LENDER: Great Plains National Bank

By: Ryan Ward    Date 12/31/19
Its: Branch President



**COMMERCIAL LINE OF CREDIT**
**AGREEMENT AND NOTE**
Open End

**Great Plains National Bank**
601 NW 13th Street
Oklahoma City, Oklahoma 73103
(405)720-4772
www.gpbankok.com

| LOAN NUMBER | AGREEMENT DATE | LINE OF CREDIT LIMIT | MATURITY DATE |
|---|---|---|---|
| 705244044 | December 16, 2019 | $8,250,000.00 | September 16, 2020 |

| LOAN PURPOSE: PURCHASE LARGE QUANTITY OF DIGGING MATS |
|---|

**BORROWER INFORMATION**
CM HEAVY MACHINERY LLC
PO BOX 309
OKEMAH, OK 74859

**LINE OF CREDIT AGREEMENT AND NOTE.** This Commercial Line of Credit Agreement and Note will be referred to in this document as the "Agreement."

**LENDER.** "Lender" means Great Plains National Bank whose address is 601 NW 13th Street, Oklahoma City, Oklahoma 73103, its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity identified above in the BORROWER INFORMATION section who signs this Agreement.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on demand by Lender, or if no demand is made, on or before the Maturity Date, the Borrower promises to pay the principal amount of Eight Million Two Hundred Fifty Thousand and 00/100 Dollars ($8,250,000.00) or such lesser amount as shall have been advanced by Lender, from time to time, to or on behalf of Borrower under the terms of this Agreement, and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Agreement will be paid according to the following required payment schedule: Beginning on January 16, 2020, monthly payments of accrued and unpaid interest. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date unless demanded earlier. All payments received by the Lender from the Borrower for application to this Agreement may be applied to the Borrower's obligations under this Agreement in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** Interest will begin to accrue on December 16, 2019. The initial variable interest rate on this Agreement will be 5.750% per annum. This interest rate may change on December 17, 2019, and every day thereafter. Each date on which the interest rate may change is called the "Change Date." Prior to each Change Date, Lender will calculate the new interest rate based on Prime Rate as Published in the Wall Street Journal in effect on the Change Date (the "Index") plus 1.000 percentage points (the "Margin").

If the Index is not available at the time of the Change Date, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under the Agreement will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount. Interest on this Agreement is calculated on an **Actual/360** day basis. The calculation method results in a higher effective interest rate than the numeric interest rate stated in this Agreement. The unpaid balance of this loan after the Maturity Date, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to 21.000% per annum.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5.000% of the amount past due, subject to a minimum charge of $24.00.

**LINE OF CREDIT TERMS.** The advances under this Agreement are discretionary. The Borrower acknowledges and agrees that although the Borrower may from time to time request an advance under this Agreement up to a maximum amount equal to the Line of Credit Limit, the Lender in no way is obligated to make such advance, Lender may at any time, with or without cause, refuse to extend credit, and all advances will be made by Lender in its sole and absolute discretion and subject to the terms and conditions of this Agreement.

**Advances.**
- Advances under this Agreement may be requested orally or in writing by the Borrower or by an authorized person.
- The total of any pending advances requested and the unpaid principal amount, at any given time, cannot exceed the Line of Credit Limit.
- All advances made will be charged to a loan account in Borrower's name on Lender's books, and the Lender shall debit such account the amount of each advance made to, and credit to such account the amount of each repayment made by Borrower.

**Suspension and Termination.** Subject to Lender's right to make any advances under this Agreement in its sole and absolute discretion, advances under this Agreement will be available until the earliest of any date or event described below occurs: (a) demand by the Lender, (b) the Maturity Date, (c) the date the Line of Credit is canceled by Borrower, or (d) the date the Line of Credit is canceled by the Lender due to an occurrence of an Event of Default.

**SECURITY TO NOTE.** Security (the "Collateral") for this Agreement is granted pursuant to the following security document(s):

- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $8,250,000.00, dated December 16, 2019 evidencing a lien on the property located at 3 TRACTS, OKEMAH OK 74859.
- Security Agreement dated December 16, 2019 evidencing security interest in ALL BUSINESS ASSETS INCLUDING ACCOUNTS RECEIVABLE, INVENTORY, AND EQUIPMENT
  3 TRACTS OKEMAH, OK, Account Number █████0349 ; CERTIFICATE OF DEPOSIT #█████0349 with a Current Value of $500,000.00 and a Hold Value of $500,000.00, 3 TRACTS, OKEMAH OK 74859.

**GUARANTY.** In support of this transaction, a Guaranty dated December 16, 2019 has been executed by CLINT MICHAEL MEADORS.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Agreement, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**PAYABLE ON DEMAND.** This is a demand note. Payment is due upon the earlier to occur of (a) Lender's demand or (b) the Maturity Date.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Borrower's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Agreement immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Agreement or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Agreement or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Agreement is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

© 2004-2019 Compliance Systems, Inc. 5b163f0e-cc9c9015 - 2019.155.0.2
Commercial Line of Credit Agreement and Note - DL4006

www.compliancesystems.com

**CSi**

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Agreement is governed by the laws of the state of Oklahoma except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses in connection with the enforcement of this Agreement including, without limitation, reasonable attorneys' fees, to the extent permitted by law.

**ADDITIONAL PROVISIONS.** Abundance of Caution Mortgages on the borrower's commercial building and Clint Meador's primary residence and land.

Advances limited to available amounts on monthly borrowing base (submitted monthly),

**By signing this Agreement, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.**

CM HEAVY MACHINERY LLC

By: CLINT MICHAEL MEADORS          Date
Its: Member

LENDER: Great Plains National Bank

By: Ryan Ward          Date
Its: Branch President

EXHIBIT C

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $5,786,839.90 | 09-30-2020 | 03-16-2021 | 705244044 | 4A / 550 | *** | RLW | RLW |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** CM Heavy Machinery LLC
111097 Hwy 27
Okemah, OK 74859

**Lender:** Great Plains National Bank
Midtown
601 NW 13th St
Oklahoma City, OK 73103

---

**Principal Amount: $5,786,839.90** **Date of Note: September 30, 2020**

**PROMISE TO PAY. CM Heavy Machinery LLC ("Borrower") promises to pay to Great Plains National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Million Seven Hundred Eighty-six Thousand Eight Hundred Thirty-nine & 90/100 Dollars ($5,786,839.90) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.**

**PAYMENT. Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 16, 2021. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 16, 2020, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.000% per annum based on a year of 360 days. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Great Plains National Bank, Midtown, 601 NW 13th St Oklahoma City, OK 73103.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $24.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 21.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

EXHIBIT C

# EXHIBIT C

### PROMISSORY NOTE
### (Continued)

Loan No: 705244044

Page 2

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oklahoma without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Oklahoma.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Oklahoma County, State of Oklahoma.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Commercial Security Agreement dated September 30, 2020 made and executed between CM Heavy Machinery LLC and Lender on collateral described as:

ALL BUSINESS ASSETS INCLUDING: ACCOUNTS RECEIVABLES, INVENTORY, EQUIPMENT

(B) an Assignment of Deposit Account dated September 30, 2020 made and executed between CM Heavy Machinery LLC and Lender on collateral described as:

CD Account Number █████0349 with an approximate balance of $504,903.00, with a hold of $500,000.00

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Clint Michael Meadors, Member of CM Heavy Machinery LLC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ABUNDANCE OF CAUTION MORTGAGES.** Abundance of Caution Mortgage - 3 Tracts, Okemah, OK. 74859, filed 1/16/2020, in Okfuskee County , Book 1270 - Page 547-550 , $8,250,000.00 .

**PRIOR NOTE.** loan # 705244044 dated 12/16/2019, $8,250,000.00.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Great Plains National Bank PO Box 1529 Elk City, OK 73648.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such

**EXHIBIT C**

Loan No: 705244044

**PROMISSORY NOTE**
(Continued)

Page 3

parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

CM HEAVY MACHINERY LLC

By: _____ 9.30.20
Clint Michael Meadors, Member of CM Heavy
Machinery LLC

LaserPro, Ver. 20.3.0.052 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - OK C:\LASERPRO\CFI\LPL\D20.FC TR-4797 PR-4

# LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT ("Modification") is made and entered into effective as of October 11, 2023, by and between **CM Heavy Machinery LLC**, an Oklahoma limited liability company (the "Borrower"), and **Great Plains National Bank** (the "Lender").  The parties hereto hereby agree as follows:

**WHEREAS**, Borrower and Lender entered into that certain Business Loan Agreement executed on December 16, 2019, as restated on September 30, 2020, and as further modified from time to time (collectively, the "Existing Loan Agreement"), for the purpose and consideration therein expressed;

**WHEREAS**, the loan advanced under the Existing Loan Agreement (the "Loan") is currently evidenced, in part, by that certain Promissory Note executed on December 16, 2019, as restated on September 30, 2020, and as further modified from time to time in the face amount of $5,786,839.90 (the "Existing Note");

**WHEREAS**, the Loan is secured by, among other things, certain personal property as more particularly described in the security documents executed in connection with the Existing Loan Agreement (collectively, the "Existing Security Agreement");

**WHEREAS**, the Loan is secured by, among other things, certain real property as more particularly described in the mortgage executed in connection with the Existing Loan Agreement (the "Existing Mortgage"; the Existing Security Agreement and Existing Mortgage are together, the "Existing Security Instruments");

**WHEREAS**, the assets described in the Security Instruments and other collateral securing the indebtedness evidenced by or described in the Existing Note shall continue to secure the indebtedness described in the Existing Loan Agreement, as hereby amended;

**WHEREAS**, all capitalized terms not otherwise defined herein shall have those meanings assigned to such terms in the Existing Loan Agreement; and

**WHEREAS**, Borrower and Lender desire to modify the Existing Note and all other loan documents executed in connection with the Existing Note and Existing Loan Agreement (collectively, the "Loan Documents") in order to revise the applicable interest rate and modify the repayment terms.

**NOW, THEREFORE**, in consideration of the foregoing and for such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Representations and Warranties**.  In order to induce Lender to enter into this Modification, and in consideration thereof, Borrower hereby represents and warrants as follows:

(a)     Borrower has the full right, power and authority to execute and deliver this Modification and to perform its obligations hereunder.  No governmental approval is required for this Modification to be effective and no contractual restriction is applicable or binding upon Borrower with respect to this Modification. Borrower's organizational documents previously provided to Lender have not been amended, modified or supplemented.

(b)     This Modification is a legal, valid and binding obligation of the Borrower, enforceable against Borrower in accordance with its terms.

(c)     The information and documents to be furnished by or on behalf of the Borrower to Lender pursuant to this Modification are and will be true, accurate and complete in all respects.

(d)     The covenants and obligations set forth in this Modification benefit and are in the best interest of Borrower.

(e)     The consideration received and to be received by Borrower to this Modification is adequate and sufficient in all respects.

(f)     This Modification is being entered into by Borrower without duress, and Borrower has relied upon the advice of competent, independent legal counsel in entering into this Modification.

(g)     The indebtedness evidenced by the Existing Note is valid and subsisting and is not subject to any defenses, offsets, claims or counterclaims.

(h)     Other than Case No. CJ-2023-18 in the Okfuskee County District Court, Okfuskee County, Oklahoma, there are no actions, suits or proceedings pending or threatened against the Borrower that would, if adversely determined, have a material adverse effect upon the Borrower.

(i)     As of September 12, 2023, the Lender asserts that the outstanding principal balance of the Loan as of the date hereof is $3,930,689.55, together with $534,031.31 in accrued interest and $74,231.80 in fees.

(j)     There are no outstanding or unpaid judgments against the Borrower.

2.     **Modification to Existing Loan Agreement.**

(a)     The term "**Maturity Date**" shall be added to the "**DEFINITIONS**" section of the Existing Loan Agreement and it shall read as follows:

"**Maturity Date**.  The word "Maturity Date" means September 15, 2038."

(b)     The "AFFIRMATIVE COVENANTS" section of the Existing Loan Agreement is hereby amended and restated to include the following additional covenants:

2892640.1:412594.01725

"**Insurance Proceeds**.  Immediately upon Borrower's receipt of any insurance proceeds relating to the mats, it shall deposit such funds with Lender as a payment on outstanding amounts due under the Loan.

**Additional Reporting Requirements**.  In addition to any reporting requirements contained herein, Borrower shall provide Lender with the following information to its complete satisfaction:

- A monthly report including Borrower's balance sheet, income statement, A/R aging, A/P aging, a schedule of equipment leases and complete copies of each, a complete list of equipment and its location;

- An annual report including Borrower's FYE balance sheet, FYE income statement, and personal balance sheet of Guarantor;

- Copies of Borrower's and Guarantor's tax returns within 15 days of filing;

- A quarterly report of the condition, hours, and any needed S/N for all items of equipment; and

- A quarterly report containing copies of all pipe/pad contracts, insurance declarations/verifications on all equipment and real estate, as applicable.

**Tracking Devices.**  Borrower shall have installed at Lender's expense a tracker device on each significant item (as determined by Lender in its sole discretion) by December 15, 2023 for existing equipment and within forty-five (45) days of acquisition for any future equipment.

**Inspections**.  Notwithstanding anything to the contrary contained herein, Borrower shall allow Lender to inspect the Collateral at any time."

(c)    <u>**Modification of Existing Note**</u>.  The "**PAYMENT SCHEDULE**" section of the Existing Note is hereby amended and restated in its entirety as follows:

"**PAYMENT**. The Agreement will be paid according to the following required payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph:  Beginning November 15, 2023 and continuing on the 15th day of each month through and including September 15, 2028, Borrower shall make principal and interest payments equal to $30,688.25 assuming a fixed rate of interest of 5.00% per annum based on a year of 360 days and a 15 year amortization schedule.  Beginning October 15, 2028 and continuing on the 15th day of each month through and including the Maturity Date, Borrower

- 3 -

EXHIBIT D

shall make monthly principal and interest payments based upon the then outstanding principal balance of the Loan, the then applicable Wall Street Journal rate as published in the Wall Street Journal plus a margin of 2.00 percentage points, adjusted as necessary for the minimum and maximum rate limitations for this Loan, and a continuation of the original 15 year amortization schedule. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date unless demanded earlier. All payments received by the Lender from the Borrower for application to this Agreement may be applied to the Borrower's obligations under this Agreement in such order as determined by the Lender.

Notwithstanding the above, if Lender receives payments from Borrower in the following amount and by the following dates, and provided that no Events of Default have occurred or are continuing, then Lender shall forgive any remaining balances of principal, interest or fees under the Loan ("Forgiveness Offer"):

- $3,000,000 paid by December 15, 2023;
- $3,116,000 paid by January 15, 2024;
- $3,232,000 paid by February 15, 2024;
- $3,348,000 paid by March 15, 2024;
- $3,464,000 paid by April 15, 2024;
- $3,580,000 paid by May 15, 2024;
- $3,696,000 paid by Jun 15, 2024;
- $3,812,000 paid by July15, 2024.

The foregoing payment amounts are exclusive of any amounts received with respect to the Loan prior to the date hereof and the $50,000 payment Borrower shall have made as of the date hereof. If any of the foregoing payment amounts are not received by the indicated date or if an Event of Default has occurred or is continuing, then the Forgiveness Offer shall be deemed automatically revoked and void. "

4. **Modification of Security Instruments**. The terms of the Security Instruments are hereby modified to the extent necessary to reflect the modification described above. Further, the Existing Mortgage shall be modified and confirmed by the terms of an Amended and Restated Mortgage executed in connection herewith (the "Restated Mortgage").

5. **Modification of Loan Documents**. The terms of any other Loan Document executed in connection with the Loan Agreement, or any amendment thereof, are hereby modified to the extent necessary to reflect the modification described above.

Except as modified by paragraphs 2, 3, 4 and 5 above, the Existing Loan Agreement, Existing Note, and Loan Documents continue in full force and effect and are hereby ratified and confirmed by Borrower. Hereafter, references to the Loan Agreement, Note, and Loan Documents in the Loan Documents shall be deemed to be references to the Existing Loan Agreement, Existing Note, and Loan Documents as amended and modified by this Modification.

- 4 -

  

Agreement, Existing Note, and Loan Documents as amended and modified by this Modification. _**Further, this Modification constitutes an amendment of and not a replacement or payment of the Existing Note.**_

6.  **Conditions Precedent to Lender's Commitment to Extend**.  This Amendment shall become effective as of the date first above written when and only when:

(a)  <u>Amendment Documents</u>.  Lender shall have received duly executed and delivered counterparts of this Modification, the Restated Mortgage, and any modifications or amendments to any other Loan Document deemed necessary by Lender (collectively, the "Amendment Documents") in form, substance and date satisfactory to Lender, and in such numbers as Lender or its counsel may reasonably request.  The Amendment Documents are Loan Documents.

(b)  <u>Other Documentation</u>.  Lender shall have received all documents and instruments which Lender has then reasonably requested, in addition to those described in this Section 6.  All such additional documents and instruments shall be reasonably satisfactory to Lender in form, substance and date.

(c)  <u>Pay Down</u>.  In connection with this Modification, Lender shall have received from Borrower a principal reduction payment on the Loan in an amount equal to $50,000.00.

(d)  <u>Additional Information</u>.  Lender shall have received the following to its complete satisfaction:

(i) Conditions, hours and any needed S/N on all items of equipment;

(ii) A complete current list of the location of the equipment;

(iii) Current financial information (company financials and personal financial statements and tax returns on guarantors), copies of all existing pipe/pad contracts, copies of all existing equipment leases, and copies of all insurance declarations/verifications on all equipment and real estate;

(iv) Documentation of the insurance carried on the mats, including the Declaration of Insurance specifying the policy details.

7.  **Ratification of Borrower's Obligations under Loan Documents**.  Borrower hereby reasserts, ratifies and reaffirms all of its obligations under the Loan Documents applicable to it and its performance of any and all of the Loan Documents, all of which shall continue in full force and effect.  Borrower specifically acknowledges, agrees and represents that:

(a)  There are no claims or offsets against, or defenses or counterclaims to, the terms or provisions of the Loan Documents, applicable to it, and the other obligations created or evidenced by the Loan Documents.

Case 24-80617    Doc 20-6    Filed 08/19/24    Entered 08/19/24 16:03:01    Desc Exhibit 6 -- State Court Petition    Page 28 of 66

(b)     Borrower has no claims, offsets, defenses or counterclaims arising from any of Lender's acts or omissions with respect to Loan Documents or Lender's performance under the Loan Documents.

(c)     No indulgence or part indulgence by Lender and nothing contained herein or in any other agreement between Borrower and Lender, nor any other action or inaction by Lender has waived or shall constitute a waiver of any default or Event of Default which may exist under the Loan Documents or an election of remedies by Lender or a waiver of any of the rights, remedies or recourse of Lender provided in any of the Loan Documents or otherwise afforded by Law or in equity.

(d)     Lender has satisfied and performed its obligations under the Loan Documents and all other documents pertaining to the indebtedness evidenced by the Note.

8.     **Lender's Agreement Upon Effectiveness**.   Upon the effectiveness of this Modification, Lender shall ensure a notice of settlement and dismissal without prejudice is filed in Case No. CJ-2023-18 in the Okfuskee County District Court, Okfuskee County, Oklahoma.

9.     **Default Hereunder**. The failure of Borrower to comply with any provision of this Modification or the breach of any representation, warranty or covenant contained in this Modification shall constitute an Event of Default under the Existing Agreement, the Existing Note, and all other Loan Documents, and any such Event of Default shall entitle Lender to exercise any and all remedies to which it may be entitled with respect to an Event of Default under such documents.

10.     **Notices**.   Any notice which shall or may be given in accordance with the provisions of this Modification shall be given in accordance with the Existing Loan Agreement.

11.     **Severability**. If any provision of this Modification is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Modification shall not be affected thereby; and in lieu of such illegal, invalid or unenforceable provisions, there shall be added automatically as a part of this Modification a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

12.     **Descriptive Headings**.   The descriptive headings of the paragraphs of this Modification are for convenience only and shall not be used in construction of the terms hereof.

13.     **Binding Effects**.   This Modification shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

14.     **Applicable Law**.   This Modification shall be deemed to be a contract made under the laws of the State of Oklahoma and shall be construed in accordance with the laws of the State of Oklahoma.

15.     **Counterpart**.   This Modification may be executed in one or more counterparts and all such counterparts shall be construed together as the Agreement.

- 6 -

# EXHIBIT D

*Signatures appear on the following page(s).*

2892640.1:412594.01725

**EXHIBIT D**

IN WITNESS WHEREOF, Lender and Borrower have caused this Modification to be duly executed effective as of the date set forth above.

"BORROWER"

CM HEAVY MACHINERY LLC, an Oklahoma limited liability company

By:   Clint Michael Meadors
Title:  Member

"LENDER"

GREAT PLAINS NATIONAL BANK

By:  Blake Johnson
Title:  Market President

*SIGNATURE PAGE FOR LOAN MODIFICATION AGREEMENT*

2892640.1:412594.01725

**EXHIBIT D**

## <u>JOINDER OF GUARANTOR</u>

The undersigned Guarantor certifies to GREAT PLAINS NATIONAL BANK ("Lender"), that its guaranty agreement dated on or about September 30, 2020 ("Guaranty") has been delivered in consideration of Lender's extension of credit to CM HEAVY MACHINERY LLC, an Oklahoma limited liability company evidenced by that certain Business Loan Agreement dated as September 30, 2020, as amended from time to time (the "Loan Agreement"), and warrants and represents that he is familiar with and has read the Loan Agreement, as amended from time to time, including most recently by that certain Note and Loan Modification Agreement dated effective as of the date hereof (the "Modification") and other Loan Documents. The undersigned also certifies that his or its Guaranty, as applicable, (i) is not affected by the Modification and (iii) continues in full force and effect.

Dated Effective October 11, 2023.

Clint Michael Meadows

2892640.1:412594.01725

**EXHIBIT D**

# EXHIBIT E



## COMMERCIAL SECURITY AGREEMENT

| Principal $5,786,839.90 | Loan Date 09-30-2020 | Maturity 03-16-2021 | Loan No 705244044 | Call / Coll 4A / 550 | Account *** | Officer RLW | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** CM Heavy Machinery LLC
111097 Hwy 27
Okemah, OK 74859

**Lender:** Great Plains National Bank
Midtown
601 NW 13th St
Oklahoma City, OK 73103

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated September 30, 2020, is made and executed between CM Heavy Machinery LLC ("Grantor") and Great Plains National Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**ALL BUSINESS ASSETS INCLUDING: ACCOUNTS RECEIVABLES, INVENTORY, EQUIPMENT**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, owed to Lender, whether of a like nature to the Note Indebtedness or not, whether arising from a loan or a purchased obligation, whether incurred for a consumer or a business purpose, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the

Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Oklahoma, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable

# EXHIBIT E

or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute lien entry forms and documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note or at the highest rate authorized by law, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default. If Lender is required by law to give Grantor notice before or after Lender makes an expenditure, Grantor agrees that notice sent by regular mail at least five (5) days before the expenditure is made or notice delivered two (2) days before the expenditure is made is sufficient, and that notice within sixty (60) days after the expenditure is made is reasonable.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Oklahoma Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise dispose of the Collateral. Unless the Collateral in whole or in part is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or of the time after which any private sale or other disposition is to be made. Notwithstanding any other provision of this Agreement, any requirement of notice for this purpose shall be met if notice is provided at least ten (10) days before any sale or other disposition or action. Lender shall be entitled to, and Grantor shall be liable for, all reasonable costs and expenditures incurred in realizing on Lender's security interest, including without limitation, all court costs, fees for sale, selling costs and reasonable attorneys' fees as set forth in the Note or in this Agreement. All such costs shall be secured by the security interest in the Collateral covered by this Agreement.

**Appoint Receiver.** In any action by Lender for the foreclosure of this Agreement, whether by judicial foreclosure or power of sale, Lender shall be entitled to the appointment of a receiver upon any failure of Grantor to comply with any term, obligation, covenant, or condition contained in this Agreement, the Note, or any Related Documents.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For such purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ABUNDANCE OF CAUTION MORTGAGES.** Abundance of Caution Mortgage - 3 Tracts, Okemah, OK. 74859, filed 1/16/2020, in Okfuskee County , Book 1270 - Page 547-550 , $8,250,000.00. .

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. All prior and contemporaneous representations and discussions concerning such matters either are included in this document or do not constitute an aspect of the agreement of the parties. Except as may be specifically set forth in this Agreement, no conditions precedent or subsequent, of any kind whatsoever, exist with respect to Grantor's obligations under this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help

# EXHIBIT E

enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent permitted by federal law, the laws of the State of Oklahoma without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Oklahoma.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Oklahoma County, State of Oklahoma.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** To the extent permitted by applicable law, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. To the extent permitted by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means CM Heavy Machinery LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means CM Heavy Machinery LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No: 705244044

Page 6

Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Great Plains National Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated September 30, 2020 and executed by CM Heavy Machinery LLC in the principal amount of $5,786,839.90, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED SEPTEMBER 30, 2020.

GRANTOR:

CM HEAVY MACHINERY LLC

By: _____
Clint Michael Meadors, Member of CM Heavy
Machinery LLC

LaserPro, Ver. 20.3.0.052 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - OK C:\LASERPRO\CFI\LPL\E40.FC TR-6792 PR-4

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER(optional)<br>CGRASSMANN  405-720-4702 |
| --- |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br><br>GREAT PLAINS BANK<br>601 NW 13TH ST<br><br>OKLAHOMA CITY, OK 73103 |

2020011302043450 UC1
01/13/2020 12:12:26 PM
Book:  Page:0
PageCount:1
Filing Fee:$10.00
Doc. Tax:$.00
**State of Oklahoma**
**County of Oklahoma**
**Oklahoma County Clerk**
**David B. Hooten**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME; Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| OR | 1a. ORGANIZATION'S NAME<br>CM HEAVY MACHINERY LLC | | | | |
| --- | --- | --- | --- | --- | --- |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>PO BOX 309 | | CITY<br>OKEMAH | STATE<br>OK | POSTAL CODE<br>74859 | COUNTRY |

2. DEBTOR'S NAME; Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| OR | 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME:(or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY ): Provide only one Secured Party name ( 3a or 3b)

| OR | 3a. ORGANIZATION'S NAME<br>GREAT PLAINS BANK | | | | |
| --- | --- | --- | --- | --- | --- |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>601 NW 13TH ST | | CITY<br>OKLAHOMA CITY | STATE<br>OK | POSTAL CODE<br>73103 | COUNTRY |

4.COLLATERAL: This FINANCING STATEMENT covers the following collateral:

ALL ACCOUNTS,CHATTEL PAPER, EQUIPMENT, FIXTURES, GENERAL INTANGIBLES, INVENTORY, INVESTMENT PROPERTY, INSTRUMENTS, AND DEPOSIT ACCOUNTS; WHETHER ANY OF THE FOREGOING IS OWNED NOW OR ACQUIRED LATER; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KIND RELATING TO ANY OF THE FOREGOING; ALL PROCEEDS RELATING TO THE FOREGOING (INCLUDING INSURANCE, GENERAL  INTANGIBLES AND OTHER ACCOUNTS PROCEEDS)

| 5. Check only if applicable and check only one box: Collateral is | held in a Trust (see instructions) | being administered by a Decedent's Personal Representative | |
| --- | --- | --- | --- |
| 6a. Check only if applicable and check only one box:<br>☐ Public- Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | 6b.Check only if applicable and check only one box<br>☐ Agricultural Lien  ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer | ☐ Bailee/Bailor  ☐ Licensee/Licensor | |
| 8. OPTIONAL FILER REFERENCE DATA | | | |

UCC FINANCING STATEMENT (FORM UCC1) (REV. 11/01/15)

# EXHIBIT F-2

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Kim Murray**

B. E-MAIL CONTACT AT FILER (optional)
**kmurray@gpbankok.net**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Great Plains Bank**
**601 NW 13th St.**
**Oklahoma City, OK 73103-____**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **CM HEAVY MACHINERY LLC** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **PO BOX 649** | **OKEMAH** | **OK** | **74859** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **GREAT PLAINS NATIONAL BANK** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **601 NW 13TH STREET** | **OKLAHOMA CITY** | **OK** | **73103** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

All pipeline mats owned by CM Heavy Machinery LLC, primarily located at 21144 US Hwy 301, Enfield, North Carolina, 27823 and that certain tract of land composed of 9.87 acres, more or less, located in Cumberland County, North Carolina and being more particularly described in Book 2401, Page 671, of the public records of said County, now owned or hereafter acquired by CM Heavy Machinery LLC, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise).

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

EXHIBIT F-2

2022081502086166
08/15/2022 03:45:13 PM  Pgs: 2
Fee: $10.00
Danny Lambert, Deputy County Clerk
Oklahoma County - State of Oklahoma



**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER(optional)
**KIM MURRAY 405-720-4702**

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
**GREAT PLAINS NATIONAL BANK**
**601 NW 13TH ST**
**OKLAHOMA CITY, OK 73103**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| OR | 1a. ORGANIZATION'S NAME **CM HEAVY MACHINERY LLC** | | | | |
|---|---|---|---|---|---|
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 1c. MAILING ADDRESS **111097 HWY 27** | CITY **OKEMAH** | STATE **OK** | POSTAL CODE **74859** | COUNTRY |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| OR | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY ): Provide only one Secured Party name ( 3a or 3b)

| OR | 3a. ORGANIZATION'S NAME **GREAT PLAINS NATIONAL BANK** | | | | |
|---|---|---|---|---|---|
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | 3c. MAILING ADDRESS **601 NW 13TH ST** | CITY **OKLAHOMA CITY** | STATE **OK** | POSTAL CODE **73103** | COUNTRY |

4 COLLATERAL: This FINANCING STATEMENT covers the following collateral:
**SEE ATTACHED EXHIBIT A**

| 5. Check only if applicable and check only one box: Collateral is | ☐ held in a Trust (see instructions) | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | 6b.Check only if applicable and check only one box ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer | ☐ Bailee/Bailor ☐ Licensee/Licensor | |
| 8. OPTIONAL FILER REFERENCE DATA | | | |

UCC FINANCING STATEMENT (FORM UCC1) (REV. 11/01/15)

# EXHIBIT A

| MFG YEAR | MAKE | MODEL | DESCRIPTION | VIN-S/N |
|---|---|---|---|---|
| 2018 | KOMATSU | D85PX-18 | DOZER | 23074 |
| 1963 | CATERPILLAR | 594 | PIPELAYER | 66A00933 |
| 2014 | CATERPILLAR | D6T XW | DOZER | SLJ01188 |
| 2018 | KOMATSU | D65PX-18 | DOZER | 90651 |
| 2018 | KOMATSU | D65PX-18 | DOZER | 91046 |
| 2020 | KOMATSU | GD655-6 | MOTOR GRADER | 60468 |
| 2017 | CATERPILLAR | 323FL | EXCAVATOR | XCF10395 |
| 2018 | MAINLINE | 80" | ROLLIGON TRAILER | K311 |
| 2018 | TRAIL KING | TK110HDG | SEMI TRAILER | 6416 |
| 2021 | MCCORMICK | X6 470 | TRACTROR | SW5CH4367 |
| 2012 | CASE | 821F | LOADER | W00740C0194414 |
| 2010 | KOMATSU | EXCAVATOR | PC270LC-8 | A87397 |
| 1967 | CATERPILLAR | 572 | PIPELAYER | 65A327 |
| 2019 | KUBOTA | SVL95 | SKID STEER W/BUCKET & FORKS | 43100 |
| 2018 | HAMM | H12I | ROLLER | H2350152 |
| 2017 | REMU | EX140 | PADDING BUCKET | 14290 |
| 2017 | REMU | EX140 | PADDING BUCKET | 14289 |
| 2017 | REMU | EX140 | PADDING BUCKET | 14291 |
| 2002 | KOMATSU | D61-PX | DOZER | B1810 |
| 1981 | CATERPILLAR | D6D | TACK RIG | 4X9132 |
| 2021 | MASCHIO | DMR 3500 | CAGE ROLLER | LM98N035 |
| 2021 | MCCORMICK | MCL51 | LOADER FOR TRACTOR | 1011949344 |
| | JOHN DEERE | 2940 | INDUSTRIAL TRACTOR | 447381CD |
| 1979 | TRI | | HAY TRAILER | 51379TR1 |
| 2006 | FOUNTAINE | 53' FLOAT | SEMI TRAILER | 50778 |
| 1975 | LUFKIN | | FLATBED TRAILER | 45409 |
| 2018 | FRIESEN | BUMBER PULL | TRAILER | CM-4503 |
| | CATERPILLAR | ATTACHMENT | RIPPER FOR D7 | 8SH00764 |
| | CATERPILLAR | ATTACHMENT | D6 SU BLADE | 1WP02120 |
| | CATERPILLAR | ATTACHMENT | D6 SU BLADE | 1WP04704 |
| | CATERPILLAR | ATTACHMENT | D6 SU BLADE | 1WP03477 |
| | CATERPILLAR | ATTACHMENT | SEMI U BLADE | 4DB0109 |
| 2019 | CHAPPELL | 535 GALLON | WATER TRAILER | CM-1806 |
| 1980 | FRUEHAUF | FBZ F2 | JOBSITE OFFICE TRAILER | MEV652754 |
| | KOMATSU | ATTACHMENT | ROME CUTTER - D65PXA | S0G4236 |
| | KOMATSU | ATTACHMENT | ANGLE BLADE - D65PXA | E19413 |
| | KOMATSU | ATTACHMENT | ANGLE BLADE - D65EX-15 | E84236 / KG61A-111 |
| | KOMATSU | ATTACHMENT | ANGLE BLADE - D155AX-6 | CSL1935 |
| 1969 | LINCOLN | SA200 | WELDER | A470553 |
| 1970 | LINCOLN | SA200 | WELDER | 660685 |
| 2012 | McKINNEY | CX10-2252 | SHIPPING CONTAINER | CX1C1566824 |
| | | ATTACHMENT | SU DOZER BLADE | 6X0512-00 |
| 2013 | | SK30005VH | POWER WASHER | PW-0001 |

# EXHIBIT G

I-2023-475391      Book 1327 Pg 358
10/17/2023 11:22am      Pg 0358-0378
Fee: $58.00   Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma   *LS*



MORTGAGE TAX
PAID $4,136.90 REC. # 98
DATE OCT 17 2023
OKFUSKEE COUNTY, OK
TREASURER



## OKFUSKEE COUNTY, OKLAHOMA

## AMENDED AND RESTATED COMMERCIAL REAL ESTATE MORTGAGE

### FROM

### CM HEAVY MACHINERY, LLC AND CLINT MICHAEL MEADORS

### TO

### GREAT PLAINS NATIONAL BANK

**Dated Effective October 11, 2023**

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE BANK TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY MORTGAGORS UNDER THIS MORTGAGE.**

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS. THIS MORTGAGE WITH POWER OF SALE, SECURITY AGREEMENT, ASSIGNMENT AND FINANCING STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS.

This instrument was prepared by and the recorded counterparts should be returned to:

> Hall Estill
> A Professional Corporation
> c/o Daniel V. Carsey, Esq.
> 100 North Broadway, Suite 2900
> Oklahoma City, OK 73102

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391     Book 1327 Pg 359
10/17/2023 11:22am     Pg 0358-0378
Fee: $58.00 Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

## AMENDED AND RESTATED COMMERCIAL REAL ESTATE MORTGAGE

THIS AMENDED AND RESTATED COMMERCIAL REAL ESTATE MORTGAGE (this "Mortgage") is given and made as of October 11, 2023 from CM HEAVY MACHINERY, LLC, an Oklahoma limited liability company, and CLINT MICHAEL MEADORS, an individual, both having a mailing address of 111097 Highway 27, Okemah, Oklahoma 74859 (the "Mortgagors"), to GREAT PLAINS NATIONAL BANK, a national banking association, having a mailing address of 6701 N. Broadway Extension, Suite 400, Oklahoma City, Oklahoma 73116, Attention: Brett Miller, Chief Credit Officer (the "Bank"). All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement (defined below).

I.      CM HEAVY MACHINERY, LLC and Bank entered into that certain Business Loan Agreement dated December 16, 2019, as restated on September 30, 2020, as further amended and restated from time to time including most recently by that certain Loan Modification Agreement dated as of even date herewith (as may be further amended, modified, supplemented, restated, replaced, renewed, and/or extended from time to time, the "Loan Agreement"). CM HEAVY MACHINERY, LLC, to evidence the indebtedness owed to the Bank under the Loan Agreement, has executed and delivered to the Bank that certain Promissory Note executed on December 16, 2019, as restated on September 30, 2020, and as further modified from time to time including by that certain Loan Modification Agreement dated as of even date herewith in the stated principal amount of $5,786,839.90 pursuant to the terms of the Loan Agreement (as it may be further amended, modified, supplemented, restated, replaced, renewed, extended and/or increased from time to time, the "Note"). The Note, which has a maturity date of October 15, 2038, is payable to the order of the Bank (or other holder thereof) and bears interest at the rate provided for in the Loan Agreement. Furthermore, this Mortgage amends and restates the Commercial Real Estate Mortgage recorded at Book 1270, Page 547, in the land records of and for Okfuskee County, Oklahoma.

II.      The Bank would not continue to make the loan contemplated by the Loan Agreement and Note unless the Mortgagors execute and deliver this Mortgage to the Bank.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and adequate consideration, the receipt of which is hereby acknowledged, and to secure to the Bank the payment of the Secured Indebtedness (as defined in Section 1.1) and the performance of the covenants and agreements contained in the Loan Agreement, the Note, this Mortgage, and the other Loan Documents (as defined in Section 1.1(b)), the Mortgagors do hereby grant, bargain, sell, convey and mortgage unto the Bank all of the Mortgagors' present and future estate, right, title and interest in and to the Real Property (as defined below) including all of its right, title and interest in and to the following described property (together with the Real Property, the "Mortgaged Property"), whether now or hereafter acquired and owned by the Mortgagors in the name of the Mortgagors or in the name of a nominee or other agent for the Mortgagors:

A.      all right, title and interest of the Mortgagors in, to and under the real property situated in Okfuskee County, State of Oklahoma, described on Exhibit "A" attached hereto and made a part hereof by reference, together with all and singular the easements, rights-of-way, franchises, servitudes, licenses, privileges, passages, sewer rights, water courses, water rights, lawn plants, shrubbery, tenements, hereditaments and appurtenances, now or hereafter belonging, relating or appertaining thereto, and all the estate, right, title and interest of Mortgagors in and to the roads, streets, ways and alleys public and/or private adjoining or adjacent to the same and any land lying in the bed of any street, road, avenue, lane or right-of-way in front of, adjoining or adjacent to the same, including ingress and egress easements (collectively the "Real Property");

B.      all right, title and interest of the Mortgagors in, to, under or derived from all buildings, structures, facilities and other improvements of every kind and description now or hereafter located on the Real Property , if any, including all parking areas, roads, driveways, walks, fences, walls, drainage facilities

2

2892722.1:412594.01725

**EXHIBIT G**

# EXHIBIT G

**I-2023-475391**      Book 1327 Pg 360
10/17/2023 11:22am      Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

and other site improvements, all water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone and other utility equipment and facilities, all plumbing, lighting, heating, ventilating, air-conditioning, refrigerating, incinerating, compacting, fire, protection and sprinkler, surveillance and security, public address and communications equipment and systems, all awnings, floor coverings, partitions, elevators, escalators, motors, machinery, pipes, fittings and other items of equipment and personal property of every kind and description now or hereafter located on the Real Property or attached to the improvements which by the nature of their location thereon or attachment thereto are real property under applicable law; and including all materials intended for the construction, reconstruction, repair, replacement, alteration, addition or improvement of or to such buildings, equipment, fixtures, structures and improvements, all of which materials shall be deemed to be part of the Real Property immediately upon delivery thereof on the Real Property and to be part of the improvements immediately upon their incorporation therein (the foregoing being collectively the "Improvements;" and the Real Property with the Improvements thereon and Equipment as defined below therein and appurtenant rights thereto being collectively called the "Property");

C.    all estate, right, title and interest of the Mortgagors in, to, under or derived from all machinery, equipment, fixtures and accessions thereof and renewals and replacements thereof and substitutions therefor, if any, (including, but not limited to, chairs, tables, counters, furniture, cookware, drink dispensers, ice makers, electronic equipment, computers, security systems, heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air conditioning systems, grills, stoves, ranges, fryers, refrigerators, tools, machinery, engines, motors, boilers, incinerators, conduits, vacuum cleaning systems, electrical signs, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers, recreational items, windows or structural cleaning rigs), and other tangible property of every kind and nature whatsoever owned by the Mortgagors, or in which the Mortgagors has or shall have an interest, now or hereafter located upon the Real Property, or appurtenant thereto, or usable exclusively in connection with the present or future operation and occupancy of the Real Property or the Improvements (hereinafter collectively called the "Equipment");

D.    all estate, right, title and interest of the Mortgagors in, to, under or derived from all tenements, hereditaments and appurtenances now or hereafter relating to the Real Property; the streets, roads, sidewalks and alleys abutting the Real Property; all air space and rights to use air space above the Real Property; all development, operating or similar rights appurtenant to the Real Property (including, without limitation, all rights arising from reciprocal access agreements, joint occupancy, use or development agreements, and parking agreements); all rights of ingress and egress now or hereafter appertaining to the Real Property; and all easements, licenses and rights of way now or hereafter appertaining to the Real Property;

E.    all estate, right, title and interest of the Mortgagors in, to, under or derived from all contract rights, and general intangibles, in each case relating to the Property, if any, or to the present or future operation or occupancy of the Property, and all plans, specifications, maps, surveys, studies, books of account, records, files, insurance policies, guarantees and warranties, all relating to the Property or to the present or future operation or occupancy of the Property, all architectural, engineering, construction and management contracts, all supply and service contracts for water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone and other utilities relating to the Property and all other agreements affecting or relating to the use, enjoyment or occupancy of the Property;

F.    all estate, right, title and interest of the Mortgagors in, to, under and derived from all leases of or relating to the Property, if any, (together with all amendments, supplements, consolidations, replacements, restatements, extensions, renewals and other modifications of any thereof), if any, now or hereafter in effect, whether or not of record (the "Leases"); and the right to bring actions and proceedings

3

# EXHIBIT G

**I-2023-475391**    Book 1327 Pg 361
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

under the Leases or for the enforcement thereof and to do anything which the Mortgagors or any lessor is or may become entitled to do under the Leases;

G.      all estate, right, title and interest of the Mortgagors in, to, under or derived from all rents, royalties, issues, profits, receipts, revenue, income, earnings and other benefits now or hereafter accruing with respect to all or any portion of the Real Property, if any, including all rents and other sums now or hereafter payable pursuant to the Leases; all other sums now or hereafter payable with respect to the use, occupancy, management, operation or control of the Real Property; and all other claims, rights and remedies now or hereafter belonging or accruing to Mortgagors with respect to the Real Property, including oil, gas and mineral royalties (collectively, the "Rents");

H.      all estate, right, title and interest of the Mortgagors in, to, under or derived from all licenses, authorizations, certificates, variances, consents, approvals and extensions, improvements, betterment, renewal substitutions and replacements of, if any, and additions and appurtenances to, any of the Real Property hereafter acquired by or released to the Mortgagors or constructed or located on, or attached to, the Real Property;

I.      all estate, right, title and interest of the Mortgagors in, to, under or derived from all proceeds of any sale, transfer, taking by condemnation (or any proceeding or purchase in lieu thereof), financing, refinancing or a conversion into cash or liquidated claims, whether voluntary or involuntary, of any of the Mortgaged Property, including all insurance proceeds and awards and title insurance proceeds under any title insurance policy now or hereafter held by the Mortgagors, and all rights, dividends and other claims of any kind whatsoever (including damage, secured, unsecured, priority and bankruptcy claims) now or hereafter relating to the Mortgaged Property, all of which the Mortgagors hereby irrevocably directs be to be held, applied, and disbursed as provided in this Mortgage, except to the extent Mortgagors is permitted to use such insurance proceeds to repair or rebuild the Improvements or any portion thereof, as permitted herein or in the Loan Agreement; and

J.      all proceeds of any and all of the above items A. through I. (all such items A. through J. being sometimes referred to as the "Collateral").

TO HAVE AND TO HOLD the Mortgaged Property unto the Bank to secure payment of the Secured Indebtedness as hereinafter described.

The expression "Mortgagors' successors," as used herein, shall mean each of the Mortgagors' successors and assigns. The Mortgagors hereby bind themselves and the Mortgagors' successors to warrant and forever defend, all and singular the Mortgaged Property, unto the Bank and its successors assigns, forever, against every person and entity whomsoever now or hereafter claiming same or any part thereof.

For the considerations stated in this Mortgage, as respects that portion of the Mortgaged Property that now or hereafter, consists of Equipment, General Intangibles (expressly excluding any digital assets in the form of cryptocurrencies), accounts receivable, contract rights, Fixtures, proceeds or products of such collateral (as such terms are defined in the Uniform Commercial Code as in effect in the State of Oklahoma), if any, the Mortgagors hereby grant to the Bank a security interest in all such now owned or hereafter acquired properties, rights and interests to secure the payment of the Secured Indebtedness and the performance of the obligations of the Mortgagors contained in the Loan Agreement, this Mortgage, the Note, or in any other Loan Document (as defined in Section 1.1(b)).

The Mortgagors, in consideration of the foregoing premises and to induce the Bank to make the loans described above, hereby covenants and agrees with the Bank as follows:

2892722.1:412594.01725

**EXHIBIT G**

# EXHIBIT G

I-2023-475391    Book 1327 Pg 362
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

## ARTICLE I.

### INDEBTEDNESS SECURED

1.1 <u>Secured Indebtedness</u>. This Mortgage is given to secure the Mortgagors' obligations under the Loan Agreement, the Note and the other Loan Documents, and all of the following indebtedness and all amendments, extensions, renewals, modifications, rearrangements or increases of any of the following indebtedness (the "<u>Secured Indebtedness</u>"):

(a) <u>Note</u>. The indebtedness bearing interest at a rate therein provided and evidenced by and payable according to the terms of the Note.

(b) <u>Other Indebtedness</u>. All indebtedness incurred or arising pursuant to the provisions of the Loan Agreement, the Note, this Mortgage, and any other security agreements, agreements, or instruments executed in connection with the Note and this Mortgage (each, a "<u>Loan Document</u>" and collectively, the "<u>Loan Documents</u>").

(c) <u>Future Indebtedness</u>. All extensions or renewals of all indebtedness described in Section 1.1(a) and Section 1.1(b) above, and all loans and advances that the Bank may hereafter make to the Mortgagors under the Loan Documents and all other and additional debts, obligations and liabilities of every kind and character of the Mortgagors, now or hereafter existing in favor of the Bank under the Loan Documents, regardless of whether such debts, obligations or liabilities are direct or indirect, primary or secondary, joint, several, fixed or contingent, and irrespective of the manner in which same may be incurred and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by the Bank, are or have been payable to or in favor of, some other person or entity, or have been acquired by the Bank in a transaction with anyone other than the Mortgagors, together with any and all renewals and extensions of such indebtedness, loans, advances, debts, obligations and liabilities, or any part thereof, and all interest, reasonable attorneys' fees, and other charges thereof, or incurred in connection therewith, it being contemplated by the Mortgagors and the Bank that the Bank may from time to time make additional loans and future advances hereunder. Any additional loan or advance made hereunder must be made with notice and consent of anyone bound by this Mortgage, other than the person or party to whom the advance or loan is made, but nothing contained herein shall impose upon the Bank the duty or obligation to make any additional loan or advance.

## ARTICLE II.

### REPRESENTATIONS AND WARRANTIES

The Mortgagors represent and warrant to the Bank as follows:

2.1 <u>Existence and Power</u>. CM HEAVY MACHINERY, LLC is a limited liability company duly organized, validly existing, and in good standing under Oklahoma law. The CM HEAVY MACHINERY, LLC has adequate power, authority and legal right to own, operate and possess the Mortgaged Property, and to grant, sell, transfer and mortgage, and grant a security interest in, the Mortgaged Property. CM HEAVY MACHINERY, LLC is duly authorized, qualified and licensed under all applicable laws to carry on its business at the locations where it conducts such business, and operate and own the Mortgaged Property. The execution, delivery and performance of this Mortgage by CM HEAVY MACHINERY, LLC will not violate any applicable law, rule, regulation, ordinance, judgment or order, the provisions of its Articles of Organization and Operating Statement, good standing authority, or any other agreement or instrument binding upon CM HEAVY MACHINERY, LLC, or applicable to, affecting or covering the Mortgaged Property.

5

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391     Book 1327 Pg 363
10/17/2023 11:22am        Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

2.2     Title.

(a)     (i) The Mortgagors are the owners of good and marketable title to the Real Property and holds good and marketable title to the Improvements, and none of the Real Property or Improvements are subject to any mortgage, pledge, security interest, encumbrance, lien, or charge of any kind ("Liens") except for the Permitted Encumbrances, liens for property taxes not yet due, such other liens as are permitted pursuant to the terms of the Loan Documents and encumbrances or liens in favor of the Bank (collectively, the "Permitted Liens"); (ii) the Mortgagors are the owners of good and marketable title to the Equipment and the other personal property encumbered by this Mortgage, free and clear of all Liens, other than Permitted Liens; (iii) the Mortgagors have good and lawful right to mortgage the Real Property to the Bank without the consent of any person other than those consents which have been obtained; (iv) when properly recorded in the appropriate records, the lien created by this Mortgage will constitute a valid, binding and enforceable first mortgage lien on the Real Property, subject only to the Permitted Liens; and (v) the Permitted Liens do not materially interfere with or materially adversely affect the use, value or operation of the Real Property.

(b)     This Mortgage, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (i) a valid, perfected first priority lien on the Real Property, subject only to Permitted Encumbrances and (ii) perfected security interests in and to, and perfected collateral assignments of, all personalty (including any Leases), all in accordance with the terms thereof, subject only to Permitted Encumbrances. This Mortgage, when properly recorded in the appropriate records, creates a valid first priority assignment of, or a valid first priority security interest in, certain rights under any related Leases, subject only to a license granted to Mortgagors to exercise certain rights and to perform certain obligations of the lessor under such Leases, including the right to operate the Real Property. No Person other than Mortgagors owns any interest in any payments due under such Leases that is superior to or of equal priority with Bank's interest therein. Prior to termination of this Mortgage, Mortgagors shall warrant, defend and preserve the title and the validity and priority of the lien of this Mortgage and shall warrant and defend the same to Bank against the claims of all persons whomsoever.

(c)     The Mortgagors shall (i) cause the representations and warranties in subsection (a) of this Section to continue to be true in each and every material respect at all times prior to the termination of this Mortgage, and (ii) preserve, protect, warrant and defend at all times prior to the termination of this Mortgage (A) the estate, right, title and interest of the Mortgagors in and to the Mortgaged Property, (B) the validity, enforceability and priority of the lien of this Mortgage, and (C) the right, title and interest of the Bank and any purchaser at any sale of the Mortgaged Property hereunder, in each case against all other liens and claims whatsoever, subject only to the Permitted Liens.

(d)     Upon the recording of this Mortgage in the county recording office of the county in which the Real Property is located, the lien of this Mortgage shall be a perfected mortgage lien and fixture filing on the Mortgaged Property prior to all liens other than the Permitted Liens. Other than the Permitted Liens, there are no liens or encumbrances other than the lien of this Mortgage upon the Real Property or any portion thereof, and the Mortgagors shall not grant or suffer to exist any other lien or encumbrance upon the Real Property without Bank's written approval.

(e)     The Mortgagors shall perform all acts that may be necessary to continue, maintain, preserve and protect and perfect the Mortgaged Property, the lien granted to the Bank herein and the perfected priority of such lien. Upon request by the Bank, the Mortgagors shall at its sole cost and expense (i) promptly correct any defect or error that may be discovered in this Mortgage or any financing statement or other document relating hereto, and (ii) promptly execute, acknowledge, deliver, record, and re-record,

6

2892722.1:412594.01725

# EXHIBIT G

**I-2023-475391**    Book 1327 Pg 364
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

register and re-register, and file and re-file this Mortgage and any fixture filings, financing statements or other documents that the Bank may reasonably require from time to time (all in form and substance reasonably satisfactory to the Bank) in order (A) to effectuate, complete, perfect, continue or preserve the lien of this Mortgage on the Collateral, whether now owned or hereafter acquired, subject only, with respect to the Mortgaged Property, to the Permitted Liens, (B) to correct or change the name of the Mortgagors following any change in its identity, sale of the Real Property, or assumption of the loans pursuant to the Loan Agreement, or (C) to effectuate, complete, perfect, continue or preserve any right, power or privilege granted or intended to be granted to the Bank hereunder. Upon the occurrence of an Event of Default described in Article V of this Mortgage that continues beyond any applicable notice and cure period, the Bank is hereby irrevocably appointed the true and lawful attorney of the Mortgagors and any subsequent owner of the Real Property to take, in its own name or in the name of the Mortgagors or any subsequent owner of the Real Property, all such actions as the Bank may deem necessary to correct any issues related to the perfection of this lien under this Section 2.2(e). If Mortgagors fails to timely execute such required documents, the Bank may execute all necessary documents, deeds and instruments to effectuate the provisions of this Section 2.2(e), the Mortgagors or any subsequent owner of the Real Property hereby ratifying and confirming all that their said attorney or such substitutes shall lawfully do by virtue hereof. Nevertheless, the Mortgagors or any subsequent owner of the Real Property, if so requested in writing by the Bank, shall ratify and confirm any such sale by executing and delivering to the Bank any document or instrument which, in the judgment of the Bank, is suitable or appropriate therefor.

      2.3    Compliance with Laws. The Mortgagors' ownership, use and operation of its assets and properties comply in all material respects with any and all applicable federal, state and local laws, statutes, rules, regulations, ordinances and orders.

## ARTICLE III.

### ADDITIONAL COVENANTS

      The Mortgagors further covenants and promises to the Bank as follows:

      3.1    Defense against Claims. If the validity or priority of this Mortgage, or of any rights, title, liens or interests created or evidenced hereby with respect to the Mortgaged Property, or any part thereof, are endangered, questioned or attacked, directly or indirectly, or if any legal proceedings are instituted against the Mortgagors in respect thereto, the Mortgagors will give written notice thereof to the Bank and, at the Mortgagors' own cost and expense, the Mortgagors will diligently endeavor to cure any defects that may be developed or claimed and will take all necessary and proper steps for the defense of such legal proceedings, including, but not limited to, the employment of counsel, the prosecution or defense of litigation, and the release or discharge of all adverse claims. If the Mortgagors does not fulfill the foregoing duties, the Bank is hereby authorized and empowered to take such additional steps as in the Bank's judgment or discretion may be necessary or proper in the defense of such legal proceedings, including, but not limited to, the employment of independent counsel, the prosecution or defense of litigation, and the compromise or discharge of any adverse claims made with respect to the Mortgaged Property. All expenses so incurred of every kind and character will be a demand obligation owing by the Mortgagors and will bear interest from the date of expenditure until paid at the highest rate applicable under the Note during the existence of an Event of Default (the "Default Rate"), and will be secured by the lien and security interest evidenced by this Mortgage. The party incurring such expense shall be subrogated to all rights of the person receiving such payment. The above and foregoing covenants will at all times be construed to be covenants for the benefit of the Bank and will remain in full force and effect, notwithstanding the assignment hereof or the payment of all the Secured Indebtedness and the release, either partially or wholly, of the lien hereof or any foreclosure thereof.

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391    Book 1327 Pg 365
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

3.2    <u>Sale, Encumbrance or Removal</u>.  Except as may otherwise be provided in the Loan Agreement, the Mortgagors will not at any time during the existence of this Mortgage, without first obtaining the Bank's prior written consent, sell, assign, transfer, mortgage, encumber, or otherwise dispose of any of the Mortgaged Property, or remove or permit to be removed, any Improvements at any time covered hereby from the premises upon which the same may be situated, except in the ordinary course of business.

3.3    <u>Extensions and Substitutions</u>.  By agreement with the maker or makers of any instrument evidencing any indebtedness at any time secured hereby, the Bank, without notice to or consent of any other party to this Mortgage, may from time to time extend the time of payment of the whole or any part of the Secured Indebtedness, or may accept from said maker or makers one or more new instruments in the same or different form in renewal of or by way of substitution for any instrument of indebtedness without in any manner impairing or affecting the lien and security interest of this Mortgage or any of the Bank's rights hereunder.

3.4    <u>Preservation of Mortgaged Property</u>.  The Mortgagors will keep and maintain all Mortgaged Property, or cause all Mortgaged Property to be kept and maintained, in reasonably good repair and sufficient operating condition including the making of all necessary repairs, renewals, replacements, additions and improvements.  The Mortgagors will not knowingly commit or suffer to be committed any physical waste of the Mortgaged Property or permit any lien or encumbrance of any kind or character, except in favor of the Bank, to accrue or remain on the Mortgaged Property or any part thereof.

3.5    <u>Operation</u>.  The Mortgagors will operate the Mortgaged Property, or will cause the Mortgaged Property to be operated, in a good and workmanlike manner in material accordance with all applicable laws.

3.6    <u>Taxes</u>.  The Mortgagors will pay, or cause to be paid, before delinquent, all taxes, assessments and other governmental charges of every kind and character now or hereafter levied, imposed or assessed against the Mortgaged Property, or any party thereof, or which might become a lien thereon, including all such as may be incident to the operation, development or maintenance of said property.

3.7    <u>Debts</u>.  The Mortgagors will pay or cause to be paid all debts and liabilities of the Mortgagors of any character.

3.8    <u>Reserved</u>.

3.9    <u>Indemnification</u>.  The Mortgagors will indemnify and hold the Bank harmless from and against all claims, demands, liabilities and causes of action asserted against the Bank on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, this Mortgage or any of the Secured Indebtedness, except for (i) the Bank's willful misconduct or gross negligence or (ii) those occurring after a foreclosure or conveyance in lieu of foreclosure.

3.10    <u>Additional Documents</u>.  Whenever reasonably requested by the Bank, the Mortgagors will promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances and will promptly do or cause to be done all such other and further things as may by the Bank be reasonably deemed necessary, expedient or advisable in order to better and more fully preserve or vest in the Bank all rights, interests, powers, benefits, privileges and advantages conferred by this Mortgage.

3.11    <u>Insurance</u>.  The Mortgagors shall maintain at least the types and policy amounts of insurance required by the Loan Agreement.

2892722.1:412594.01725

**EXHIBIT G**

# EXHIBIT G

I-2023-475391     Book 1327 Pg 366
10/17/2023 11:22am     Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

3.12   Condemnation and Casualty.

(a)     *Condemnation Awards*.  If all or any material portion of the Mortgaged Property is taken or damaged under the power of eminent domain, the award received by condemnation proceedings for any property so taken or any payment received in lieu of such condemnation proceedings may be applied, at Bank's option, either towards the repair and restoration of the Improvements made necessary as a result of such taking, in a manner and on terms reasonably satisfactory to the Bank or, if no such repair or restoration is necessary for the operation of the Mortgaged Property paid directly to the Bank as agent for the Mortgagors.  All or any portion of such award or payment, at the option of the Bank, will be applied to the Secured Indebtedness in payment of the last maturing installments of the Secured Indebtedness or will be paid over, wholly or in part, to the Mortgagors for any purpose or object satisfactory to the Bank, provided that the Bank will not be obligated to see to the application of any amount paid over to the Mortgagors.  If no Event of Default has occurred and is continuing beyond any applicable notice and cure period, and Mortgagors has reasonably satisfied Bank that the net operating income from the Mortgaged Property, through business interruption insurance and/or Leases or otherwise, will not be materially adversely impacted, (i) the proceeds of any condemnation award received by Bank shall be applied to the restoration and repair of the portion of the Mortgaged Property not taken, (ii) Mortgagors shall restore and repair the portion of the Mortgaged Property not taken in a manner reasonably satisfactory to Bank; and (iii) Bank shall, promptly upon receipt of satisfactory proof of such expenditure or proposed expenditure reasonably approved by Bank, pay or reimburse Mortgagors from the condemnation award proceeds for the reasonable cost of such repair or restoration.  Any award proceeds remaining after such disbursement may, in Bank's reasonable discretion, be applied by Bank to the reduction of the Secured Indebtedness or disbursed to Mortgagors.  The Mortgagors, immediately upon obtaining knowledge of the institution of any proceedings or negotiations for the condemnation of the Mortgaged Property, or any portion thereof, will notify the Bank of the pendency of such negotiations or proceedings.  The Bank may participate in any such negotiations or proceedings, provided, however, that Mortgagors shall retain ultimate decision-making authority, and, and the Mortgagors from time to time will execute and deliver to the Bank all instruments requested by the Bank to permit such participation.  Any obligation of Mortgagors to restore the Real Property is contingent upon the Bank's payment to Mortgagors of all award and/or payment proceeds received by Bank as a result of any taking.  For purposes of this paragraph, a taking of a "material" portion means (i) access to the Improvements will be materially and negatively impacted following the taking, (ii) [intentionally omitted], (iii) the taking diminishes the value of the Property by more than $500,000.00, or (iv) the cost of restoring and repairing the portion of the Mortgaged Property not taken exceeds $500,000.00.

(b)     *Casualty*.  If all or any material portion of the Improvements on the Mortgaged Property are damaged or destroyed by an event of casualty the net hazard insurance proceeds may be applied, at Mortgagors' option, either toward replacing or restoring the Improvements, in a manner and on terms satisfactory to Bank, or as a credit against such of the Secured Indebtedness, whether matured or unmatured, as Mortgagors shall determine or, if no such repair or restoration is necessary for the operation of the Mortgaged Property paid directly to the Bank as agent for the Mortgagors.  All or any portion of such award or payment, at the option of the Bank, will be applied to the Secured Indebtedness in payment of the last maturing installments of the Secured Indebtedness or will be paid over, wholly or in part, to the Mortgagors for any purpose or object satisfactory to the Bank, provided that the Bank will not be obligated to see to the application of any amount paid over to the Mortgagors.  If no Event of Default has occurred and is continuing beyond any applicable notice and cure period, and Mortgagors has reasonably satisfied Bank that the net operating income from the Mortgaged Property, through business interruption insurance and/or Leases or otherwise, will not be materially adversely impacted, (i) the proceeds of any insurance received by Bank shall be applied to the restoration and repair of the Mortgaged Property, (ii) Mortgagors shall repair and replace the damaged or destroyed Property in a manner reasonably satisfactory to Bank;

9

2892722.1:412594.01725

**I-2023-475391**    Book 1327 Pg 367
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

and (iii) Bank shall, promptly upon receipt of satisfactory proof of such expenditure, pay or reimburse Mortgagors from the insurance proceeds for the reasonable cost of repair or restoration. Any insurance proceeds remaining after such disbursement may, in Bank's reasonable discretion, be applied by Bank to the reduction of the Secured Indebtedness or disbursed to Mortgagors. For purposes of this paragraph, a casualty affecting a "material" portion of the Improvements means the estimated cost to repair or restore the damage to the Improvements will exceed $500,000 and such repair or restoration cannot be completed in less than 180 days.

    3.13    [Intentionally Omitted].

    3.14    <u>Compliance by Other Owners</u>. The Mortgagors shall take all reasonable action and exercise all rights and remedies that are available to the Mortgagors to cause any and all of the Mortgaged Property which are not operated by the Mortgagors to comply with the covenants and agreements contained herein.

    3.15    <u>Optional Performance by the Bank</u>. If the Mortgagors fails to perform any act or fails to take any action that the Mortgagors is required to perform or take hereunder or under any other Loan Document, or fails to pay any money that the Mortgagors is required to pay hereunder or under any other Loan Document, and such failure is not cured within any applicable notice and cure period, the Bank, in the Mortgagors' name or in the Bank's name, may perform (but will not be obligated to perform or cause to be performed) such act or take such action or pay such money. Any expenses so incurred by the Bank and any money so paid by the Bank will be a demand obligation owing by the Mortgagors, will bear interest from the date of making such payment until paid at the Default Rate, will be a part of the Secured Indebtedness and will be secured by this Mortgage and by any other instrument securing the Secured Indebtedness. The Bank, upon making such payment, will be subrogated to all of the rights of the Person receiving such payment.

    3.16    <u>Release of Mortgaged Property</u>. The Bank will not be required to release any of the Mortgaged Property until all of the Secured Indebtedness has been paid in full except in such limited instances where Mortgagors has received the written consent from Bank pursuant to Section 3.2 above regarding a sale, assignment, transfer, mortgage, encumbrance or other disposal of any of the Mortgaged Property. The Mortgaged Property is hereby pledged to secure the total aggregate indebtedness and obligations of the Mortgagors in favor of the Bank whether such indebtedness or obligations are now existing or hereafter incurred. On the occurrence of an Event of Default described in <u>Article V</u> of this Mortgage that continues beyond any applicable notice and cure period, the Bank may look to the Mortgaged Property as collateral security for such other indebtedness and proceed to exercise the Bank's rights to the remedies provided in the Note or any other Loan Document, including, but not limited to, the remedies described in this Mortgage.

<div align="center">

**ARTICLE IV.**

ASSIGNMENT OF LEASES AND RENTS
</div>

    4.1    <u>Assignment</u>. Subject to <u>Section 4.5</u> below, the Leases and Rents, if any, are hereby assigned to the Bank, which assignments of the Leases and Rents are and shall be present, absolute and irrevocable assignments by the Mortgagors. Subject to the license to the Mortgagors under <u>Section 4.2</u> hereof, at any time after and during the continuance of an Event of Default beyond any applicable notice and cure period, the Bank shall have the absolute, immediate and continuing right to collect and receive all Rents now or hereafter, including during any period of redemption, occurring with respect to the Mortgaged Property, with or without taking possession of the property. At the request of the Bank or any receiver appointed by the Bank, the Mortgagors shall promptly execute, acknowledge, deliver, record, register and file any additional general assignment of the Leases or specific assignment of any of the Leases which the Bank or such receiver may require from time to time (all in form and substance reasonably satisfactory to the Bank

<div align="center">10</div>

# EXHIBIT G

I-2023-475391       Book 1327 Pg 368
10/17/2023 11:22am        Pg 0358-0378
Fee: $58.00   Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

or such receiver) to effectuate, complete, perfect, continue or preserve the assignments of the Leases and the Rents.

4.2     License.  As long as no Event of Default exists and continues beyond any applicable notice and cure period, the Mortgagors shall have the right under a license granted hereby, subject to Section 4.3 below, to collect all Rents, if any, upon, but not prior to 15 days before the due date thereof and to retain, use and enjoy the same subject to the provisions of this Mortgage and the other Loan Documents.

4.3     Existence of Default.  If any Event of Default exists and continues beyond any applicable notice and cure period, the Bank or any receiver appointed by the Bank (as the case may be, as the person exercising the rights under this Section) shall have the right to do any of the following: (i) terminate the license granted under Section 4.2 by notice to the Mortgagors; (ii) exercise the rights and remedies provided in this Mortgage or under applicable law; (iii) as attorney-in-fact or agent of the Mortgagors, or in its own name as the person exercising the rights under this Section and under the powers herein granted, hold, operate, manage and control the Mortgaged Property, either personally or by its agents, contractors or nominees, with full power to use such measures, legal or equitable, as in its discretion may be deemed proper and necessary to enforce the payment of any Rents, the Leases and other Mortgaged Property relating thereto (including actions for the recovery of Rent, actions in forcible detainer and actions in distress of Rent); (iv) cancel or terminate any Leases or sublease for any cause or on any ground which would entitle the Mortgagors to cancel the same; (v) elect to disaffirm any Leases or sublease made subsequent hereto or subordinated to the lien hereof; and (vi) perform such other acts in connection with the management and operation of the Mortgaged Property as the person exercising the rights under this Section in its discretion may deem proper, the Mortgagors hereby granting full power and authority to exercise each and every one of the rights, privileges and powers contained herein at any time and all times while an Event of Default exists without further notice to the Mortgagors.

4.4     No Liability for Collection.  The Bank is hereby absolved from any liability for failure to enforce collection of the Rents and all other responsibility in connection therewith, except the responsibility to account to the Mortgagors for funds actually received. The Mortgagors will indemnify and hold the Bank harmless from any and all liabilities, actions, claims, judgments, costs, expenses, charges and attorneys' fees by reason of the assertion that the Bank received Rents, either before or after the payment in full of the Secured Indebtedness, except for liabilities and claims arising by reason of Bank's willful misconduct or gross negligence. The Bank will have the right to defend against any such claims or actions, employing attorneys of the Bank's selection. If the Bank is not furnished with indemnity satisfactory to the Bank, the Bank will have the right to compromise and adjust any such claims and actions, and judgments rendered in connection therewith.  In addition to the right of indemnity as herein provided, all amounts paid by the Bank in compromise, satisfaction or discharge of any such claim, action or judgment, and all court costs, attorneys' fees and other expenses of every character incurred by the Bank pursuant to the provisions of this Section 4.4 will (i) be a demand obligation owing by the Mortgagors, (ii) bear interest from date of expenditure until paid at the Default Rate, (iii) be part of the Secured Indebtedness, and (iv) be secured by this Mortgage and by any other instrument securing the Secured Indebtedness. Nothing contained herein will in any manner be construed to limit or diminish the Mortgagors' liability according to the terms of the Loan Agreement, the Note, the other Loan Documents, or this Mortgage, nor to relieve the Mortgagors from the performance of any of the covenants or obligations as set forth in the Loan Agreement, this Mortgage, the Note, the other Loan Documents, or any other agreements creating or securing the Secured Indebtedness.

4.5     Personal Obligation.  Nothing herein contained shall detract from or limit the absolute obligation of the Mortgagors to make prompt payment of all Secured Indebtedness when and as the same becomes due regardless of whether the Rents herein assigned are sufficient to pay the same, and the rights of

11

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391     Book 1327 Pg 369
10/17/2023 11:22am         Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

this assignment shall be cumulative of all other security of any and every character now or hereafter existing to secure the payment of the Secured Indebtedness.

## ARTICLE V.

### DEFAULT

An "Event of Default" as used in this Mortgage will mean the occurrence of any of the following events:

5.1     Nonpayment. The failure of the Mortgagors to make due and punctual payment of the Secured Indebtedness or of any installment of principal or interest or any part thereof, as the same become due and payable, and such failure is not corrected within any applicable notice and cure period.

5.2     Breach of Provision. The failure of the Mortgagors to timely and properly observe, keep or perform any covenant, agreement or condition provided in this Mortgage or any other Loan Document required to be observed, kept or performed and such failure is not corrected within thirty (30) days after notice has been given with respect to any such failure; provided however, if such failure is curable, but cannot reasonably be cured within such original 30-day period, in Bank's sole but reasonable discretion, and the Mortgagors (1) delivers written notice to Bank promptly within such original 30-day period of the Mortgagors' intention and proposed steps to cure such failure with due diligence, and (2) promptly institutes curative action within such original 30-day period and diligently pursues such curative action to completion, the Mortgagors shall then have such additional period of time, not exceeding thirty (30) days next following the end of such original 30-day period, as shall be necessary to effect the cure.

5.3     Failure of Mortgage Lien. If the lien and priority of this Mortgage are not fully maintained at all times, or if the Mortgagors is found or adjudged not to be lawfully seized of any right, title, interest or estate herein covenanted or warranted to be held or owned by the Mortgagors, or if the Mortgagors is found or adjudged not to have good right and lawful authority to encumber the Mortgaged Property or any part thereof, as herein provided, or if the lien of this Mortgage ceases to be prior to any other lien in or covering any of the Mortgaged Property, except a Permitted Liens.

5.4     Breach of Warranty. Any representation or warranty made by the Mortgagors in this Mortgage is untrue in any material respect.

5.5     Event of Default. The occurrence of any Event of Default under any Loan Document that continues beyond any applicable notice and cure period.

5.6     Bankruptcy, Insolvency, Etc. (a) The Mortgagors shall (i) apply for or consent to the appointment of a receiver, trustee, custodian, intervenor or liquidator of all or a substantial part of its assets, (ii) file a voluntary petition in bankruptcy or file a petition or answer seeking reorganization of an arrangement with creditors or to take advantage of any debtor relief laws, (iii) admit in writing that it is unable to pay its debts as they become due or generally not pay its debts as they become due, (iv) make a general assignment for the benefit of creditors, (v) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against it in any bankruptcy, reorganization or insolvency proceeding or (vi) take corporate action for the purpose of effecting any of the foregoing; or (b)(i) an involuntary petition or complaint is filed against the Mortgagors seeking bankruptcy or reorganization of the Mortgagors, or the appointment of a receiver, custodian, trustee, intervenor or liquidator for the Mortgagors, or for all or substantially all of such Mortgagors' assets, and such petition or complaint is not dismissed within 60 days of the filing thereof, or (ii) an order, judgment or decree shall be entered approving

12

# EXHIBIT G

I-2023-475391    Book 1327 Pg 370
10/17/2023 11:22am     Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

a petition or complaint seeking reorganization of the Mortgagors or appointing a receiver, custodian, trustee, intervenor or liquidator for the Mortgagors, or of all or substantially all of the Mortgagors' assets, as applicable, and such order, judgment or decree continues unstayed for a period of 60 days.

## ARTICLE VI.

### REMEDIES AND RELATED PROVISIONS

Upon the occurrence and during the continuation of an Event of Default beyond any applicable notice and cure period, the Bank will have the option of declaring all the Secured Indebtedness to be immediately due and payable, and the Bank will have any and all of the following remedies:

6.1 <u>Repossession</u>. The Bank may take possession of the Mortgaged Property or any part thereof (the Mortgagors agreeing to give immediate peaceable possession to the Bank or the Bank's designee) and collect and maintain, operate or control the same, and may apply all or any part of the income and proceeds to the payment of any development, operation or maintenance expense incident to any order of application as the Bank may elect; provided that in the event of any dispute or question whatsoever concerning such income and proceeds or the application thereof, the Bank may hold the same in a special account without interest until such dispute or question is finally settled to the Bank's satisfaction.

6.2 <u>Judicial Foreclosure</u>. The Bank may institute suit to foreclose the lien of this Mortgage in any court having jurisdiction. In any such suit, the Bank may, at the Bank's option, apply for and shall be entitled, as a matter of right, to the appointment of a receiver to take possession and control of, operate, maintain and preserve the Mortgaged Property or any part thereof, and to apply the proceeds therefrom to the Secured Indebtedness until the Secured Indebtedness and all costs are fully paid; and the receiver may be authorized to sell or dispose of all or any part of the Mortgaged Property under orders of the court appointing such receiver. In the event of any foreclosure sale conducted pursuant to judicial proceedings, the Mortgaged Property or any part thereof may be sold with or without appraisement as the Bank may elect, and such election may be exercised at any time prior to the entry of the decree of foreclosure. If the Bank elects to have the Mortgaged Property sold without appraisement, then the Mortgagors hereby expressly waives appraisement. The Bank may elect to have the Mortgaged Property sold together or in separate parcels, and the Mortgagors waives any and all rights which the Mortgagors may have to insist on sale of the Mortgaged Property in one unit or in separate parcels. If the highest bidder at any such sale becomes the purchaser, free of any right of the Mortgagors to redeem or repurchase the Mortgaged Property, the proceeds from such sale, after paying therefrom the costs advanced or incurred by the Bank in the foreclosure suit, including the costs of sale and any costs and expenses incurred in the operation of said property by a receiver appointed upon the application of the Bank, will be applied FIRST to the payment of all costs and expenses incurred by the Bank in the Bank's operation of the Mortgaged Property, if the same are so operated, and to the payment of any and all sums advanced by the Bank for the purpose of protecting the security, together with accrued but unpaid interest thereon at the Default Rate; SECOND to the payment of the Secured Indebtedness and other sums then secured hereby, including interest and reasonable attorneys' fees as set forth in the Loan Agreement; and THIRD to such other Persons in order of their priority as provided by law.

6.3 <u>Power of Sale Foreclosure</u>. The Mortgagors hereby confer on the Bank the power to sell the Mortgaged Property and the interests of persons therein in the manner provided for in the "Oklahoma Power of Sale Mortgage Foreclosure Act" (46 Okla. Stat. §§41 <u>et seq.</u>), as the same may be amended from time to time (the "<u>Act</u>"), or other applicable statutory authority. Such power of sale shall be exercised by giving the Mortgagors a notice of intent to foreclose by power of sale and setting forth, among other things, the nature of the breach(es) or default(s) and the action required to effect a cure thereof and the time period within which such cure may be effected all in compliance with and as may be required by the Act or other applicable statutory

13

2892722.1:412594.01725

**EXHIBIT G**

# EXHIBIT G

I-2023-475391    Book 1327 Pg 371
10/17/2023 11:22am      Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

authority. If no cure is effected within the applicable statutory time limits, the Bank may accelerate the Secured Indebtedness without further notice (the aforementioned statutory cure period shall run concurrently with any contractual provision for notice and cure period before acceleration of the Secured Indebtedness) and may then proceed in the manner and subject to and as required by the conditions of the Act or other applicable statutory authority to serve upon the Mortgagors and other necessary parties and publish a notice of sale and to then sell and convey all or any portion of the Mortgaged Property all in accordance with the Act or other applicable statutory authority. The sale shall be made as an entirety or in lots, parcels, or divisions, upon such notice, at such time and place, in such manner and under such conditions all as provided for in said Act or other applicable statutory authority. The proceeds of the sale shall be applied in the manner provided for in the Act or other applicable statutory authority. No action of the Bank based upon the provisions contained herein or contained in the Act, including, without limitation, the giving of the notice of intent to foreclose by power of sale or service of the notice of sale, shall constitute an election of remedies which would preclude the Bank from pursuing judicial foreclosure before or at any time after commencement of the power of sale foreclosure procedure.

6.4    Remedies Cumulative. All remedies expressly provided for in this Mortgage are cumulative of any and all other remedies existing at law or in equity; and the Bank, in addition to the remedies herein provided, will be entitled to avail itself of all such other remedies as may now or hereafter exist at law or in equity for the collection of the Secured Indebtedness and for the enforcement of the covenants herein. The foreclosure of the liens evidenced hereby and the resort to any remedy provided for hereunder or provided for by law or equity shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

6.5    Other Security. The Bank may resort to any security given by this Mortgage or to any other security now existing or hereafter given to secure the payment of the Secured Indebtedness in whole or in part and in such portions and in such order as may seem best to the Bank, in the Bank's sole and uncontrolled discretion. Any failure by the Bank to insist upon the strict performance by the Mortgagors of any of the terms and provisions hereof will not be deemed to be a waiver of any of the terms and provisions hereof; and the Bank, notwithstanding any such failure, will have the right thereafter to insist upon the strict performance by the Mortgagors of any and all of the terms and provisions of this Mortgage to be performed by the Mortgagors. Neither the Mortgagors nor any other Person now or hereafter obligated for the payment of the whole or any part of the Secured Indebtedness will be relieved of such obligation by reason of (i) the failure of the Bank to comply with any request of the Mortgagors or of any other Person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured by this Mortgage, (ii) the release, regardless of consideration, of the whole or any part of the security held for the Secured Indebtedness, (iii) any agreement or stipulation between any subsequent owner or owners of the Mortgaged Property, or (iv) the Bank's extension, from time to time, of the time of payment or modification of the terms of the Mortgage without first having obtained the consent of the Mortgagors or such other Person. In the latter event, the Mortgagors and all such other Persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by the Bank. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien on the Mortgaged Property, the Bank may release the obligation of anyone at any time liable for any part of the Secured Indebtedness or any part of the security held for the Secured Indebtedness and may from time to time extend the time of payment or otherwise modify the terms of the Mortgage without, as to the security for the remainder thereof, in any way impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien, as security for the payment of the Secured Indebtedness. The holder of any subordinate lien will have no right to terminate any Lease affecting the Mortgaged Property, whether or not such Lease is subordinate to this Mortgage.

14

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391    Book 1327 Pg 372
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

## ARTICLE VII.

### OTHER PROVISIONS

7.1    <u>Security Interest</u>. This Mortgage is intended to constitute a security agreement with respect to the Mortgaged Property and is also intended to constitute a financing statement under the Oklahoma Uniform Commercial Code, and a fixture filing. This Mortgage shall cover all of the collateral described in this Mortgage and all proceeds of the collateral. This Mortgage is to be filed for record, among other places, in the real estate records of Oklahoma County, Oklahoma and shall be effective as a financing statement covering fixtures located on the Real Property. Mortgagors represents, warrants and agrees that the Collateral secured hereby is, or is to be used by Mortgagors primarily for business purposes and not for personal, family or household purposes. Mortgagors authorizes Bank to file one or more financing statements describing the collateral pursuant to the applicable Uniform Commercial Code, and in the sole discretion of, and at the request of, Bank, Mortgagors will join with Bank in executing such financing statements. Mortgagors shall pay the cost of filing in all public offices wherever filing is deemed necessary or appropriate by Bank. A photographic or other reproduction of this instrument shall be sufficient as a financing statement. The following information is accordingly included:

(a)    the name of the Mortgagors: CM HEAVY MACHINERY, LLC AND CLINT MICHAEL MEADORS;

(b)    the mailing address of the Mortgagors: 111097 HIGHWAY 27, OKEMAH, OKLAHOMA 74859;

(c)    the name of the Bank (secured party) is: GREAT PLAINS NATIONAL BANK;

(d)    the address of the Bank from which information may be obtained is: 6701 N. BROADWAY EXTENSION, SUITE 400, OKLAHOMA CITY, OKLAHOMA 73116;

(e)    a description of the Collateral is set forth in subparagraphs A. through J. inclusive following the granting clause beginning on page one of this Mortgage; and

(f)    a legal description of the real estate to which the Collateral is or may become fixed is set forth in <u>Exhibit A</u> hereto.

In addition to all other rights, powers, privileges and remedies, on the occurrence of one or more events of default as herein provided, the Bank shall be entitled to exercise all of the rights, powers, privileges and remedies available to a secured party upon default under the Oklahoma Uniform Commercial Code.

7.1    <u>Waiver and Partial Release</u>. The Bank may at any time and from time to time in writing (i) waive compliance by the Mortgagors with any covenant herein made by the Mortgagors to the extent and in the manner specified in such writing, (ii) consent to the Mortgagors doing any act that the Mortgagors is prohibited from doing under this Mortgage, or (iii) consent to the Mortgagors failing to do any act which the Mortgagors is required to do hereunder to the extent and in the manner specified in such writing. No such act will in any way impair the rights of the Bank hereunder, except to the extent specifically agreed to by the Bank in such writing. The lien and other security rights of the Bank hereunder will not be impaired by any indulgence, including but not limited to (i) any renewal, extension or modification which the Bank may grant with respect to any of the Secured Indebtedness, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which the Bank may grant in respect of any item of the Mortgaged Property or any

15

**EXHIBIT G**

# EXHIBIT G

I-2023-475391      Book 1327 Pg 373
10/17/2023 11:22am        Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

part thereof or interest therein, and (iii) any release or indulgence granted to any endorser, guarantor or surety of any of the Secured Indebtedness.

    7.2    <u>Possession Until Default; Defeasance</u>. Unless a default specified in <u>Article V</u> hereof or an Event of Default under any other Loan Document occurs and is continuing, the Mortgagors will retain full possession of the Mortgaged Property and will manage, operate, develop and use the same and every part thereof, subject, however, to the terms and provisions of this Mortgage.

    7.3    <u>Notices</u>. Any notices or other communications required or permitted hereunder shall be sufficiently given if (i) delivered personally, (ii) sent by registered or certified mail, postage prepaid, return receipt requested and addressed as listed below or to such other address as the party concerned may substitute by written notice to the other, or (iii) by electronic mail transmission, provided however, the receipt by any party other than the Mortgagors and the Bank listed below shall not be deemed necessary in any event, for the effectiveness of any notice or other communication. All notices shall be deemed received on the earlier to occur of three days (excluding Saturdays, Sundays and holidays recognized by national banking associations) after being mailed or upon actual receipt:

    To the Mortgagors:    ATTN: Clint Michael Meadors
    111097 Highway 27
    Okemah, OK 74859

    To the Bank:    GREAT PLAINS NATIONAL BANK
    6701 N. Broadway Extension, Suite 400
    Oklahoma City, Oklahoma 73116
    Attention: Brett Miller

    7.4    <u>Binding Effect</u>. All terms, conditions, covenants, warranties and agreements contained herein shall be binding on the Mortgagors and the Mortgagors' successors and assigns and shall be deemed to be covenants running with the estate or in the land; and all said provisions shall likewise inure to the benefit of the Bank and the successors and assigns of the Bank.

    7.5    <u>Severability</u>. The invalidity of any provision or provisions hereof shall not in any way affect the remaining provisions of this Mortgage.

    7.6    <u>Governing Law</u>. This Mortgage shall be governed by and construed in accordance with the laws of the State of Oklahoma.

    7.7    <u>Loan Agreement Conflict</u>. Notwithstanding anything herein to the contrary, if any conflict or inconsistency exists between this Mortgage and the Loan Agreement, the Loan Agreement shall govern and control.

    7.8    <u>Non-Borrower Grantor</u>. As Clint Michael Meador is not a "Borrower" under the Agreement ("Non-Borrower Grantor"), as that term is defined in the Loan Agreement, such Non-Borrower Grantor authorizes Mortgagee to perform any of the following acts at any time, all without notice to Non-Borrower Grantor and without affecting Mortgagee's rights or Non-Borrower Grantor's obligations under this Mortgage:

16

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391       Book 1327 Pg 374
10/17/2023 11:22am        Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

(a)  Mortgagee may alter any terms of the Loan Documents or any part of them, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Note or any part of it;

(b)  Mortgagee may take and hold security for the Note, accept additional or substituted security for the Note, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

(c)  Mortgagee may apply any security now or later held for the Note in any order that Mortgagee in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;

(d)  Mortgagee may release Borrower of its liability for the Note or any part of it;

(e)  Mortgagee may substitute, add or release any one or more guarantors or endorsers of the Note; and

(f)  Mortgagee may extend other credit to Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the Note.

(g)  Non-Borrower Grantor waives:

(i)  Any right it may have to require Mortgagee to proceed against Borrower or Guarantor, proceed against or exhaust any security held from Borrower or Guarantor, or pursue any other remedy in Mortgagee's power to pursue;

(ii)  Any defense based on any legal disability of Borrower or Guarantor, any discharge or limitation of the liability of Borrower or Guarantor to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor relief proceeding, or from any other cause, or any claim that Non-Borrower Grantor's obligations exceed or are more burdensome than those of Borrower or Guarantor;

(iii)  All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Mortgage and of the existence, creation, or incurring of new or additional indebtedness of Borrower, and demands and notices of every kind;

(iv)  Any defense based on or arising out of any defense that Borrower or Guarantor may have to the payment or performance of the Note or any part of it; and

(v)  Until the Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Mortgagee may have against Borrower or Guarantor, and all rights to participate in any security now or later to be held by Mortgagee for the Note.

(h)  Non-Borrower Grantor assumes full responsibility for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability

17

# EXHIBIT G

**I-2023-475391**    Book 1327 Pg 375
10/17/2023 11:22am    Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

to pay and perform its obligations to Mortgagee, and agrees that Mortgagee shall have no duty to disclose to Non-Borrower Grantor any information which Mortgagee may receive about Borrower's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(i)  No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage.

(j)  For purposes of this Section, all references to the Note shall also include any instrument or agreement executed by Borrower subsequent to the date of this Mortgage which is secured by this Mortgage in accordance with the provisions above.

*[SIGNATURE PAGES FOLLOW]*

18

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391        Book 1327 Pg 376
10/17/2023 11:22am        Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

**CM HEAVY MACHINERY, LLC,**

an Oklahoma limited liability

By: Clint Michael Meadors

Title:  Managing Member

## ACKNOWLEDGMENT

STATE OF **OKLAHOMA**        )
                                                  )        ss.
COUNTY OF Oklahoma        )

This instrument was acknowledged before me on October 12, 2023 by **Clint Michael Meadors,** Managing Member of CM Heavy Machinery, LLC.

NOTARY PUBLIC

My Commission Expires: 10/08/2026
My Commission Number: 02016017

ANNETTE STROTHER
NOTARY PUBLIC
STATE OF OKLAHOMA
Commission # 02016017  Expires 10/08/26

*SIGNATURE PAGE TO AMENDED AND RESTATED*
*COMMERCIAL REAL ESTATE MORTGAGE*

# EXHIBIT G

I-2023-475391     Book 1327 Pg 377
10/17/2023 11:22am        Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

IN WITNESS WHEREOF, this Mortgage has been executed and delivered as of the date first above written.

_____
Clint Michael Meadors, Individually

## ACKNOWLEDGMENT

STATE OF **OKLAHOMA**          )
                              )     ss.
COUNTY OF Oklahoma            )

This instrument was acknowledged before me on September 12, 2023 by **Clint Michael Meadors**.

_____
NOTARY PUBLIC

My Commission Expires: 10/08 / 2026
My Commission Number: 02016017

ANNETTE STROTHER
NOTARY PUBLIC
STATE OF OKLAHOMA
Commission # 02016017  Expires 10/08/26

*SIGNATURE PAGE TO AMENDED AND RESTATED*
*COMMERCIAL REAL ESTATE MORTGAGE*

2892722.1:412594.01725

# EXHIBIT G

I-2023-475391      Book 1327 Pg 378
10/17/2023 11:22am      Pg 0358-0378
Fee: $58.00  Doc: $0.00
Dianne Flanders - Okfuskee County Clerk
State of Oklahoma

## Exhibit "A"

The following described real property and premises situated in **OKFUSKEE COUNTY**, State of Oklahoma, to-wit:

Address: 3 TRACTS, OKEMAH, Oklahoma 74859
Legal Description: THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER (NE/4 SE/4), SECTION TWENTY-SIX (26), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE WEST HALF OF THE SOUTHEAST QUARTER (W/2 SE/4), SECTION TWENTY-SIX (26), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER (SE/4 SE/4) SECTION TWENTY-SIX (26), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA. AND THAT PART OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4) OF SECTION TWENTY-FIVE (25), TOWNSHIP ELEVEN (11) NORTH, RANGE NINE (9) EAST OF THE INDIAN MERIDIAN, OKFUSKEE COUNTY, STATE OF OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4); THENCE ON A GRID BEARING N00 DEGREES 59'49"E ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER OF THE NORTHWEST QUARTER (SE/4 NE/4) A DISTANCE OF 25.00 FEET; THENCE S89 DEGREES 20'31"W ON A LINE PARALLEL WITH THE SOUOTH LINE OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4) A DISTANCE OF 50.00 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF PRESENT STATE HIGHWAY NO. 27 AND THE POINT OF BEGINNING; THENCE CONTINUING S89 DEGREES 20'31"W A DISTANCE OF 330.51 FEET; THENCE N00 DEGREES 49'06"E A DISTANCE OF 681.44 FEET; THENCE N89 DEGREES 20'31"E A DISTANCE OF 308.92 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF PRESENT STATE HIGHWAY NO. 27; THENCE S00 DEGREES 59'49"E ALONG SAID WEST RIGHT OF WAY LINE A DISTANCE OF 681.25 FEET TO THE POINT OF THE BEGINNING, CONTAINING 5.00 ACRES. AND THE

NORTH HALF OF THE SOUTHWEST QUARTER (N/2 SW/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA, AND THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER (NW/4 SE/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE SOUTH HALF OF THE SOUTHWEST QUARTER (S/2 SW/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA; AND THE NORTHWEST QUARTER (NW/4), SECTION TWENTY-FIVE (25), TOWNSHIP TEN (10) NORTH, RANGE NINE (9) EAST OF THE INDIAN BASE AND MERIDIAN, OKFUSKEE COUNTY, OKLAHOMA

COMMENCING AT THE SE/C SE SW; THENCE S89DEG48'43"W 745' TO THE POB; THENCE N00DEG21'00"W 100'; THENCE N45DEG51'27"E 180.09'; THENCE N00DEG21'00"W 944.97'; THENCE N59DEG16'00"W 291.91'; THENCE S89DEG48'45"W 455.56'; THENCE S00DEG20'40"E 1319.98'; THENCE N89DEG48'43"E 575.69' TO THE POB AND THAT PART OF THE SW SW LYING SOUTH OF THE NORTH CANADIAN RIVER & NW SW SOUTH OF THE RIVER, LESS AND EXCEPT A 10 ACRE TRACT 24-10-9 BEARDEN TWP 1969 MELODY 12X50 VIN #8958 OTC #601899054002 (STG VALUE) 19.24 Acres

2892722.1:412594.01725

# EXHIBIT G

# EXHIBIT H



**GUARANTY OF SPECIFIC TRANSACTION**

**Great Plains National Bank**
601 NW 13th Street
Oklahoma City, Oklahoma 73103
(405)720-4772
www.gpbankok.com

| LOAN NUMBER | GUARANTY DATE | |
|---|---|---|
| 705244044 | December 16, 2019 | |

**GUARANTOR INFORMATION**
CLINT MICHAEL MEADORS
PO BOX 309
OKEMAH, OK 74859

**Type of Entity:** Individual
**State of Residence:** Oklahoma

**BORROWER INFORMATION**
CM HEAVY MACHINERY LLC
PO BOX 309
OKEMAH, OK 74859

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Oklahoma

**GUARANTY OF SPECIFIC TRANSACTION.** This Guaranty Of Specific Transaction will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means Great Plains National Bank whose address is 601 NW 13th Street, Oklahoma City, Oklahoma 73103 , its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**GUARANTY OF SPECIFIC TRANSACTION.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of an Obligation of the Borrower to the Lender as evidenced by a note or agreement dated December 16, 2019, in the principal amount of $8,250,000.00, plus interest, charges, and fees as provided for, including all extensions and renewals thereof, until the Obligation of Borrower is fully paid.

This is a guaranty of payment and not of collection.

**EXPENSES .** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor or

© 2004-2018 Compliance Systems, Inc. 96ceb20d-bf7d7bc8 - 2018.311.0.2
Guaranty Of Specific Transaction - DL4011

Page 1 of 3

www.compliancesystems.com

**CSi**

EXHIBIT H

surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** If the Guarantor shall make payment to the Lender of all or any part of the Obligations and all the Obligations shall be paid in full, the Lender will, at the Guarantor's request, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Obligations resulting from such payment by the Guarantor. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Oklahoma except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the Obligations hereunder shall be joint and several; (b) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (c) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby

© 2004-2018 Compliance Systems, Inc. 96ceb20d-bf7d7bc8 - 2018.311.0.2
Guaranty Of Specific Transaction - DL4011

www.compliancesystems.com

**CSi**

represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

**By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.**

_____     12/9/19
CLINT MICHAEL MEADORS     Date
Individually

**LENDER:** Great Plains National Bank

_____     12/30/19
By: Ryan Ward     Date
Its: Branch President

© 2004-2018 Compliance Systems, Inc. 96ceb20d-bf7d7bc8 - 2018.311.0.2
Guaranty Of Specific Transaction - DL4011

www.compliancesystems.com

CSi