IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| In re: | ) | Case No. 24-80617 |
|---|---|---|
| | ) | (Chapter 11) |
| C M HEAVY MACHINERY, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## NOTES ACCOMPANYING PLAN OF REORGANIZATION

1. Per this Honorable Court's order, DE #57, affixed hereto is the plan of reorganization (the "Plan") proposed herein by C M Heavy Machinery, LLC (the "Debtor").

2. The Plan was originally filed as an attachment to the disclosure statement, DE #56-1, on Friday, December 6, 2024. Affixing the Plan to the disclosure statement was intended as a mechanism to avoid so much as the inference of distributing a plan of reorganization to parties receiving notice via CM/ECF, without first obtaining approval of an accompanying disclosure statement. The Plan is now filed as a stand-alone document, pursuant to the foregoing order, but, for the avoidance of ambiguity, such filing is *not* intended as the solicitation of an acceptance or rejection of the Plan.

                                                          Respectfully Submitted,

Dated: December 9, 2024        By:   /s/ Maurice B. VerStandig
                                                      Maurice B. VerStandig, Esq.
                                                      The VerStandig Law Firm, LLC
                                                      9812 Falls Road, #114-160
                                                      Potomac, Maryland 20854
                                                      Phone: (301) 444-4600
                                                      mac@mbvesq.com
                                                      *Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-80617 |
| | ) | (Chapter 11) |
| C M HEAVY MACHINERY, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**CHAPTER 11 PLAN OF REORGANIZATION
OF C M HEAVY MACHINERY, LLC**

Comes now C M Heavy Machinery, LLC ("CMHM," the "Debtor," or the "Plan Proponent"), by and through undersigned counsel, pursuant to Section 1121(c) of Title 11 of the United States Code, and provides the following plan of reorganization (the "Plan," as further defined in Section 1.2(ee) hereof):

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT ISSUED PURSUANT TO SECTION 1125(b) OF TITLE 11 OF THE UNITED STATES CODE IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018 AND IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

### DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

**1.1** **Scope of Definitions.** For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan. Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**1.2** **Definitions.**

a. "Administrative Claim" means all Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

1

b. "Administrative Claims Bar Date" means the last date for a person to file any applications or requests for payment of Administrative Claims and shall be specifically defined as the first business day next succeeding the thirtieth calendar day following the Confirmation Date.

c. "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

d. "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the State of Oklahoma as such term is defined in Bankruptcy Rule 9006(a).

e. "Cash on Hand" means any currency or deposits being held by the Debtor, or hereafter collected by the Debtor. The amount of the Cash on Hand is not possible to be known and will fluctuate. It is anticipated the Cash on Hand will be *de minimis* on the Effective Date, however.

f. "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory.

g. "Claim" has the meaning ascribed in Section 101(5) of the Bankruptcy Code.

h. "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

i. "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code

2

j. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

k. "Confirmation Date Assets" means all Property of the Debtor as of the Confirmation Date (excluding assets previously distributed, abandoned, expended or otherwise disposed of by the Debtor prior to the Confirmation Date and not otherwise subject to recovery), including, without limitation, all Causes of Action and other Property existing as of the Petition Date and acquired by any or all of the Debtor during the pendency of this case under the Bankruptcy Code or otherwise.

l. "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

m. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

n. "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

o. "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

p. "Disputed Claim" shall have the meaning set forth in Section 5.5 hereof.

q. "Distribution" means each distribution of Cash to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Debtor on each Distribution Date.

r. "Distribution Date" means the date(s) which Distributions shall be made pursuant to and under the terms of this Plan by the Debtor.

s. "Effective Date" shall mean the date fourteen days after the Confirmation Date or, should said date occur on a legal holiday, the first Business Day thereafter.

t. "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

u. "Estate" means the estate created in this case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

v. "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

w. "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been

entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

x. "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Claim, a Secured Claim, a Priority Claim or a Priority Tax Claim.

y. "Holder" means a Person holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

z. "Impaired" has the meaning ascribed in Section 1124 of the Bankruptcy Code.

aa. "Insider" has the meaning ascribed in Section 101(31) of the Bankruptcy Code.

bb. "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

cc. "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

dd. "Petition Date" means August 8, 2024.

ee. "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

ff. "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

gg. "Priority Scheme" shall mean the priorities for the payment of claims as set forth in 11 U.S.C. § 507.

hh. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

ii. "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

jj. "Property" means all assets and property included within "property of the estate" as set forth in and within the meaning of Section 541 of the Bankruptcy Code.

kk. "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

4

ll. "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

mm. "U.S. Trustee" shall mean the Office of the United States Trustee.

**1.3  Interpretation.**  For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4  Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

**2.1  Administrative Expense Claims**.  On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim. Upon information and belief, there will be two Administrative Claims herein (i) that of the U.S. Trustee for quarterly fees; and (ii) that of the Debtor's counsel. The Debtor's counsel agrees to be paid within eighteen (18) months of the Effective Date. Any fees due to the U.S. Trustee will be paid, in cash, on or before the Effective Date. It is not reasonably anticipated the U.S. Trustee fees will exceed $1,500.00 in the aggregate.

To facilitate the orderly payment of Administrative Claims, the Confirmation Order will establish an Administrative Claims Bar Date as described in this Plan. <u>All Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as</u>

5

Administrative Claim holders. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

**2.3** **Priority Tax Claims**. Unless a Final Order otherwise provides, each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim, together with interest thereupon at the rate of 8% per annum or such other rate as may be fixed by law and applicable on the Effective Date. Said payments shall be made not later than August 7, 2029, with interest computed in accord with the timing of each such payment and the obligation reamortized following the making of each such payment. Notwithstanding the foregoing, any portion of a Claim correlative to the imposition of any penalty arising with respect to or in connection with the allowed Priority Tax Claim shall be treated as a general unsecured claim in Article III hereof. *A significant Priority Tax Claim, in the amount of $4,515,391.74 has been filed by the Internal Revenue Service in this case. This Priority Tax Claim is premised, in large part, upon the imposition of estimated taxes. Notwithstanding the definition afforded in Section 5.5 hereof, the whole Claim of the Internal Revenue Service shall be regarded as a "Disputed Claim" at all times until the earlier of (i) withdrawal of the Claim; (ii) entry of a final order adjudicating an objection to the Claim or a compromise of the Claim; or (iii) passage of the deadline to object to the Claim, as set forth in Section 5.5 hereof.*

**2.4** **Full Satisfaction, Discharge and Release**. The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims and allowed Priority Tax Claims against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

## ARTICLE III

## CLASSIFICATION, IMPAIRMENT AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR

**3.1** **Generally.** All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in Classes as set forth below. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

**3.2** **Identification and Treatment of Classes.**

The following are the designations for, and treatment of, the Classes of Claims against and Equity Interests in the Debtor:

**(a)** **Class 1 – Secured Claims of Great Plains National Bank.** Class 1 consists of the secured Claim of Great Plains National Bank. The Debtor is assessing whether or not to object to the Claim of Great Plains National Bank and, if so, the subject Claim may become a Disputed Claim. Such a dispute, if filed, will likely be focused on the propriety, *vel non*, with which historic payments have been applied to this putative debt. Allowed Class 1 Claims shall be paid, in full, prior to the Claims of any other class, except for the Claim of Class 2. Allowed Class 1 Claims will accrue interest, at the rate of 8% per annum, until paid, with interest computed in

6

accord with the timing of each such payment and the obligation reamortized following the making of each such payment. Class 1 claimants shall retain their liens until such time as their claims are satisfied in full.

Class 1 is an impaired class.

**(b)** **Class 2 – Secured Claim of Tuggle Duggins, P.A.** Class 2 consists solely of the secured portion of the Claim of Tuggle Duggins, P.A. This claim is bifurcated between Class 2 and Class 4, with the Class 2 portion being solely correlative to the retainer of $5,000.00 being held by Tuggle Duggins, P.A. The sole Class 2 claimant may apply the retainer, in its full amount, against the total debt owed by the Debtor, on the Confirmation Date.

Class 2 is an unimpaired class.

**(c)** **Class 3 – Lease Claim.** Class 3 consists solely of the lease claim of Barnhill Contracting Company. This class shall be paid, *pari passu*, with Class 4 and Class 5, after Class 1 is paid in full and after all Claims set forth in Article II hereof are paid in full.

Class 3 is an impaired class.

**(d)** **Class 4 – General Unsecured Creditors.** Class 4 consists of all general unsecured creditors whose claims do not arise on account of the lease of real property. This class shall be paid, *pari passu*, with Class 3 and Class 5, after Class 1 is paid in full and after all Claims set forth in Article II hereof are paid in full.

Class 4 is an impaired class.

**(e)** **Class 5 – Secured Claim of Holt Texas, Ltd.** Class 5 consists of the secured claim of Holt Texas, Ltd. Insofar as this Claim is deemed secured solely on account of a judgment being recorded within 90 days of the Petition Date, the Debtor regards the security interest as being avoidable under Section 547 of the Bankruptcy Code and will pay this Class, *pari passu*, with Classes 3 and 4, after Class 1 is paid in full and after all Claims set forth in Article II hereof are paid in full. No interest shall accrue on the Claim of this Class 5. Should the Class 5 creditor object to confirmation of this Plan on the basis that avoidance of a preference must be achieved through an adversary proceeding, the Debtor will file such an adversary proceeding within thirty (30) days of the Effective Date and regard the Claim of this class as being a Disputed Claim, pursuant to Section 5.5 hereof, until such time as a final judgment is entered in the adversary proceeding. Should the Class 5 claimant succeed in the adversary proceeding, then, and only then, the underlying Claim shall be treated as fully secured and will accrue interest (*nunc pro tunc* to the Petition Date), at the rate of 8% per annum, until paid, with interest computed in accord with the timing of each such payment and the obligation reamortized following the making of each such payment.

Class 5 is an impaired class.

*For ease of reference, the identities of each creditor, and their assigned class(es), are set forth on Exhibit A hereto.*

7

# ARTICLE IV

## MEANS OF IMPLEMENTING THE PLAN

**4.1  Pursuit of Insurance Claim**. The Debtor holds an insurance claim arising on account of mats lost to a fire in North Carolina, with the Debtor believing this claim to be worth $12,596,813.68. At the time of the filing of this Plan, the Debtor is in the process of interviewing potential counsel to pursue this insurance claim. Should an application to employ counsel not be filed and/or granted prior to the Effective Date, the Debtor will engage counsel for this purpose thereafter, compensating said counsel on a contingency basis. All proceeds from pursuit of this insurance claim will be applied (i) first, to the payment of counsel engaged to pursue said claim; and (ii) second, to the retirement of the classes of Claims set forth in Article III hereof, in accord with the priority scheme delineated therein (including the provisions therein for the payment of Article II Claims).

**4.2  Ordinary Revenue.** The Debtor generates certain revenues from its business operations and anticipates potentially collecting other monies from the pursuit of legal claims against Laken Tikler and Aaron Lowe, arising from those individuals' theft of monies. As the Debtor collects such monies, from ordinary business operations and/or liquidation of these legal claims, the Debtor will apply such funds (i) first, to the ongoing operation of the Debtor's business, in accord with the Debtor's business judgment; (ii) second, to the retirement of the classes of Claims set forth in Article III hereof, in accord with the priority scheme delineated therein (including the provisions therein for the payment of Article II Claims).

**4.3  Liquidation of Equipment and Machinery.** The Debtor holds equipment and machinery valued at approximately $3,203,000.00. Unless and until all Claims are paid in full, the Debtor will strategically liquidate such equipment and/or machinery in the following fashion:

**(a)  Timing & Sums**. Not later than the first anniversary of the Effective Date, the Debtor will distribute to creditors the sum of not less than $250,000.00, closing on the sale of equipment and/or machinery in whatever sum may be needed to render this amount available for distribution after accounting for other monies available to the Debtor (including those available under Section 4.2 hereof). Not later than the last day of the sixth (6th) month thereafter, the Debtor will distribute to creditors the sum of not less than $250,000.00, closing on the sale of equipment and/or machinery in whatever sum may be needed to render this amount available for distribution after accounting for other monies available to the Debtor (including those available under Section 4.2 hereof). Every six months thereafter, the Debtor will distribute to creditors the sum of not less than $400,000.00, closing on the sale of equipment and/or machinery in whatever sum may be needed to render this amount available for distribution after accounting for other monies available to the Debtor (including those available under Section 4.2 hereof). The whole proceeds of each such sale, net only of (i) commissions paid to any third parties, (ii) closing costs due to third parties, and (iii) taxes due to third parties on account of each correlative sale, if any, shall be applied to the retirement of the classes of Claims set forth in Article III hereof, in accord with the priority scheme delineated therein (including the provisions therein for the payment of Article II Claims).

8

**(b)     Means of Sale**. The Debtor shall accomplish the sales of equipment and/or machinery provided for in this Section 4.3 through such means as the Debtor, in its business judgment, deems most advisable. There shall be a general preference for the making of private sales to third parties, and a general preference for the avoidance of auctions, but the Debtor will assess the marketability and optimal means of disposal of each piece of equipment and/or machinery on an item-by-item basis.

**(c)     Notice of Sale**. Prior to closing on any sale of machinery and/or equipment under this Section 4.3, the Debtor shall give notice thereof to all parties in interest by filing such notice on the docket of this case. Said notice shall be filed not less than five (5) business days prior to the closing of such sale, unless such sale will produce proceeds sufficient to pay all Claims in full (in which case there shall be no temporal requirement for when notice is given). Should any party in interest object to the proposed sale on the basis that less than reasonably equivalent value is being received thereby, prior to the consummation of said sale, the Debtor shall forbear from closing on the subject sale until such time as this Honorable Court may adjudicate the merits, *vel non*, of the subject objection. No other basis of objection, except for fraud, shall be permitted. In giving notice of a proposed sale, the Debtor may elect to redact the name of the proposed purchaser(s) unless said purchaser(s) are insiders (as that term is defined in Section 101(31) of the Bankruptcy Code). Any delay in the closing of a sale occasioned by an objection under this Section 4.3(c) shall not constitute a breach of the temporal requirements of Section 4.3(a) hereof.

**(d)     Notice of Closing**. Not later than five (5) business days after the closing of each sale provided for in this Section 4.3, the Debtor shall give notice of said closing to all parties in interest by filing such notice on the docket of this case and shall file, therewith, copies of any bill(s) of sale arising from the subject transaction(s). In giving notice of a closing and/or attaching bill(s) of sale, the Debtor may elect to redact the name of the purchaser(s) unless said purchaser(s) are insiders (as that term is defined in Section 101(31) of the Bankruptcy Code).

**(e)     Cessation of Sales**. As noted *supra*, the sales provided for under this Section 4.3 shall cease once all Claims are paid in full. Notwithstanding the provisions of Section 4.3(a), a sale may be for a sum less than that specified if the reduced sum will be sufficient to finally retire all Claims in full.

**4.4     Repatriation of Funds.** During the course of this bankruptcy, the Debtor's principal, Clint Meadors ("Mr. Meadors"), has caused the Debtor to pay $10,491.75 to third parties, for the benefit of Mr. Meadors. These funds are in addition to an allotment of $5,000.00 per month, taken by Mr. Meadors in the form of member draws, prior to his formally being placed on the Debtor's payroll. Under this Plan, the $5,000.00 per month in draws will be retroactively classified as salary earned by Mr. Meadors for his full time work for the Debtor. However, Mr. Meadors shall be bound to repay the sum of $10,491.75, to CMHM, not later than the last day of the eighteenth (18th) month succeeding the Effective Date, and such repaid monies, once received by CMHM, will be applied to the retirement of the classes of Claims set forth in Article III hereof, in accord with the priority scheme delineated therein (including the provisions therein for the payment of Article II Claims). A failure of Mr. Meadors to make the payment called for in this

9

Section 4.4 shall constitute a default by the Debtor under Section 9.5 hereof, notwithstanding the obligation herein being that of Mr. Meadors and not the Debtor.

## ARTICLE V

### PROVISIONS GOVERNING DISTRIBUTIONS & CLAIM OBJECTIONS

**5.1 Delivery of Distributions.** Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed). Distributions of monies pursuant to Sections 4.1, 4.3 and 4.4 hereof shall be made not later than thirty (30) days after such monies become available to the Debtor for distribution.

**5.2 No Interest Unless Otherwise Provided.** No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

**5.3 Undistributed Property.** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. Unclaimed property shall be (i) first paid to other members of the class of the claimant not claiming said distribution, until such a time as said class is paid in full; (ii) second paid to each other class, until all classes are paid in full; and (iii) then, if and when each class is paid in full, remaining funds shall be donated to the University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond, Esq. in the charitable manner she sees most fit. The University of Miami School of Law Bankruptcy Clinic works with members of the South Florida legal community to provide *pro bono* services to persons in need of bankruptcy relief, while also furnishing law students with valuable pedagogical experience in the field of bankruptcy law.

**5.4 Delay of Distribution of Disputed Claims.** No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final, non-appealable order.

**5.5 Time to Object to Claims.** Any party in interest (including the U.S. Trustee) may object to any Claim, and thereby render the Claim a "Disputed Claim," at any time prior to the first anniversary of the Effective Date. Should any Claim be amended at any time (whether or not previously subject to dispute), any party in interest (including the U.S. Trustee) may object to the amended claim at any time until the later of (i) the first anniversary of the Effective Date; or (ii) the sixtieth (60th) day following the date upon which said Claim is amended. For purposes of Section 5.4 hereof, it shall be presumed, until such time as the objection deadline passes, that a Claim resulting from amendment of a Disputed Claim is, too, a Disputed Claim.

## ARTICLE VI

### CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**6.1 Conditions to Effectiveness of Plan.** The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order;

10

and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2** **Notice of Confirmation of the Plan.** Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE VII

## RETENTION OF JURISDICTION

**7.1** **Retention of Jurisdiction.** Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a) to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b) to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c) to enable the Debtor to prosecute any and all Causes of Action and to recover any transfers, assets, properties or damages to which it may be entitled under applicable provisions of the Plan, the Bankruptcy Code or any federal, state or local laws, including avoidance actions.

(d) to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(e) to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(f) to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(g) to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(h) to enter a final decree closing this Chapter 11 case.

**7.2** **Abstention and Other Courts.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this section of the Plan shall have no effect upon and shall

not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE VIII

## RELEASE FOR PLAN PROPONENT AND PROFESSIONALS

**8.1  Limitation of Liability in Connection with the Case, the Plan, and Related Documents.**  Pursuant to § 1125(e) of the Bankruptcy Code; the Debtor and its professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

# ARTICLE IX

## MISCELLANEOUS PROVISIONS

**9.1  Severability.**  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2  Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3.  Transfer Tax Exemption.**  Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the transfer and sale of securities provided for under this Plan, shall not be subject to any stamp tax or other similar tax.

**9.4  Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law

provision is provided, the laws of the State of Oklahoma shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5** **Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof, inclusive of its allowances for the bringing of a motion to convert this proceeding to one under Chapter 7 of the Bankruptcy Code) as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to abide by any substantive provision of this Plan and does not remedy such default within thirty (30) days of being given thereof. A default shall also be deemed to occur if the provisions of Section 4.3 hereof result in a sale of substantially all machinery and equipment of the Debtor without all allowed Claims being paid in full.

**9.6** **Timing of Distributions.** Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.7** **Revocation or Withdrawal of Plan.** The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred. If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.8** **Nonmaterial Modifications.** The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.9** **Material Modifications.** Modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**9.10** **Cramdown.** This section shall constitute the Plan Proponent's request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of Section 1129(a)(8) of the Bankruptcy Code may not be met.

13

**9.11　No Recourse.**  No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Trustee and his professionals, the Debtor, or the Plan Proponent and its professionals, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.12　Notices.**  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

>	C M Heavy Machinery, LLC
>	11097 Highway 27
>	Okemah, Oklahoma 74859

**9.13　Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.14　Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**9.15　Entry of a Final Decree**.  The Debtor may file a motion with the Bankruptcy Court to obtain the entry of a final decree upon completion of Plan payments or at such other time as the Debtor determines appropriate.

Respectfully submitted,

Dated: December 6, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for C M Heavy Machinery, LLC*

14