**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| C M HEAVY MACHINERY, LLC, | ) | **Case No. 24-80617** |
| | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |

## UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7

Ilene J. Lashinsky, United States Trustee for Region 20 ("U.S. Trustee"), pursuant to 11 U.S.C. § 1112(b), moves to convert this Chapter 11 case to a Chapter 7 proceeding for cause for the gross mismanagement of the estate of C M Heavy Machinery, LLC ("Debtor"). In support of this motion, the U.S. Trustee submits as follows:

1. This case was filed on August 8, 2024. *See* Dkt. No. 1.

2. On August 22, 2024, the Debtor filed its Initial Report wherein Debtor named Clint Meadors ("Meadors") "the individual responsible for discharging the duties of the debtor under 11 U.S.C. § 1107 and as may be required by the Court or by the United States Trustee." *See* Initial Report, Dkt. No. 29 at p. 7.

3. On August 19, 2024, the U.S. Trustee conducted the Initial Debtor Interview in this case wherein the U.S. Trustee outlined the requirements and obligations of a debtor-in-possession to Meadors.

4. On August 22, 2024, Meadors signed the Receipt and Understanding United States Trustee Operating Guidelines and Reporting Requirements (the "Receipt and Understanding"). The Receipt and Understanding also contains an agreement "to perform in accordance with said guidelines and requirements".

1

5.      The U.S. Trustee has been in regular communication with Debtor's counsel throughout the case.  The U.S. Trustee has numerous concerns about this case that have been discussed with counsel.  However, the concerning conduct in this case has not changed and now arises to the level of gross mismanagement.

**Failure to Close Pre-Petition Account**

6.      The Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "Operating Guidelines") provide, among other things, that (1) all pre-petition bank accounts must be closed and debtor-in-possession accounts must be opened at a United States Trustee Authorized Depository; and (2) disbursements other than by numbered check are prohibited.

7.      The Debtor has not closed its pre-petition bank account at Mabrey Bank, Account No. xxxx5504 (the "Mabrey Bank Account") and continues to operate from the Mabrey Bank Account.  The Debtor has also failed to open a debtor-in-possession bank account.  Early in the case, the Debtor filed a Motion to Retain Existing Bank Account, which it withdrew.  The Debtor has not filed a motion pursuant to Section 345 of the Bankruptcy Code authorizing it to continue using its Mabrey Bank Account

**Failure to Comply with 11 U.S.C. § 345**

8.      Additionally, it is clear from a review of the bank statement attached to the October Monthly Operating Report that the Mabrey Bank Account balance exceeded $250,000 in October 2024.

9.      11 U.S.C. § 345 requires the funds of the estate to be insured, and if the amount of funds in an account exceeds the amount insured by the FDIC, requires that the institution post a

2

bond or provide other collateral insuring the amounts held in the account that exceed the FDIC limit.

10.     By allowing the balance in the Mabrey Bank Account to exceed the FDIC limit of $250,000 without a bond or other collateral securing the funds, the Debtor was not in compliance with 11 U.S.C. § 345.

## Use of Debit Card

11.     As is evident in each of the Debtor's Monthly Operating Reports, Meadors is utilizing a debit card (or similar arrangement) which is associated with the Mabrey Bank Account (the "Debit Card") to make purchases.  The U.S. Trustee guidelines state that "[d]isbursements other than by number check are prohibited. . . Requests to use, create, or maintain petty cash accounts must be submitted to the United States Trustee in writing."  Operating Guidelines (Revised 01/01/20), https://www.justice.gov/ust/ust-regions-r20/file/r20_ch11_guidelines.pdf/dl, (last visited Jan. 27, 2025).

12.     In this case, Debtor's counsel expressed Debtor's need to utilize the Debit Card for gas purchases due to the nature of the Debtor's business.  The U.S. Trustee authorized the use of the Debit Card for that discreet purpose with the condition that the Debtor attach receipts to the Monthly Operating Reports for any such gas expenditures.

13.     As is clear, Meadors has used the Debit Card for more than simply gas purchases. And he has not attached a single receipt to any Monthly Operating Report.

## Use of Estate Funds for Personal Expenses

14.     Meadors has frequently utilized the Debit Card for personal expenditures.  The U.S. Trustee has had to repeatedly ask what various transactions are and has been slow to get a response.

3

15.     As examples and not by limitation, Meadors has made monthly payments on his personal Corvette, for personal fuel, and has made numerous "owner withdraw[als]," at Walmart, Dollar General, and SHM Harbors View Marina, utilizing the Debit Card.   Most recently, Meadors spent nearly $800 of the Debtor's funds at Tenner's Western Outfitter to purchase clothes for him to wear to his meeting with Whitten Burrage, a firm the Debtor has proposed to retain to pursue an outstanding insurance claim in this case.  Meadors has not provided a receipt for the clothes purchases or demonstrated that such expenditures were anything but personal.

16.     The U.S. Trustee has informed Debtor's counsel in clear terms that Meadors must stop using Estate funds and the Mabrey Bank Account for personal expenses, yet this conduct continues.

17.     The U.S. Trustee has requested that Meadors return the amounts utilized for personal items to the Debtor immediately.  Instead, in the Chapter 11 Plan of Reorganization of C M Heavy Machinery, LLC, Meadors proposes to pay the wrongfully utilized and diverted funds back into the Debtor over the course of 18 months[1].

18.     Meadors has demonstrated that he does not view himself subject to the Bankruptcy Code or associated rules.  He has disregarded the fiduciary duties he owes to the estate and to the estate's creditors by his repeated conduct.

## ARGUMENT AND AUTHORITY

19.     Section 1112(b)(1) of the Bankruptcy Code allows for conversion or dismissal of a case "for cause."  Section 1112(b)(4) provides examples of "cause" in the context of dismissal. Specifically, "gross mismanagement of the estate" is cause for conversion or dismissal.  11 U.S.C.

---

[1] The Debtor has stated that Meadors will repay $10,491.75 to the Debtor over eighteen (18) months), but the U.S. Trustee reserves the right to assert that Meadors diverted funds in excess of $10,491.75.

§ 1112(b)(4)(B). Whether a case is converted or dismissed hinges on the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1).

20.    "A debtor in possession is vested with significant powers under the provision of the Bankruptcy Code. As is often the case, those powers come with certain responsibilities. Significantly, a debtor in possession owes a fiduciary duty to its creditors." *Nestor v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.*), 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007). Gross mismanagement is a breach of that duty. *See In re M.A.R. Designs & Constr., Inc*., 653 B.R. 843, 857 (Bankr. S.D. Tex. 2023).

21.    While the term "gross mismanagement" is not defined by the Bankruptcy Code, at least one bankruptcy court has turned to the definition of "gross" in Black's Law Dictionary, which is "beyond all reasonable measure; flagrant." *See In re Ozcelebi*, 639 B.R. 365, 388 (Bankr. S.D. Tex. 2022).

22.    Gross mismanagement has been found where the debtor mismanaged the estate by using the estate's cash to pay the personal expenses of insiders. *See In re Visicon S'holders Trust*, 478 B.R. 292, 302-04 (Bankr. S.D. Ohio 2012).

23.    The U.S. Trustee submits that the failure to open a debtor-in-possession bank account, non-compliance with 11 U.S.C. § 345, unauthorized use of the Debit Card, and the repeated use of estate funds held in a non-debtor-in-possession bank account for the personal expenses and benefit of Meadors constitutes gross mismanagement.

24.    In determining whether the appropriate action is to dismiss or convert a case, the Court considers what is in the best interest of the estate. *See In re Exigent Landscaping, LLC*, 656 B.R. 757, 774 (Bankr. E.D. Mich. 2024). Creditors are "generally best served by the course of action that results in the largest number of them being paid the largest amount of money in the

shortest amount of time." *Id*.; *see also Francis v. Harrington (In re Francis)*, No. MB 18-012, 2019 Bankr. LEXIS 826 at *14 (1st Cir. B.A.P. Mar. 14, 2019).

25.    The U.S. Trustee submits that the appropriate action in this instance is conversion to a Chapter 7 case.  This case involves a potentially large claim against an insurance carrier and agent for bad faith.  Successful prosecution of a bad faith claim or a resolution of the claim would likely result in significant payment to the general unsecured creditors.  The U.S. Trustee submits that conversion to a Chapter 7 case achieves the best interests of the creditors and the estate and provides creditors and the estate the best likelihood of recovery of proceeds resulting from the bad faith claim.

26.    Accordingly, the U.S. Trustee requests that this case be converted to a chapter 7 case for cause pursuant to 11. U.S.C. § 1112(b)(1).

WHEREFORE, the U.S. Trustee requests that this Court convert this case to a case under Chapter 7 of the United States Bankruptcy Code pursuant to 11 U.S.C. § 1112(b)(1).

Dated this 30th day of January, 2025.

Respectfully submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

*/s/ Mary E. Kindelt*
Karen Walsh, OBA# 14690
Mary E. Kindelt, OBA No. 21728
PO Box 3044
Tulsa, OK 74101
(918) 581-6670
(918) 581-6674 Facsimile
mary.kindelt@usdoj.gov

6