IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

C M HEAVY MACHINERY, LLC,

Debtor.

Case No. 24-80617
Chapter 11

**CREDITOR GREAT PLAINS NATIONAL BANK'S
OBJECTION TO THE DEBTOR'S DISCLOSURE STATEMENT**

Creditor Great Plains National Bank ("GPNB"), a creditor and party-in-interest herein, hereby objects to the Disclosure Statement for Chapter 11 Plan of Reorganization of C M Heavy Machinery, LLC (the "Debtor") filed by the Debtor [Doc. No. 56] on December 6, 2024 ("Disclosure Statement") pursuant to Fed. R. Bankr. P. 3017(a). For its objection, GPNB states as follows:

**INTRODUCTION**

The above-captioned chapter 11 bankruptcy case filed by the Debtor ("Bankruptcy Case") is an inappropriate delay tactic.[1] In August 2023, the Debtor lost a substantial amount of digging mats due to a fire. Since this time, the Debtor has "hoped" that an insurance claim it asserts would resolve all its financial obligations. It has not. To avoid the foreclosure of substantially all the Debtor's assets, the Debtor filed the Bankruptcy Case. Since doing so, the Debtor has taken little to no action to generate income for the benefit of its creditors and has failed to engage in substantial business operations. Additionally, the Debtor has been severely mismanaged by the principal of the Debtor, Clint Meadors ("Meadors").

The Disclosure Statement, as well as the Chapter 11 Plan of Reorganization of C M Heavy Machinery, LLC ("Plan") [Doc. No. 58], reflect this fact. The Disclosure Statement provides very

---

[1] On January 30, 2025, GPNB filed a Motion to Dismiss or Convert this Bankruptcy Case.

little information to creditors. It contains no financial statements reflecting its past financial performance or anything in relation to financial projections. In fact, the Disclosure Statement all but concedes that the Debtor is not going to regain its footing and successfully reorganize. It also lacks any relevant information regarding the pursuit (or lack thereof) of the insurance claim.

As set forth herein, the Court need not approve the Disclosure Statement under these circumstances. Section 1125 of the Bankruptcy Code requires debtors to provide creditors with adequate information to enable creditors to evaluate the viability of a chapter 11 plan. Here, the Disclosure Statement lacks adequate information. Furthermore, the Plan itself is facially unconfirmable. As a result, the Court should deny the approval of the Disclosure Statement

## BACKGROUND

1. GPNB has a claim against the Debtor in the amount of $4,582,1596.45. Claim No. 13 at 2. GPNB's claim is secured in all of the Debtor's assets. *Id.* at 30-35.

2. The Debtor filed its Disclosure Statement on December 6, 2024 and the Plan on December 9, 2024. Doc. No. 56; Doc. No. 58. The Plan relies on the Debtor's pursuit and successful recovery of an insurance claim stemming from a loss of inventory (GPNB's collateral) as a result of a fire in North Carolina in August 2023 ("<u>Insurance Claim</u>"). Doc. No. 58 at 8. Otherwise, it provides for distributions to creditors with ordinary business income—after it is applied "to the ongoing operation of the Debtor's business in accord with the Debtor's business judgment"—and a prolonged liquidation of the Debtor's assets. Doc. No. 58 at 8.

3. The Disclosure Statement admits that the Debtor's reorganization is based on the "hope" that the Insurance Claim satisfies *all* its obligations at *some point* in the future. Doc. No. 56 at 4 ("Transparently, the Debtor is hopeful the proceeds of the [I]nsurance [C]laim will prove sufficient to retire all obligations.").

4. The Disclosure Statement asserts that the value of the Insurance Claim totals $12,596,813.68 but concedes that "it would be speculative to suggest a precise sum of an anticipated recovery." *Id.* at 5-6. It provides *no basis* for its $12 million valuation. *See id.*

5. Notably, the Disclosure Statement does not disclose the value attributed to the Insurance Claim by the insurer. *See id.* at 5. Per the insurance company's current offer, the Insurance Claim is only valued at $1,406,971.00—far below the $12,596.813.68 valuation by the Debtor. Doc. No. 70-1 at 1.

6. This is consistent with the Debtor's previous conduct, as it previously tried to conceal the value of the Insurance Claim from its creditors. Doc. No. 75-1 at 6 ("With the bank seeking well over $4.4 million in their motion, I'm afraid telling them that the number is currently $1.4 million . . . will only solidify the bank's resistance to delaying anything.").

7. With respect to the Plan's proposed liquidation, the Debtor asks creditors, including GPNB, to sit idle for one (1) year prior to receiving any distributions. Doc. No. 58 at 8. After a year has passed, the Debtor promises to liquidate enough assets to make an initial payment of $250,000.00. Six (6) months following this initial payment, the Debtor promises to liquidate an additional $250,000.00 worth of assets to pay creditors. After the second payment, the Debtor promises to liquidate assets every six (6) months to provide $400,000.00 payments to its creditors. Doc. No. 58 at 8. The property to be liquidated is the collateral of GPNB and cannot be used to pay other creditors until GPNB is paid in full. GPNB should not have to wait years to be paid.

8. Further, the Disclosure Statement provides little to no financial information regarding the Debtor's past operations because it cannot disclose "any recent statements of profit and loss" for creditors to evaluate its operations because there is an "abiding concern that such may prove inaccurate or misleading." Doc. No. 56 at 5.

3

9. Similarly, the Disclosure Statement does not provide any income projections for the Debtor's future operations under the Plan. *Id.* at 5. It only asserts that it "has not realized a statistically-meaningful profit during the past several months of operations" and that it is "not realistic to expect the Debtor" to "realize" profits that compared to the fiscal year 2019-2021. *Id.*

10. The Disclosure Statement discusses the Internal Revenue Service's "oversized proof of claim" and asserts that it is "almost entirely premised upon estimated tax obligations for years in which a return is yet to be filed." *Id.* at 4.[2] But the Disclosure Statement provides no alternative estimate for tax liability and does not identify when tax returns may be filed. *See id.*

11. Additionally, the Debtor discloses that it has "more than 1.3 million in accounts receivable." *Id.* at 3. However, the Debtor asserts that "many such obligations have been recognized as doubtful from the outset and at least one of the correlative obligations has actually been likely discharged by virtue of a counterparty's own insolvency proceedings." *Id.* The Debtor does not attempt to identify what amount of the amount of accounts receivable it believes is recoverable in the Disclosure Statement. *See id.*

12. The Debtor identifies that the Plan provides for payment of the Debtor's legal counsel, which is to be paid "within eighteen (18) months of the Effective Date," but provides no estimate for this administrative expense. *Id.* at 7.

Based on the foregoing, GPNB respectfully submits that the Court should deny approval of the Disclosure Statement.

---

[2] On August 19, 2024, the Internal Revenue Service filed Proof of Claim No. 1 in the amount of $4,517,997.54, which claim has not been objected to by the Debtor.

# ARGUMENT AND AUTHORITY

I. **The Court should deny approval of the Disclosure Statement because it provides inadequate information under 11 U.S.C. § 1125.**

Under the Bankruptcy Code, a debtor may not solicit approval of a chapter 11 plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court *as containing adequate information*."[3] Adequate information means, in pertinent part:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .[4]

Whether a disclosure statement provides adequate information is fact dependent and rests within the discretion of the Court.[5] However, "[a] reasonable and typical creditor or equity security holder must be provided adequate information to make an informed judgment regarding a proposed plan."[6] As part of this requirement, "administrative expenses must be disclosed. It should not be left to the interested parties and the court to guess what expenses may be incurred. The burden is

---

[3] 11 U.S.C. § 1125(b) (emphasis added).
[4] *Id.* § 1125(a).
[5] *See In re Texas Extrusion Corp.*, 844 F.2d 1142, 1156–57 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis."); *In re Skin Sense, Inc.*, 2017 Bankr. LEXIS 1763, at *9 (Bankr. E.D.N.C. June 26, 2017) (describing the standard as "a flexible standard that takes into account the complexity, facts and circumstances of a particular case"); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("The information required will necessarily be governed by the circumstances of the case."); *In re Applegate Property, Ltd.*, 133 B.R. 827, 829 (Bankr. W.D. Tex. 1991).
[6] *In re Seneca Oil Co.*, 65 B.R. 902, 907 (Bankr. W.D. Okla. 1986).

5

on the plan proponent to disclose all reasonably foreseeable fees and expenses that may be claimed as costs of administration."[7]

The information provided in the Disclosure Statement does not meet this standard irrespective of the poor quality of the Debtor's books and records:

a. The Disclosure Statement does not identify the status of the Insurance Claim, a timeline for the resolution of the Insurance Claim, or a justification for its valuation of the Insurance Claim. This information is not disclosed despite the fact that the Insurance Claim is the lynchpin of the Plan.

b. The Disclosure Statement does not provide *any financial projections* with respect to future income or identify the source of future income.

c. The Disclosure Statement does not identify the actual value of the Debtor's accounts receivable or delineate the steps that will be taken to recover the same despite acknowledging that the asserted value is likely inaccurate due to collection issues.

d. The Disclosure Statement does not provide any estimate for its expected tax liability yet refutes the claim made by the Internal Revenue Service.

e. The Disclosure Statement provides for payment of the Debtor's attorneys' fees as administrative expenses but provides no estimate or valuation for those fees.

Clearly, the Disclosure Statement fails to provide creditors with enough information to make an informed judgment regarding the Plan. Unless and until these issues are remedied, the Court should enter an Order denying the approval of the Disclosure Statement.

## II. The Court should deny approval of the Disclosure Statement because the Plan is "patently unconfirmable."

Issues regarding confirmation of a plan are generally "reserved for the confirmation hearing" and are "not addressed at the disclosure statement stage."[8] However, "a court may

---

[7] *In re Seneca Oil Co.*, 65 B.R. at 906; *In re Speeds Billiards & Games, Inc.*, 149 B.R. 434, 438 (Bankr. E.D. Tex. 1993) (same).
[8] *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012).

6

disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed."[9]

Notably, the Bankruptcy Code requires a chapter 11 plan to be feasible.[10] Under the Bankruptcy Code, a plan proponent must demonstrate that a chapter 11 plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[11] The Tenth Circuit has described the purpose of this requirement as follows:

> The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.[12]

The feasibility of a plan is evaluated on a variety of factors, including: (i) "the adequacy of the debtor's capital structure," (ii) "the earning power of its business," (iii) "economic conditions," (iv) "the probability of the continuation of the same management," and (iv) "any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan."[13] Under these principles, a chapter 11 plan is not feasible if it relies on uncertain and speculative litigation.[14]

---

[9] *In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). *Accord In re Am. Capital Equip., LLC*, 688 F.3d at 154.; *In re Moshe*, 567 B.R. 438, 444 (Bankr. E.D.N.Y. 2017).
[10] *See* 11 U.S.C. §1129(a)(11); *FB Acquisition Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222, 1225 (10th Cir. 2015) ("To be confirmed by the court, a Chapter 11 plan must be feasible.").
[11] *Id.*
[12] *In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985).
[13] 7 Collier on Bankruptcy ¶ 1129.02[11] (16th 2024) (collecting cases). *See, e.g., In re Stratford Assocs. Ltd. P'ship*, 145 B.R. 689, 697 (Bankr. D. Kan. 1992) (Analyzing factors such as "the prospective earnings of the business or its earning power; the soundness and adequacy of the capital structure and working capital for the business which the debtor will engage in post-confirmation; the prospective availability of credit; whether the debtor will have the ability to meet its requirements for capital expenditures; economic and market conditions; the ability of management, and the likelihood that the same management will continue; and any other related factors which would materially reflect on the company's ability to operate successfully and implement its plan." (quoting *In re Kemp*, 134 B.R. 413, 416 (Bankr. E.D. Cal. 1991)).
[14] *In re W.R. Grace & Co.*, 729 F.3d 332, 349 (3d Cir. 2013) ("[A] plan is not feasible if it 'hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably

Here, the Plan is patently unconfirmable. At the outset, the Plan's success relies solely on the credibility of its sole employee, Meadors. However, Meadors has demonstrated an inability to competently operate the Debtor. As set forth in GPNB's Motion to Dismiss, Meadors has testified that he has taken *no action* over the past four months to collect on the Debtor's accounts receivable and knows nothing about the Debtor's progress towards filing tax returns. Doc. No. 82-1 at 36:1-14. He has also taken little to no action to generate revenue. Further, Meadors has failed to accurately file monthly operating reports and unilaterally used the Debtor's funds for his own benefit without court authorization. Doc. No. 58 at 8. Considering the Debtor's history of malfeasance and embezzlement, relying on Meadors to continue operating the business is not reasonable.

Further, as acknowledged in the Disclosure Statement, the Debtor "has not realized a statistically-meaningful gross profit during the past several months of operations" and is unlikely to attain the profits it obtained in years past. Doc. No. 56 at 5. And, while the Debtor operates without profits to pay its creditors, the value of GPNB's collateral is continually decreasing. Doc. No. 82-1 at 73:2-8. Additionally, the lack of financial records available for the Debtor prohibits creditors, such as GPNB, and this Court from verifying any of the contentions made by the Debtor. Doc. No. 56 at 5.

Lastly, the hallmark of the Plan is delay so that the Insurance Claim can proceed. Doc. No. 56 at 4 ("Transparently, the Debtor is hopeful the proceeds of the [I]nsurance [C]laim will prove

---

likely.'" (quoting *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155-56 (3d Cir. 2012))); *In re Slabbed New Media, LLC*, 557 B.R. 911, 917 (Bankr. S.D. Miss. 2016) (Chapter 11 plan was not reasonable because the Debtor's "possibility of recovery from the pending or as yet unfiled lawsuits in an amount sufficient to fund the Plan within a reasonable time is at best highly speculative."). *But see Minerals Techs., Inc. v. Novinda Corp. (In re Novinda Corp.)*, 585 B.R. 145, 160-61 (B.A.P. 10th Cir. 2018) (chapter 11 plan was feasible when, though litigation was involved, the primary source of funding for operations was the plan administrator's capital).

8

sufficient to retire all obligations."). For the Debtor's hope to come to fruition, the Debtor must increase its recovery from the Insurance Claim from $1.4 million to—based on a fifty percent (50%) contingency fee arrangement—approximately $11 million. *See* Doc. No. 76 ¶ 6. The Plan rests on an illusory hope that speculative litigation involving the Insurance Claim resolves the Debtor's woes. *See id.* Thus, the Plan is not feasible.[15]

Taken together, the Court should use its discretion to deny the Disclosure Statement. The Plan is facially unconfirmable. It provides no feasible path for reorganization and is merely a delay tactic. As such, the adequacy of the Disclosure Statement should be denied.[16]

## CONCLUSION

The Disclosure Statement should not be approved. Section 1125 of the Bankruptcy Code requires the Debtor to provide a disclosure statement that allows creditors to make an informed judgment about the Plan. Here, there is no information provided about the core components of the Plan. Hence, creditors—like GPNB—are unable to evaluate the Plan's merits. Even so, the Plan is just a visionary scheme in which the Debtor hopes its financial ills will be cured. It cannot possibly be confirmed. Accordingly, even if the Court determines the information set forth in the Disclosure Statement is adequate, the Court should deny its approval of the same.

**WHEREFORE**, premises considered, Creditor Great Plains National Bank respectfully requests that the Court enter an Order denying the approval of the Disclosure Statement for the Chapter 11 Plan of Reorganization of C M Heavy Machinery, LLC, filed by the Debtor on December 6, 2024.

---

[15] *See In re Slabbed New Media, LLC*, 557 B.R. at 917.
[16] *See In re Main St. AC, Inc.*, 234 B.R. at 775.

9

Case 24-80617    Doc 87    Filed 01/31/25    Entered 01/31/25 15:53:47    Desc Main
Document    Page 9 of 10

Dated: January 31, 2025.  Respectfully submitted,

**HALL, ESTILL HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/Steven W. Soulé*
Steven W. Soulé, OBA No. 13781
Christopher J. Gnaedig, OBA No. 33892
521 East 2nd St., Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: ssoule@hallestill.com
Email: cgnaedig@hallestill.com

-and-

Daniel V. Carsey, OBA No. 21490
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: dcarsey@hallestill.com

**ATTORNEYS FOR GREAT PLAINS NATIONAL BANK**

## CERTIFICATE OF SERVICE

I certify that on this 31st day of January, 2025, a true and correct copy of the foregoing document was served electronically upon the parties registered to receive electronic notice via this Court's electronic case filing system.

*/s/Steven W. Soule*
Steven W. Soule