# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

C M HEAVY MACHINERY, LLC,

Debtor.

Case No. 24-80617
Chapter 11

## CREDITOR GREAT PLAINS NATIONAL BANK'S RESPONSE
## TO THE UNITED STATES TRUSTEE'S MOTION TO CONVERT

Creditor Great Plains National Bank ("GPNB"), a creditor and party-in-interest herein, submits this Response to the United States' Trustee's ("Trustee") Motion to Convert Case to Chapter 7 [Doc. No. 79] filed on January 30, 2025 ("Motion") in the above captioned bankruptcy case ("Bankruptcy Case"). For its Response, GPNB states as follows:

## INTRODUCTION

Debtor CM Heavy Machinery, LLC (the "Debtor") filed the Bankruptcy Case to stop the foreclosure filed by GPNB of virtually all its assets in a proceeding before the Okfuskee County District Court, State of Oklahoma. The Debtor has made no progress in this case and has now filed a Plan asking creditors, like GPNB, to wait a full year before *any payments* are made to creditors. During this time, the Debtor "hopes" that an insurance claim will resolve its financial woes. Meanwhile, the Debtor's principal, Clint Meadors ("Meadors"), continues to mismanage the Debtor and use the Debtor's property to pay for his personal lifestyle. As pointed out in the Motion, this includes, but is not limited to, using the Debtor's funds to pay for Meadors' personal Corvette, food, gas, and other miscellaneous items, such as cash withdrawals at SHM Harbors View Marina and purchasing expensive clothing at Tenner's Western Outfitters.

The Trustee and GPNB agree that the Debtor and Meador's conduct must not be tolerated by this Court any longer. The Debtor's reliance on Meadors—who has demonstrated a disregard for the Bankruptcy Code and the requirements for being a debtor in possession—constitutes gross

mismanagement. Similarly, as set forth in GPNB's Motion to Dismiss, or Alternatively, to Convert the Bankruptcy Case to a Chapter 7 Proceeding and Brief in Support filed January 30, 2025 [Doc. No. 82] ("Motion to Dismiss"), the Bankruptcy Case is causing a substantial and continuing loss to the Debtor's estate without any reasonable likelihood of rehabilitation. The Motion to Dismiss is set for hearing on March 12, 2025. Based on these facts, sufficient "cause" exists for conversion or dismissal of the Bankruptcy Case under 11 U.S.C. § 1112(b).

The Trustee contends that conversion, rather than dismissal, is appropriate because it will result in greater payments to creditors. But this may not be correct. As set forth herein, GPNB has a security interest in virtually all of the assets of the Debtor, including the proceeds of the subject insurance claim. The value of the insurance claim must increase exponentially from its current $1.4 million valuation to fully satisfy GPNB's $4,582,1596.45 claim against the Debtor before any potential payment can be made to unsecured creditors. Accordingly, it may be in the best interests of the estate and the creditors to dismiss the case rather than convert it to a case under chapter 7 of the Bankruptcy Code where a Chapter 7 trustee may just abandon the Debtor's assets.

## BACKGROUND

I. **GPNB's Relationship with the Debtor and the Insurance Claim**

1. GPNB is a national banking association that does business in Oklahoma and Texas. GPNB asserts a claim against the Debtor in the amount of $4,582,1596.45. Claim No. 13 at 2. GPNB's claim stems from the Debtor's failure to pay its obligations under a Business Loan Agreement dated December 16, 2019, a Promissory Note dated December 16, 2019, and a Promissory Note Dated September 30, 2020, as modified by that certain Loan Modification Agreement dated October 11, 2023. Claim No. 13 at 4-6.

2. To secure payment for the Debtor's obligations, the Debtor and GPNB entered into that certain Commercial Security Agreement dated September 30, 2020 ("Security Agreement").

2

Claim No. 13 at 30-35. 5. The Security Agreement granted GPNB a security interest in all the Debtor's assets ("<u>Business Assets</u>"), including but not limited to equipment, accounts, inventory, instruments, general intangibles, investment property, chattel paper, titled vehicles, deposit accounts, whether then owned or thereafter acquired, and the proceeds thereof. Claim No. 13 at 30; Doc. No. 82-1, Dep. of Meadors at 11:13-20.

3. Notably, the Security Agreement expressly granted a security interest in any insurance proceeds received from the destruction, loss, or other disposition of the Business Assets. Claim No. 13 at 30.

4. The Debtor asserts that the pursuit and successful recovery of an insurance claim stemming from a loss of inventory—which was GPNB's collateral—as a result of a fire in North Carolina in August 2023 ("<u>Insurance Claim</u>") is a key part of the Debtor's ability to reorganize. Doc. No. 58 at 8. The Debtor's reorganization is based on the mere "hope" that the Insurance Claim can satisfy *all* its obligations at *some point* in the future. Doc. No. 56 at 4 ("Transparently, the Debtor is hopeful the proceeds of the [I]nsurance [C]laim will prove sufficient to retire all obligations.").

5. However, the Debtor's interest in the Insurance Claim is currently worth only approximately $1.4 million based on the insurer's current offer of settlement. Doc. No. 76 at 3. Thus, for the Debtor's "hope" to come to fruition, the Debtor must increase its recovery from the Insurance Claim from $1.4 million to—based on a fifty percent (50%) contingency fee arrangement—almost $10 million before GPNB's claim of $4,582,1596.45 is satisfied (without liquidating other collateral). *See id.*

II. **The Debtor's Post-Petition "Operations"**

6. The Debtor's post-petition operations (or lack thereof) confirm that the Bankruptcy Case is a delay tactic.

7. Since the Petition Date, the Debtor has taken no action to recover approximately $1,343,190.00 in outstanding accounts receivable. Doc. No. 82-1 at 35:19-25. This inaction is unjustified, as Meadors admits that the longer collection efforts are delayed the less likely the Debtor's accounts receivable will be recovered for the benefit of the estate and the secured creditor. *Id.* at 73:14-18.

8. Further, the Debtor "has not realized a statistically-meaningful gross profit during the past several months of operations" and says it is "not realistic" to expect profits comparable to those obtained by the Debtor from 2019-2021, which are the most recent periods in which the Debtor possesses reliable financial records. Doc. No. 56 at 5.

9. Similarly, despite having four (4) months to reconcile its financial records since the Petition Date, the Debtor's books and records remain in poor condition and cannot be relied upon. Doc. No. 82-1 at 26:1-12.

10. Meadors has confirmed that, under the Debtor's proposed Chapter 11 plan, the Debtor intends on either getting a recovery on the insurance claim or just selling the equipment over an extended period of time. *Id.* at 72:19-73:1. However, the Debtor does not have a justification for delaying the liquidation of its assets, even though the value of the Debtor's assets are decreasing during this delayed liquidation. *Id.* at 73:2-10 and 84:1-11.

## ARGUMENT AND AUTHORITY

**I.  The Court has grounds to find "cause" for dismissal or conversion of the Bankruptcy Case.**

    **A.  The Bankruptcy Case is causing a "substantial or continuing loss" to the Debtor's estate and there is no "reasonable likelihood" of rehabilitation.**

Under 11 U.S.C. § 1112(b)(4)(A), sufficient cause exists for dismissal or conversion of a chapter 11 case if there is a "substantial or continuing loss to or diminution of the estate and the

4

absence of a reasonable likelihood of rehabilitation."[1] As the plain language suggests, this "contemplates a 'twofold' inquiry into whether there has been a 'continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation.'"[2]

With respect to the first inquiry, the Debtor must either have had a negative cash flow or the value of the Debtor's asset values must be declining.[3] This burden is not steep and both factors clearly exist in this case. Courts have consistently held that "[a]ll that need be found is that the estate is suffering *some diminution* in value."[4] Meanwhile, the second inquiry hinges on whether the Debtor's business prospects justify its efforts to reorganize.[5] Indeed, "[c]ourts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."[6] Rehabilitation does not equate to liquidation.[7]

Here, the facts warrant dismissal or conversion pursuant to section 1112(b)(4)(A). To begin, the Debtor's estate is continuing to diminish significantly in value. The value of the Debtor's equipment has decreased over time and will continue to do so. Further, the Debtor has made no efforts to collect the approximately $1,343,190.00 of accounts receivable even though, the longer the delay, the less likely the Debtor will recover this value. The Debtor also has no reasonable

---

[1] 11 U.S.C. § 1112(b)(4)(A).
[2] *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (quoting *In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985)).
[3] *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007).
[4] *Taub v. Taub (In re Taub)*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (quoting *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)) (emphasis added); *see also In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020) ("The losses to the estate need not be large—'[a]ll that need be found is that the estate is suffering some diminution in value.'").
[5] 7 Collier on Bankruptcy ¶ 1112.04[6][a][ii] (16th 2024) (collecting cases). *See also Quarles v. United States Trustee*, 194 B.R. 94, 97 (W.D. Va. 1996) (no likelihood of rehabilitation when only hope of reorganizing was based on the speculative outcome of pending litigation); *In re 15375 Mem'l Corp.*, 386 B.R. 548, 552 (Bankr. D. Del. 2008) (rehabilitation means making a business viable again—liquidation is not rehabilitation), *reversed on other grounds In re 15375 Mem'l Corp.*, 400 B.R. 420 (D. Del. 2009).
[6] *Loop Corp. v. United States Tr.*, 379 F.3d 511, 516 (8th Cir. 2004).
[7] *Id.*; *In re Costa Bonita Beach Resort*, 513 B.R. 184, 197 (Bankr. D.P.R. 2014) ("Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." (quoting 7 Collier on Bankruptcy ¶ 1112.04[6][a])).

5

likelihood of rehabilitation. The Debtor is simply hoping that a favorable outcome in litigation involving the Insurance Claim will cure its financial woes. Yet, the Debtor has no access to reasonably certain income and is making very little effort to generate income sufficient for a reorganization. The Debtor admits that it "has not realized a statistically-meaningful gross profit during the past several months of operations" and that it is unlikely to obtain the profits it garnered in years past. Doc. No. 56 at 5. As such, the Court should find "cause" for dismissing or converting the Bankruptcy Case.

      **B.    The Debtor's failure to maintain an effective corporate management team constitutes gross mismanagement of the Debtor's estate.**

Section 1112(b)(4) provides that "cause" for dismissal or conversion includes the "gross mismanagement of the estate."[8] Significantly, a Debtor grossly mismanages a bankruptcy estate when it fails to "maintain an effective corporate management team."[9] Here, Meadors is the sole employee of the Debtor. In the four (4) months following the Petition Date, Meadors has made very little effort to generate revenue and has admittedly taken no action to collect the Debtor's accounts receivable. Meadors has also failed to file accurate monthly operating reports on a variety of occasions and has unilaterally used the Debtor's funds for his individual benefit. Creditors should not have to rely on Meadors to rehabilitate the Debtor's business or appropriately liquidate the Debtor's property. This is especially true considering the Debtor's history of malfeasance and embezzlement and Meadors improper post-petition use of Debtor funds. Dismissal or conversion of the Bankruptcy Case is warranted.

---

[8] 11 U.S.C. § 1112(b)(4).
[9] *In re Gateway Access Sols., Inc.*, 374 B.R. at 564; *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007) ("[T]he Debtor has no 'corporate' management and this fact proves gross mismanagement of the estate and a breach of fiduciary obligation to the creditors.").

**II.   Dismissal, rather than conversion, is in the best interests of the creditors and the estate.**

Under the Bankruptcy Code, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate**, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."[10] Therefore, the Court must evaluate whether dismissal or conversion "is in the best interests of creditors and the estate."[11] The standard for doing so "implies a balancing test to be applied through case-by-case analysis."[12] Ultimately, the determination is a matter for sound judicial discretion.[13]

This analysis may be based on a variety of factors, including:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a 'single asset,' (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.[14]

---

[10] 11 U.S.C. § 1112(b)(1).
[11] *Id.*
[12] *In re BTS, Inc.*, 247 B.R. 301, 309 (Bankr. N.D. Okla. 2000); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) ("The bankruptcy court has broad discretion under § 1112(b).").
[13] *In re BTS, Inc.*, 247 B.R. at 309.
[14] 7 Collier on Bankruptcy ¶ 1112.04 (16th 2024).

7

Here, the Trustee contends that conversion is appropriate because the Bankruptcy Case "involves a potentially large claim against an insurance carrier and agent for bad faith." Doc. No. 79 at 6. According to the Trustee, the Insurance Claim could result in a "significant payment" to general unsecured creditors. *Id.* But this result seems far-fetched. The Insurance Claim is subject to GPNB's security interest. As such, GPNB is entitled to the proceeds of the Insurance Claim until GPNB's claim is satisfied. The general unsecured creditors only share in any proceeds that remain after the payment of the attorneys prosecuting the litigation and GPNB. Therefore, the Trustee's justification for conversion relies on an exponential increase in the value of the Insurance Claim from $1.4 million to—based on a fifty percent (50%) contingency fee arrangement—almost $10 million before GPNB's claim against the proceeds are satisfied. *See id.*

Contrary to the Trustee's contention, dismissal of the Bankruptcy Case is in the best interest of the creditors and the Debtor's estate. The Debtor's assets are fully encumbered by GPNB. As such, there are no assets available for distribution by a chapter 7 trustee. Because there is no equity in the Debtor's estate for distribution to general unsecured creditors, GPNB respectfully submits that dismissal is appropriate in this case.[15]

## **CONCLUSION**

GPNB contends that cause warrants dismissal or conversion of the Bankruptcy Case pursuant to 11 U.S.C. § 1112(b). The Debtor is grossly mismanaging the estate and the value of the estate is diminishing without any likelihood of rehabilitating the Debtor's business. For the reasons set forth herein and in the Motion to Dismiss, GPNB respectfully submits that the Court should dismiss the Bankruptcy Case so that GPNB may proceed against its collateral (the Debtor's

---

[15] *See, e.g.*, *In re Horned Dorset Primavera, Inc.*, 606 B.R. 117, 157 (Bankr. D.P.R. 2019) (dismissal was appropriate because the debtor lacked equity in property that may be administered for the benefit of unsecured creditors).

8

assets) in the state court case. In any case, the Court should dismiss or convert this case immediately to protect the interests of creditors and the integrity of the bankruptcy system.

Dated: February 13, 2025.	Respectfully submitted,

**HALL, ESTILL HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/Steven W. Soulé*
Steven W. Soulé, OBA No. 13781
Christopher J. Gnaedig, OBA No. 33892
521 East 2nd St., Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: ssoule@hallestill.com
Email: cgnaedig@hallestill.com

-and-

Daniel V. Carsey, OBA No. 21490
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: dcarsey@hallestill.com

**ATTORNEYS FOR GREAT PLAINS NATIONAL BANK**

## CERTIFICATE OF SERVICE

   I certify that on this 13th day of February, 2025, a true and correct copy of the foregoing document was served electronically upon the parties registered to receive electronic notice via this Court's electronic case filing system.

                   */s/Steven W. Soule*
                   Steven W. Soule