# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

C M HEAVY MACHINERY, LLC,

Debtor.

Case No. 24-80617
Chapter 11

## CREDITOR GREAT PLAINS NATIONAL BANK'S OBJECTION
## TO THE DEBTOR'S MOTION TO EXTEND EXCLUSIVITY PERIOD

Creditor Great Plains National Bank ("GPNB"), a creditor and party-in-interest herein of Debtor C M Heavy Machinery, LLC (the "Debtor"), hereby objects to the Debtor's Motion to Extend Exclusivity Period [Doc. No. 91] filed on February 4, 2025 ("Motion") in the above captioned bankruptcy case ("Bankruptcy Case"). For its Objection, GPNB states as follows:

## INTRODUCTION

This Bankruptcy Case has been about delay and obfuscation from the beginning. In August 2023, the Debtor lost a substantial amount of digging mats due to a fire. Since this time, the Debtor has "hoped" that an insurance claim would fulfill all of its financial obligations. It has not. As such, to avoid the foreclosure of substantially all the Debtor's assets, the Debtor filed the Bankruptcy Case on August 8, 2024 ("Petition Date").

Over six (6) months have passed since the Petition Date. Yet the Debtor has taken very little action to recover or preserve assets for the benefit of its creditors and has failed to engage in any meaningful business operations. The Debtor has taken no action to collect $1,343,190.00 of accounts receivable, has not corrected its financial records, and has not filed tax returns for the years 2022 and 2023. The Debtor has not even filed an application to employ a professional to assist with the filing of tax returns. Meanwhile, the Debtor's principal and only employee, Clint Meadors ("Meadors"), has inappropriately and admittedly used the Debtor's funds for personal

purposes, including paying his personal Corvette loan payments, his personal wardrobe, and his food.

Consistent with the goal of delay, the Debtor filed its Motion to Extend Exclusivity Period on February 4, 2025 ("Motion"), which is the date the Debtor's exclusivity period was set to expire. The Debtor urges the Court to grant it a ninety (90) day extension of this deadline to solicit acceptance of the Chapter 11 Plan of Reorganization of C M Heavy Machinery, LLC, filed on December 9, 2024 ("Plan") pursuant to section 1121(d) of the Bankruptcy Code. However, this deadline can only be extended if the Debtor demonstrates "cause" to extend this deadline. As set forth herein, the Debtor does not meet this burden and the Motion should be denied.

## BACKGROUND

1. The Debtor has acknowledged since it commenced this Bankruptcy Case that it suffers from a variety of operational and financial problems. For instance, in the Notes Accompanying Petition, Schedules, and Statement of Financial Affairs ("Notes"), the Debtor acknowledged that: (a) a pre-petition dispute between the Debtor and "the individual who maintained the books and records of CMHM . . . resulted in books and records not being reasonably current in nature"; (b) the Debtor lacked "financial records of reliable quality"; and (c) the Debtor had not filed "tax returns for the calendar years 2022 or 2023." Doc. No. 1, at ECF Page 5-6.

2. But the Debtor indicated it would resolve these issues in the Chapter 11 process. The Debtor said it would "shortly be seeking to identify and engage a third-party bookkeeper" that would "allow more refined records to be presented in connection with" the Bankruptcy Case and to maintain correct records moving forward. *Id.*

3. Similarly, the Debtor asserted that filing tax returns for 2022 and 2023 would "be prioritized post-petition" in an "expedient-but-deliberate manner." *Id.*

2

4. One hundred ninety-two (192) days have passed since the Petition Date. But the Debtor's standing remains the same as the Petition Date. The Debtor's financial records remain so unreliable that *no financial analysis* was provided to creditors in the Debtor's Disclosure Statement to the Chapter 11 Plan of C M Heavy Machinery, LLC ("<u>Disclosure Statement</u>") filed on December 6, 2024. *See* Doc. No. 56 at 5 (not providing any profit and loss analysis because the Debtor "is still in the process of triaging historic financial records" while being mindful of their "corruption by unsavory actors").

5. Similarly, the Debtor has not filed tax returns for the years 2022 and 2023, and it has not even submitted an application to the Court to employ a professional to file tax returns. The Debtor appears to have retained a volunteer bookkeeper; however, no application for employing this individual was submitted so that the Court could ensure the qualifications of this bookkeeper.

6. In reality, the Debtor hopes its financial woes will be resolved without making organizational or structural changes to the Debtor. Indeed, the Debtor asserts that the pursuit and successful recovery of an insurance claim stemming from a loss of inventory—which was GPNB's collateral—as a result of a fire in North Carolina in August 2023 ("<u>Insurance Claim</u>") is a key part of the Bankruptcy Case. Doc. No. 58 at 8. The Debtor's reorganization is based on the mere "hope" that the Insurance Claim can satisfy *all* its obligations at *some point* in the future. *See* Doc. No. 56 at 4.

7. However, the Debtor's interest in the Insurance Claim is currently worth only approximately $1.4 million based on the insurer's current offer of settlement. Doc. No. 76 at 3.

8. Furthermore, since the Petition Date, the Debtor has taken no action to recover approximately $1,343,190.00 in outstanding accounts receivable. Doc. No. 82-1 at 35:19-25. This inaction is totally unjustified, as Meadors admits that the longer collection efforts are delayed, the

3

Case 24-80617    Doc 110    Filed 02/18/25    Entered 02/18/25 19:27:01    Desc Main
Document    Page 3 of 8

less likely the Debtor's accounts receivable will be recovered for the benefit of the estate. *Id.* at 73:14-18.

9. The Debtor's ineptitude is evidenced by its poor financial performance. The Debtor acknowledges it has failed to realize "a statistically-meaningful gross profit during the past several months of operations" and says it is "not realistic" to expect profits comparable to those obtained by the Debtor from 2019-2021, which are the most recent periods in which the Debtor possesses reliable financial records. Doc. No. 56 at 5. The Debtor has demonstrated minimal profitability despite not making any payments to its secured creditor, GPNB. This situation cannot be allowed to continue.

10. Meadors has confirmed that, under the Debtor's Chapter 11 plan, the Debtor intends on either getting a recovery on the insurance claim or just selling the equipment over an extended period of time. *Id.* at 72:19-73:1. However, Meadors admits that the Debtor does not have a justification for delaying the liquidation of its assets, even though the value of the Debtor's assets are decreasing during this delayed liquidation. *Id.* at 73:2-10 and 84:1-11.

## **ARGUMENT AND AUTHORITY**

**I.    The Debtor has failed to demonstrate "cause" for extending the period of exclusivity under 11 U.S.C. § 1121.**

Under section 1121 of the Bankruptcy Code, a party in interest may only file a chapter 11 plan if "the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan."[1] This "exclusivity period" may be extended by the Court if the Debtor can demonstrate "cause" for changing this deadline.[2] This was designed "to limit the delay that makes creditors the

---

[1] 11 U.S.C. § 1121(c).
[2] *See id.* § 1121(d) ("[T]he court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."); *In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990)

4

Case 24-80617    Doc 110    Filed 02/18/25    Entered 02/18/25 19:27:01    Desc Main
Document      Page 4 of 8

hostages of Chapter 11 debtors."[3]

Courts have analyzed a variety of factors to evaluate cause. This includes: "(1) the size and complexity of the case; (2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists."[4]

Notably, courts decline to find cause for an extension when the bankruptcy case is not complex and the debtor lacks equity in the estate. For instance, in *In re Gen. Bearing Corp.*, the court denied the debtor's first request to extend the exclusivity period.[5] There, the debtor lacked equity in the estate's property because of a secured claim of its lender, Wells Fargo.[6] The Court noted that the debtor was "dealing with assets *belonging to the creditors* in which it [had] no equity interest."[7] Therefore, to prevent secured creditors from "continu[ing] as hostages" in the case, the court declined to extend the exclusivity period.[8]

---

("The party seeking a change in [§ 1121's] statutory time period bears the burden of proving that the requisite cause exists."); *In re Gibson Cushman Dredging Corp.*, 101 B.R. 405, 409 (Bankr. E.D.N.Y. 1989) (same).
[3] *In re Curry Corp.*, 148 B.R. 754, 755 (Bankr. S.D.N.Y. 1992) (quoting *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987)).
[4] *In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 600-01 (Bankr. S.D.N.Y. 2014). *Accord* 7 Collier on Bankruptcy ¶ 1121.06 (16th 2024) (collecting cases).
[5] *In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992).
[6] *Id.*
[7] *Id.* (emphasis added).
[8] *Id.*

5

Similarly, courts are unlikely to determine "cause" warrants an extension if there are insufficient negotiations between parties to progress to an effective reorganization.[9] The court's analysis in *In re R.G. Pharmacy, Inc.*, 374 B.R. 484 (Bankr. D. Conn. 2007) is instructive. In that case, the debtor was not "particularly large," having assets under $4,000,000 and employing forty-four people, and only had a few major creditors.[10] The debtor was unable to demonstrate cause because there was a "breakdown of negotiations between the debtor and the objecting creditors" that made it unlikely that the case will progress toward an effective reorganization.[11]

Here, the Motion falls short of establishing "cause" for extending the deadline. The Debtor admits that the Bankruptcy Case is not complex,[12] and the Debtor's property is fully encumbered by GPNB. Hence, just like the debtor in *In re Gen. Bearing Corp.*, the Debtor is using the property that belongs to GPNB and holding GPNB hostage to the chapter 11 process. The Debtor also acknowledges that it would be "disingenuous" to infer that cause is warranted based on negotiations with its creditors, particularly GPNB.[13] The Debtor is not large, and its negotiations (or lack thereof) with creditors like GPNB make it unlikely that an extension will improve the chances of the Debtor's reorganization. Based on these facts, the Debtor cannot bear the burden of establishing "cause" for extending the exclusivity period.

## CONCLUSION

This Bankruptcy Case has always been about delay and misguided hope relating to the insurance claim. Despite its representations on the Petition Date, the Debtor has not made any progress towards its chapter 11 goals. The Debtor's books and records remain unreliable, its

---

[9] *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487-88 (Bankr. D. Conn. 2007).
[10] *Id.*
[11] *Id.*
[12] *See* Doc. No. 91 at 4 ("[T]he Debtor does not feign to be an entity so large as to invoke the protections of the first element.").
[13] *Id.* at 4-5.

6

business is failing, and no tax returns have been filed in over two years. The Debtor has failed to take basic steps to fulfill its fiduciary duties to creditors, such as attempting to recover $1,343,190.00 of accounts receivable for the benefit of its creditors. Permitting the exclusivity period to continue will hold GPNB hostage to the Debtor while the Debtor uses property that is fully encumbered by GPNB's security interest. Accordingly, GPNB respectfully asks the Court to deny the Motion.

Dated: February 18, 2025.

Respectfully submitted,

**HALL, ESTILL HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/Steven W. Soulé*
Steven W. Soulé, OBA No. 13781
Christopher J. Gnaedig, OBA No. 33892
Connor M. Andreen, OBA No. 35047
521 East 2nd St., Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: ssoule@hallestill.com
Email: cgnaedig@hallestill.com

-and-

Daniel V. Carsey, OBA No. 21490
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: dcarsey@hallestill.com

**ATTORNEYS FOR GREAT PLAINS NATIONAL BANK**

## **CERTIFICATE OF SERVICE**

      I certify that on this 18th day of February, 2025, a true and correct copy of the foregoing document was served electronically upon the parties registered to receive electronic notice via this Court's electronic case filing system.

      */s/Steven W. Soule*
      Steven W. Soule

8

Case 24-80617    Doc 110    Filed 02/18/25    Entered 02/18/25 19:27:01    Desc Main Document    Page 8 of 8