IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-80617 |
| | ) | (Chapter 11) |
| C M HEAVY MACHINERY, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**SUPPLEMENT TO DISCLOSURE STATEMENT FOR CHAPTER 11
PLAN OF REORGANIZATION OF C M HEAVY MACHINERY, LLC**

Comes now C M Heavy Machinery, LLC ("CMHM," the "Debtor," or the "Plan Proponent"), by and through undersigned counsel, and in supplement to the previously-filed disclosure statement (the "Disclosure Statement") correlative to the Debtor's now-amended plan of reorganization (the "Plan"), discloses as follows:

**I.      Claim of the Internal Revenue Service**

Article V of the Disclosure Statement notes the Internal Revenue Service (the "IRS") to have filed a priority claim for $4,515,391.74, which the Debtor regards as being disputed even though no formal objection thereto has been filed as of present. The IRS is also asserting a non-priority, general unsecured claim of $2,605.80. Core to the dispute asserted by the Debtor is that much of the IRS's priority claim is premised upon estimated taxes. Specifically, CMHM has not filed tax returns for the years 2022 and 2023.

The IRS is estimating a tax obligation of $2,067,883.40 for 2022 and a tax obligation of $2,171,277.57 for 2023. The IRS is also asserting $219,033.48 in interest to be due for 2022 and an additional $55,264.81 in interest to be due for 2023.

There are three additional components of the IRS' priority tax claim, but they are *de minimis* relative to the foregoing figures, being equal—in the aggregate—to $1,591.37.

1

CMHM is working to engage the services of a tax professional to assist in filing returns for these years. The Debtor has had some issues retrieving historic tax-centric documents from a previously-utilized tax professional, whose staff members have been accused of larceny by the Debtor, and this has complicated—and slowed—the process of having proper 2022 and 2023 returns filed.

CMHM earnestly believes the actual tax obligation for these two years will be markedly lower than those presently claimed by the IRS. While there is no guarantee as to how a future claim objection may be ruled upon, and while CMHM urges parties in interest to recognize there is necessarily some risk insofar as the IRS' claim may ultimately be allowed without reduction, the Debtor does not believe its operations to have garnered revenues, during the two at-issue tax periods, sufficient to justify such hefty tax impositions. And the Debtor is accordingly cautiously optimistic this particular claim will be markedly reduced through the claim objection—and/or claim amendment—process.

**II.    Operating Revenues**

Article IV of the Disclosure Statement notes that the Plan provides four mechanisms through which funds will be raised to pay the claims of creditors in this case. One of those four mechanisms—and perhaps the most "typical" of the group—focusses on ongoing business operations. Since, as noted *supra*, the Debtor has not filed tax returns for 2022 and 2023 as of present, CMHM is not presently in a position to forecast future operating profits based on an extrapolation of those correlative to immediately preceding years. However, the Debtor has been operating in chapter 11 for more than six months as of the drafting of this supplement, and that time period—coupled with the monetary tracking and reporting requirements of chapter 11

2

cases—does permit a substantially contemporaneous view of CMHM's current economic performance.

The Debtor's reported net income (or loss), for each post-petition month of operations, as well as the docket reference to the correlative operating reports, are as follows:

| Month | Docket Entry | Profit (Loss) |
|---|---|---|
| Aug-24 | 46 | -$23,602.00 |
| Sep-24 | 49 | $67,567.00 |
| Oct-24 | 52 | $9,170.00 |
| Nov-24 | 63 | $76,251.00 |
| Dec-24 | 77 | $12,086.00 |
| Jan-25 | 114 | $80,176.00 |
| | | |
| Total | | $221,648.00 |
| Average | | $36,941.33 |

The foregoing numbers, if extrapolated to an annualized period, equate to projected net operating profits of $443,296.00 per year. The profits are net of cost of goods sold, ordinary overheard, and other ordinary operating expenses. These profits are also net of a post-petition salary paid to the Debtor's principal (which is regarded as an operating expense).

Portions of the foregoing numbers may be partially deceptive. Specifically, the Debtor reported an operating loss in August 2024, the month in which CMHM sought bankruptcy relief. This was due—partially, but not entirely—to the marshalling of resources to prepare a chapter 11 filing and the application, post-petition, of human resources to addressing the myriad demands correlative to the early days of a reorganization case. This was also a month that occurred before the Debtor began working with a bookkeeper to triage and manage back office operations, with such having proven enormously beneficial to CMHM's organization and ability to efficiently collect revenues.

3

Case 24-80617   Doc 120   Filed 02/28/25   Entered 02/28/25 13:07:16   Desc Main
Document   Page 3 of 7

CMHM does have ambitions of growing operations and revenues post-petition, but cautions that reliance upon such ambitions should be hedged for reasons necessarily correlative to the nonreliable nature of small business growth prospects. The Debtor does, however, believe that its post-petition operating revenues, as set forth above, represent a candid and more reliable insight into the entity's current economic performance. CMHM also believes these revenues and net profits show that the payment obligations set forth in the Plan are of a variety that CMHM is likely to be able to meet with minimal—albeit likely some—reliance on the liquidation-centric provisions of the same Plan.

### III. Legal Fees

The Plan calls for the payment of the Debtor's legal fees and expenses, incurred in connection with this bankruptcy case, as an administrative expense obligation. As of the filing of this supplement, the Debtor's reorganization counsel is holding a retainer of $18,632.00 and has unbilled fees and expenses of approximately $30,000.00.

The current unbilled fees and expenses noted above are likely to be *more* than what is actually sought for the time period to and through February 28, 2025, insofar as it is counsel's standard practice to reduce certain fees—and to write off certain fees altogether—when presenting a final invoice for judicial approval. Projecting the sum of such a discount is innately difficult, though, and conservatism favors reliance upon the full $30,000.00 figure as a "safe" number not to be exceeded for the period of time between the petition date and February 28, 2025.

The Debtor will, however, incur additional legal fees—and expenses—as this case progresses. It is likely a full day hearing will be held on a pending motion in this case, and it is equally likely an evidentiary hearing will be held on confirmation of the Plan. Mailing expenses will be incurred in connection with soliciting votes on the Plan and giving notice of the Plan.

Additional legal fees will also be incurred in connection with the day-to-day maintenance of this case.

All fees and expenses of counsel, for pre-confirmation efforts occasioned by this case, will be subject to court approval. Parties in interest will be afforded notice of an application for the receipt of such fees and expenses, and occasion to object thereto, before a final order approving fees and expenses may be entered.

**IV.     Repatriation of Funds**

As noted above, the Plan provides for four avenues through which monies will be received to pay the claims of creditors in this case. One of those avenues involves the repatriation of monies of CMHM, used to pay personal expenses of Clint Meadors ("Mr. Meadors"), post-petition. The Debtor has identified $10,491.75 in such expenses that CMHM believes need to be repaid by Mr. Meadors. The Plan provides that such funds will be repaid over an 18 month period, commencing on the effective date of the Plan.

Without affirmatively committing to the same, CMHM is cautiously optimistic this repayment will be accomplished *before* a hearing on confirmation of the Plan. Parties in interest should *not* rely on this aspiration, as it is tentative in nature and dependent upon variables outside the direct control of the Debtor. CMHM does, however, have a very high degree of confidence that these funds will be repatriated without issue.

**V.     Insurance Claim**

Another avenue of revenue realization, contemplated in the Plan, is liquidation of an insurance claim. This claim arises from the loss, to fire, of mats having a value in excess of $12 million. The mats were fully insured at the time of loss and the at-issue policy appears to cover

casualty occasioned by fire. The Debtor is not aware of any suggestion that the circumstances surrounding the loss are suspicious in nature.

The Debtor has engaged counsel to pursue this claim. Counsel will be compensated for any recovery on a contingency basis, with counsel receiving (i) reimbursement of out-of-pocket expenses, before any net proceeds are further divided; (ii) 10% of the first $1,406,971 in net proceeds; and (iii) 50% of all net proceeds thereafter. These fees will be subject to judicial approval, in a manner comparable to that described above in connection with the fees of the Debtor's general reorganization counsel.

There exists a legal dispute as to the gross obligation of the subject insurer, under the relevant policy. The Debtor is also assessing the degree of additional liability that may be sought on account of the insurer's failure to promptly pay this claim. Predicting the outcome of litigation, or even how long such litigation will pend before there is an outcome, is innately difficult and any reliance on such a prediction would be misplaced. However, the Debtor does conservatively estimate that *some* recovery is likely (albeit not certain) to be occasioned through this process.

## VI.     Caution

This supplement is intended to, as titularly indicated, supplement the Disclosure Statement. This supplement is not a summary of what is contained in the Plan or the Disclosure Statement and is lacking many of the disclosures and cautionary warnings set forth in the Disclosure Statement.

*[Signature on Following Page]*

6

Respectfully submitted,

Dated: February 28, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for C M Heavy Machinery, LLC*