IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

C M HEAVY MACHINERY, LLC,

Debtor.

Case No. 24-80617
Chapter 11

# GREAT PLAINS NATIONAL BANK'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO CONVERT THE BANKRUPTCY CASE TO CHAPTER 7 PROCEEDING

Great Plains National Bank ("GPNB") submits this Reply Brief in Support of its Motion to Dismiss, or Alternatively, to Convert the Bankruptcy Case to Chapter 7 Proceeding (the "Motion") filed on January 30, 2025 [Doc. No. 82] to address new developments in the above-captioned bankruptcy case ("Bankruptcy Case") and to rebut Debtor C M Heavy Machinery, LLC's ("Debtor") Opposition to (I) United States Trustee's Motion to Convert Case to Chapter 7; and (II) Creditor Great Plains National Bank's Motion to Dismiss, or Alternatively, to Convert the Bankruptcy Case to a Chapter 7 Proceeding (the "Opposition") [Doc. No. 104] filed on February 13, 2025.

## INTRODUCTION

The Debtor commenced the Bankruptcy Case over seven (7) months ago. During this time, the "cause" for dismissal or conversion of the Bankruptcy Case under 11 U.S.C. § 1112(b) has only grown stronger. *See* Doc. No. 82 at 10-14. The Debtor's financial records remain unreliable and its operations have not improved. Further, the principal of the Debtor, Clint Meadors ("Meadors"), has demonstrated that he is unable to serve as the representative of the Debtor or to effectuate a reorganization of the Debtor.

The Motion sets forth a variety of facts supporting these contentions. *See* Doc. No. 82 at 2-10. However, in the two (2) months since the Motion was filed, additional facts have been discovered that are critical to these contentions. Evidence at the hearing will demonstrate:

- The Debtor has possession, control, and possibly ownership over a vast array of property—over forty (40) pieces of heavy equipment—that have not been disclosed in the Debtor's schedules;
- The Debtor contends it no longer possesses or owns certain valuable property listed in its schedules and, therefore, that the schedules are materially inaccurate; and
- The Debtor commenced litigation to recover a claim for insurance proceeds, but Meadors has also sought recovery for himself, as an individual, in that same lawsuit, which is a violation of his fiduciary obligation to the Debtor and the creditors.

In the Opposition, the Debtor contends the Bankruptcy Case is the result of a Dickensian chain of events. But it is not. The Debtor's conduct before and during the pendency of this Bankruptcy Case evidences this fact. The Debtor (through Meadors) has a long history of mismanagement, late payments and a lack of trustworthiness. The Opposition fails to rebut the contentions established by the Motion. The Debtor relies on bad accounting practices—including inappropriately treating expenses as income—to support its contention that it is operating at a profit. Dismissal or conversion of the Bankruptcy Case is appropriate.

## ARGUMENT AND AUTHORITIES

**I.  Meadors has mismanaged the estate and inaccurately represented the Debtor's operations and assets.**

Under 11 U.S.C. § 1112(b), "gross mismanagement of the estate" constitutes cause for dismissal or conversion of a bankruptcy case.[1] Markedly, "[f]ailure to maintain an effective corporate management team" constitutes gross mismanagement of the bankruptcy estate.[2] This is

---

[1] 11 U.S.C. § 1112(b)(4).
[2] *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007) ("[T]he Debtor has no 'corporate' management and this fact proves gross mismanagement of the estate and a breach of fiduciary obligation to the creditors.").

2

Case 24-80617    Doc 157    Filed 04/08/25    Entered 04/08/25 09:54:36    Desc Main
Document      Page 2 of 9

because "[a] debtor-in-possession is vested with significant powers under the provision of the Bankruptcy Code."[3] Thus, debtors-in-possession owe fiduciary duties to creditors, which includes "a duty to keep the Court and its creditors informed about the status and condition of its business."[4]

Intuitively, one key to evaluating the effectiveness of a corporate management team is the management's attentiveness to its financial condition and accuracy regarding the same. For instance, in *In re Gateway Access Sols., Inc*, the debtor filed monthly reports that did not accurately reflect the Debtor's obligations.[5] It was also clear that the manager "was not closely monitoring the monthly operating reports" and was unjustifiably deferring to the company's accountants involving the same.[6] The Court ultimately determined that this was sufficient grounds to convert the case to chapter 7 and, while doing so, noted the important role "accurate reporting and financial transparency" plays "in the management of a debtor-in-possession."[7]

In fact, filing inaccurate monthly operating reports can constitute gross mismanagement of the estate. For instance, the debtor's manager in *In re M.A.R. Designs & Construction, Inc.* testified that "information on some of" the debtor's "reports were inaccurate due to his mistakes."[8] The court acknowledged that the debtor was required "to provide the [c]ourt and parties in interest with an accurate financial picture of the debtor-in-possession."[9] Hence, "numerous inaccuracies in Debtor's MORs can demonstrate gross mismanagement when paired [with] misconduct that leaves the Court and all parties in interest with an inaccurate picture of [a] [the d]ebtor's financial

---

[3] *In re Gateway Access Sols., Inc.* 374 B.R. at 565.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] 653 B.R. 843, 858-59 (Bankr. S.D. Tex. 2023).
[9] *Id.*

3

condition."[10] In that situation, the court determined the inaccurate monthly operating reports contributed to a finding of gross mismanagement.[11]

Here, Meadors is—at best—woefully inattentive to the financial condition of the Debtor. Meadors has not attempted to collect the Debtor's accounts receivable and lacks any knowledge of the Debtor's tax status or the status of its financial records. *See* Doc. No. 82 at SOF ¶¶ 33-35. Meadors has repeatedly failed to file accurate monthly operating reports and has unilaterally used the Debtor's funds for his individual benefit. *See id.* at SOF ¶ 28. Further, the Debtor has not supplied any reasonably accurate financial records for the past two (2) years of operations, filed tax returns since 2021, or attempted to address the significant claim filed by the Internal Revenue Service. Taken together, both the Court and parties in interest lack an accurate picture of the Debtor's financial condition.

The Debtor's mismanagement at the hands of Meadors has become more apparent as the Bankruptcy Case has progressed. Evidence at the hearing will demonstrate that the Debtor's bankruptcy schedules are inaccurate. The Debtor possesses over forty (40) pieces of valuable heavy equipment that were not disclosed on the Debtor's bankruptcy schedules.[12] Further, the Debtor claims that certain items listed on its schedules are either not owned by the Debtor or are no longer in the possession of the Debtor.[13] The Bankruptcy Case has been pending for over seven

---

[10] *Id.*
[11] *Id.*
[12] GPNB became aware of this property on March 21, 2025, when appraisers hired by GPNB appeared by agreement with the Debtor at the Debtor's business yard to inspect property. Evidence will demonstrate that Meadors refused to let GPNB's appraisers inspect certain equipment on the Debtor's yard even though most of that equipment was labeled "C M Heavy Machinery, LLC." Meadors asserted that the equipment was owned by someone else other than the Debtor. Additionally, the Debtor failed to make available for inspection many valuable pieces of equipment that are on the bankruptcy schedules despite having agreed to do so in advance of the inspection.
[13] Evidence will demonstrate that, on March 21, 2025, Meadors either refused to let appraisers hired by GPNB to inspect certain property or declined to present it to them on the grounds that the Debtor's schedules were inaccurate.

4

(7) months, and creditors still do not have accurate information about the Debtor's assets, liabilities and property of the bankruptcy estate. This is a direct result of Meadors' mismanagement of the Debtor.

II. **Meadors has breached his duty of loyalty to the Debtor by pursuing recovery for himself from the Debtor's insurance claim.**

Managers of a debtor-in-possession "bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."[14] The chapter 11 process "is premised upon the assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee."[15] Accordingly, the duty of loyalty owed by a debtor-in-possession requires Meadors to avoid "even the appearance of impropriety, in all of his fiduciary dealings."[16]

Here, Meadors has violated his fiduciary duty of loyalty to the Debtor and its creditors. The alleged lynchpin of the Debtor's Chapter 11 Plan of Reorganization [Doc. No. 58] is the "Debtor's pursuit of an insurance claim, for $12,596,813.68" against its insurance carrier.[17] The Debtor has retained special counsel to pursue this claim. *See* Doc. No. 95. But, without disclosing it to this Court, Meadors retained the same counsel and has pursued recovery as an individual for the same breach of contract and bad faith claims asserted by the Debtor. Meadors' active pursuit of the insurance proceeds for himself, individually, breaches his fiduciary duty to the Debtor and creditors in this case. Meadors' conduct is inappropriate and presents cause for dismissing or converting the Bankruptcy Case.

---

[14] *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355 (1985).
[15] *Id.* (quoting *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)).
[16] *See In re Combined Metals Reduction Co.*, 557 F.2d 179, 197 (9th Cir. 1977).
[17] Doc. No. 56 at 5.

**III. The Opposition relies on incorrect legal and factual foundations.**

In the Opposition, the Debtor argues that the bankruptcy estate is not suffering a continuing loss because "the law on a 'substantial or continuing loss' is, as titularly suggested, such that an ongoing loss must be material in nature." Doc. No. 104. At 12. The Debtor's argument belies the statutory text, which requires a "substantial *or continuing* loss to or diminution of the estate,"[18] and contradicts the judicial consensus regarding the burden imposed on GPNB.[19]

Simply put, GPNB need only demonstrate that the estate is suffering some diminution in value.[20] GPNB easily satisfies this burden. Meadors admits that the Debtor's equipment is depreciating. *See* Doc. No. 82, SOF ¶ 36. Contrary to the Debtor's argument, GPNB does not contend that the value of the Debtor's equipment is depreciating because it is being used. Instead, evidence will indicate that the Debtor's heavy equipment is sitting unused and exposed to the elements. Without being operated and maintained, the equipment is depreciating in value. Meadors admits as much. *See id.*

Even so, the Debtor's new contention that it has been operating at a "healthy net profit" is false and misleading.[21] To begin, the Debtor has admitted that its profits during the pendency of this case have not been "statistically-meaningful."[22] And even the statistically insignificant profits the Debtor contends it incurred from August through December 2024 are false. Specifically, the

---

[18] 11 U.S.C. § 1112(b)(4)(A).
[19] *In re Mense*, 509 B.R. 269, 284 (Bankr. C.D. Cal. 2014) ("With respect to the first element, '[t]here need not be a significant diminution in the estate to satisfy Section 1112(b)[1].'"); *In re Kowalski*, No. BR 18-09130, 2018 WL 6841355, at *2 (Bankr. N.D. Ill. Nov. 30, 2018) ("For the court to make a finding of diminution '[a]ll that need be found is that the estate is suffering some diminution in value.'"); *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (quoting *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)) (emphasis added); *In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020) ("The losses to the estate need not be large—'[a]ll that need be found is that the estate is suffering some diminution in value.'"); *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) ("All that need be found is that the estate is suffering some diminution in value." (quotations omitted)).
[20] *See supra* n.19.
[21] *See* Doc. No. 104 at 3.
[22] Doc. No. 56 at 5.

Debtor contends it had a profit of $67,566.88 in September 2024. However, the Debtor's profit and loss statement shows that it had a gross profit of $10,374.00 in September 2024, with $108,078.33 of expenses, resulting in a net operating *loss* of -$97,704.33 for September 2024.[23]

If the Debtor appropriately calculated its financial situation, the average profit/loss—as set forth in the Debtor's Opposition—should be:[24]

| Aug-24 | -$23,602.00 |
|---|---|
| Sep-24[25] | $-97,704.33 |
| Oct-24 | $9,170.00 |
| Nov-24 | $76,251.00 |
| Dec-24 | $12,086.00 |
| Total | -$23,799.33 |
| Average | -$4,759.87 |

These figures also do not include accrued and accruing professional fees or any payments to secured creditors (the Debtor owes GPNB more than $30,000 per month under the current loan agreement). At bottom, the Debtor is not operating a viable business. To the extent the Debtor

---

[23] *See supra* n.19. Additionally, this calculation does not incorporate an expense of $165,271.21, as it is unclear whether the expense for "Ask my Accountant" is a valid expense in this case. If this were included, the loss for September 2024 would equal -$262,975.54.

[24] GPNB submits this calculation without conceding the accuracy of the Debtor's Monthly Operating Reports. The Debtor's records remain nearly indecipherable because each Monthly Operating Report commingles the Debtor's accounts, assets and liabilities with Meadors' accounts, assets and liabilities. However, the Court, GPNB and other creditors are left with nothing but the Debtor's Monthly Operating Reports to rely upon for analysis.

[25] This calculation for September 2024 appropriately calculates net income as: gross profit of $10,374,00 less expenses of $108,078.33. However, it does not incorporate an additional transfer of $110,891 that the Debtor received on September 9, 2024, which is the Debtor's recovery of a vandalism insurance claim that is subject to GPNB's perfected security interest and is not income.

contends otherwise, this analysis rests on accounting errors. The Debtor should not be permitted to proceed as a debtor-in-possession. Accordingly, dismissal or conversion is warranted.

## CONCLUSION

The Motion should be granted for the reasons set forth therein and in this Reply and based on the evidence to be presented at the hearing on April 9, 2025. The Debtor has operated as a debtor-in-possession for over seven (7) months. Yet, the Debtor has not filed its tax returns (or even hired a tax professional), corrected its financial records (or even hired an accounting professional), or engaged in viable business operations. And during this time, GPNB's collateral has been languishing in the Debtor's lot. It is not being used to generate revenue for the benefit of the estate. Furthermore, Meadors has grossly mismanaged the Debtor's estate and is violating his fiduciary duties to creditors. If the insurance claim is worth anywhere close to what the Debtor suggests, then a Chapter 7 trustee can pursue recovery of that claim for the benefit of all creditors. Taken together, the Court has ample cause for dismissal or conversion of the Bankruptcy Case. As such, GPNB respectfully asks the Court to grant the Motion and provide the relief requested therein.

Dated: April 8, 2025.                    Respectfully submitted,

**HALL, ESTILL HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**

*s/Connor M. Andreen*
Steven W. Soulé, OBA No. 13781
Christopher J. Gnaedig, OBA No. 33892
Connor M. Andreen, OBA No. 35047
521 East 2nd St., Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: ssoule@hallestill.com
Email: cgnaedig@hallestill.com
Email: candreen@hallestill.com

-and-

Daniel V. Carsey, OBA No. 21490
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: dcarsey@hallestill.com

**ATTORNEYS FOR GREAT PLAINS
NATIONAL BANK**

## CERTIFICATE OF SERVICE

I certify that on this 8th day of April, 2025, a true and correct copy of the foregoing document was served electronically upon the parties registered to receive electronic notice via this Court's electronic case filing system.

*/s/Connor M. Andreen*
Steven W. Soule