| | | |
|---|---|---|
| In re: | ) | Case No. 24-80617 |
| | ) | (Chapter 11) |
| C M HEAVY MACHINERY, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**CLOSING ARGUMENT AS TO CREDITOR GREAT
PLAINS NATIONAL BANK'S MOTION TO DISMISS, OR ALTERNATIVELY,
<u>TO CONVERT THE BANKRUPTCY CASE TO A CHAPTER 7 PROCEEDING</u>**

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com

*and*

Christianna A. Cathcart, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
christianna@dakotabankruptcy.com

*Counsel for the Debtor*

Comes now C M Heavy Machinery, LLC ("CMHM" or the "Debtor"), by and through undersigned counsel, and as and for its closing argument in support of the denial of Creditor Great Plains National Bank's Motion to Dismiss, or Alternatively, to Convert the Bankruptcy Case to a Chapter 7 Proceeding (the "Motion," as found at DE #82, with the proponent thereof being known as "Great Plains") states as follows:

## I. Introduction

With one exception, CMHM has shown a net operating profit every single month since entering chapter 11. Some months have been more lucrative than others and, yes, one month did include monies realized from an insurance claim. Yet, month-in and month-out, for more than half a year, the Debtor has operated profitably—all while under the stresses attendant to bankruptcy and all while CMHM's principal has been confronting the added personal stresses of state court collection efforts from Great Plains.

Equally, Clint Meadors ("Mr. Meadors")—the eponymous individual at the helm of CMHM—presented at a hearing on the Motion as honest, credible, and unrelentingly hardworking. He knows his company, he knows his company's assets, and he knows how to operate his business. His candor was unfailing and his passion was self-evident as he occupied the witness stand for the longest single stretch of the day.

The same hearing showed the financial records of CMHM to have lacked integrity at the case's outset and to have improved since. The company's post-petition records are clean, saving and excepting periodic *de minimis* human errors. And while the pre-petition records still demand some careful revision, there exists a clear upward trajectory to the quality of bookkeeping.

Yet the quality of bookkeeping is not a question properly considered in the prism of a motion to dismiss or convert being, instead, one well relegated to a confirmation hearing. And

2

while Great Plains premised the Motion on a putative ongoing diminution of estate assets, coupled with an inability to place confidence in the Debtor's chief executive, the evidentiary record ultimately revealed otherwise. There, quite simply, is not an ongoing diminution. And Mr. Meadors is assuredly a quality man serving at the helm of a quality business.

The Debtor does not dispute that the onus at confirmation will be greater and, equally, that the swath of issues to be confronted at confirmation will, too, be greater. Yet, for instant purposes, there simply does not exist cause—within the definitional ambit of Section 1112 of Title 11 of the United States Code—to convert or dismiss this case.

## II. Standard

As noted in earlier briefing on the Motion,[1] Title 11 of the United States Code (the "Bankruptcy Code") provides that matters under Chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*, "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," 11 U.S.C. § 1112(b)(4), and "(B) gross mismanagement of the estate. . ." *id*.

"The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr. S.D.N.Y. 2009)).

As noted by a sister court within this state, "[p]ursuant to § 1112(b), the initial burden lies with the movant to establish cause for dismissal." *Macco Props., Inc. v. Deeba (In re Macco*

---

[1] This Section II—and only this Section II—is copied, largely verbatim, from the opposition brief of CMHM.

3

*Props.)*, 2011 Bankr. LEXIS 5755, at *52 (Bankr. W.D. Okla. Sep. 7, 2011) (citing *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007)).

If a party in interest files such a motion, and is able to establish "cause" under Section 1112(b)(4), then (and only then) the burden shifts to the Debtor to demonstrate the satisfaction of four criteria:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-- (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Thus, upon the establishment of "cause," the Debtor must then establish (i) unusual circumstances giving rise to the underlying cause; (ii) a reasonable likelihood of timely plan confirmation; (iii) reasonable justification for the cause giving rise to the underlying motion; and (iv) imminent cure of the subject deficiency.

### III. There is No Ongoing Diminution

As the close of the hearing on the Motion, this Honorable Court noted—in an assuredly candid, contemplative fashion—*inter alia*:

> I don't think there was no evidence on financial loss. Again, part of it goes to whether we ascribe the acceptance of an insurance settlement as something that was generated by the operation of the business by the Debtor as opposed to an insurance claim being paid that happens to be in the bank.

Transcript, DE #163, at 237:11-16

Respectfully, the Debtor submits that while the foregoing question would present an interesting inquiry, such is not the question instantly before this Honorable Court. The controlling inquiry under 11 U.S.C. § 1112(b)(4)(A) is not whether an insurance recovery constitutes operational income, but whether there exists a "substantial or continuing loss to or diminution of the estate." On that question, the record speaks clearly. CMHM respectfully posits that the evidentiary record demonstrates a healthy, post-petition operation punctuated by the accrual of net operating profits every single month except for the first month of the case's pendency.

In evidence as Debtor's exhibits B through G are CMHM's operating reports for August 2024 through January 2025. Also in evidence, as Great Plains' exhibit 21, is the operating report for February 2025. Examining each of these exhibits, and looking to Part 4, Line k of each such report, the Debtor's post-petition economic performance is as follows:

| Month | Exhibit | Profit (Loss) |
|---|---|---|
| Aug-24 | Debtor B | ($23,602.00) |
| Sep-24 | Debtor C | $67,567.00 |
| Oct-24 | Debtor D | $9,170.00 |
| Nov-24 | Debtor E | $76,251.00 |
| Dec-24 | Debtor F | $12,086.00 |
| Jan-25 | Debtor G | $80,176.00 |
| Feb-25 | Great Plains 21 | $28,099.00 |
| | | |
| Total | | $249,747.00 |
| Average | | $35,678.14 |

So while, yes, the Debtor has realized the benefit of a single, large sized insurance recovery, such is not nearly representative or indicative of the Debtor's post-petition economic performance. Rather, the Debtor has turned a net profit in six of seven months (being the six most recent months, no less), showing an average monthly profit of $35,678.14. This level of performance is even more remarkable considering CMHM has done so with only one employee (the Debtor's principal) and

5

Case 24-80617    Doc 168    Filed 05/01/25    Entered 05/01/25 22:59:59    Desc Main
Document      Page 5 of 11

limited external support. Mr. Meadors testified that he is the sole officer, owner, and employee of CMHM, managing every aspect of the business himself: a reality that reinforces the business's efficiency and discipline. *See* Transcript, DE #163, at 9:9-10:3

Annualized, a monthly net profit of $35,678.18 equates to $428,137.68. CMHM entered bankruptcy with $5,491,300.85 in liabilities. *See* Debtor Exhibit A at p. 13. Juxtaposing those two numbers, the Debtor's post-petition performance—despite being hampered by all the time and attention necessarily devoted to managing this case—projects to a net profit of just under 8% of total debt. And that is, by just about any measure, a healthy metric.

To be sure, whether CMHM can do better is a fair question and one properly taken up at confirmation. Without the traumas and stresses of bankruptcy, and without Great Plains also seeking to collect from the Debtor's principal, it stands to reason CMHM might be palpably more profitable yet. But such is immaterial for instant purposes: the Section 1112 question is whether there exists "substantial or continuing loss to or diminution of the estate," 11 U.S.C. § 1112(b)(4), and the evidence adduced at the hearing does not support any such ongoing loss or diminution. To the contrary, the evidence is that of a healthy entity that turns a net profit nearly every month.

### IV. There is No Gross Mismanagement

The second basis upon which Great Plains seeks to convert or dismiss this case is gross mismanagement, premised upon a notion that Mr. Meadors ought not be relied upon to operate the Debtor. Great Plains Motion, DE #82, at § I(B), pp. 13-14. Yet, again, the bank comes well shy of introducing an evidentiary record sufficient to support this contention, let alone demonstrating post-petition conduct amounting to "gross mismanagement of the estate" as required under 11 U.S.C. § 1112(b)(4)(B).

Great Plains' invocation of "gross mismanagement" rests more on rhetoric than record. To prevail under § 1112(b)(4)(B), a movant must do more than highlight instances of disorder or administrative oversight. Courts interpret this standard narrowly and apply it with precision. The term is reserved for conduct that is "beyond all reasonable measures' flagrant." *In re Ozcelebi,* 639 B.R. 379, 388 (Bankr. S.D. Tex. 2022). Ordinary errors, even serious missteps—particularly if they occurred pre-petition and have been acknowledged and corrected—do not constitute cause for conversion if they do not reflect persistent mismanagement post-petition. *See In re Gateway Access Solutions, Inc.,* 374 B.R. 556, 566 (Bankr. M.D. Pa. 2007).

Section 1112(b)(4)(B) is concerned exclusively with the management of the estate after the filing of the petition. As the court in *Ozcelebi* observed "[a]nalysis under §1112(b)(4)(B) focuses solely on the management of the estate and does not include mismanagement of the pre-petition debtor.*"* 639 B.R. at 388. Accordingly, pre-petition disarray, even if proven, is not grounds for relief unless it manifests in continued mismanagement during the Chapter 11 case. No showing of post-petition disarray has occurred here.

Instead, the post-petition record is marked by a pattern of remediation, accountability, and active management consistent with the duties of a debtor-in-possession. Mr. Meadors testified with candor about isolated misstatements, including the erroneous listing of personally owned equipment as estate property. See Transcript, DE #163, at 20:1-24. But rather than obfuscate or deny these errors, Mr. Meadors undertook corrective action, including marking assets for inspection and committing to amended disclosures. See Transcript, DE #163, at 20:20-21:6; 29:13-29:20. Such transparency and responsiveness are the hallmarks of compliance, not mismanagement.

Further evidencing this commitment to fiduciary duty, Mr. Meadows implemented meaningful internal controls. As detailed in the record, CMHM retained Holly Goodson, a bookkeeper, to restore order to its financial operations. See Transcript, DE #163, at 56:4-13. Ms. Goodson reconciled CMHM's 2023 and 2024 bank records, populated QuickBooks with detailed entries, and prepared monthly financial statements, profit and loss reports, and reconciliations for submission to counsel and the Court. Transcript, DE #163, at 161:14-21. She further undertook to engage Zach Richardson to ensure proper classification of insurance proceeds and resolution of tax obligations. Transcript, DE #163, at 162:9-20.

Equally important is what the record does not show. There is no evidence—none—of hidden assets, unpaid post-petition taxes, lapsed insurance, or failure to comply with court orders. Indeed, the only credible evidence regarding CMHM's financial posture confirms that its cash position has improved during this case. See Transcript, DE #163, at 106:15-19; 107:1-3. Monthly operating reports have been timely filed, are substantively complete, and are supported by reconciled financial records.

While Great Plains points to inaccuracies in the Debtor's monthly operating reports, such discrepancies are the direct result of disorganized books and records inherited from the pre-petition period. While reporting obligations are central to Chapter 11 oversight, courts consistently distinguish between inexcusable, post-petition reporting failures and technical discrepancies attributable to inherited pre-petition disarray. *See In re Ozcelebi*, the record here makes clear that any inaccuracies in CMHM, such as asset misclassification or duplicative entries, seemed from disorganized pre-petition records that were transparently disclosed. See Transcript 20:01-24; 83:2-18; 161:14-162:20.

This is a far cry from the "egregious" or "flagrant" violations warranting mismanagement. *See In re Whetten*, 473 B.R. 380, 384 (Bankr. D. Colo 2012) (conversion appropriate where debtor failed to file accurate reports for months and submitted materially deficient filings); *See also In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009). Rather, this case resembles *In re Creech,* where the court rejected conversion despite delayed or incomplete disclosures, noting that the debtor's good faith, post-petition compliance, and corrective efforts. 538 B.R. 245, 252 (Bankr. E.D.N.C. 2015). Here, CMHM has timely filed its reports and has continuously made good-faith efforts to address issues stemming from pre-petition recordkeeping deficiencies.

Even the isolated concerns raised by Great Plains, such as the use of non §345 account or the reimbursement of nominal business charges, were voluntarily disclosed by the Debtor, promptly addressed, and explained on the record. These events, far from supporting conversion, reflect a debtor attempting in good faith to navigate the procedural and practical challenges of reorganization. They are not "flagrant" breaches, nor do they threaten the estate. In short, the record reflects a business debtor earnestly working to rehabilitate itself while maintaining accountability and transparency. Courts consistently decline to convert cases where issues are being corrected, and the debtor is in substantial compliance with its duties. *See Gateway Access,* 374 B.R. at 566.

V. Conclusion

CMHM is assuredly as fallible an entity as most that enter chapter 11 in need of reorganization. And the record from the hearing shows that CMHM has used its stay in bankruptcy to identify problems, craft a plan to remedy those problems, and propose a more formal plan to pay creditors. There have, assuredly, been minor missteps along the way, yet each such misstep has been punctuated by candor and correction. Moreover, and perhaps most importantly, none of

9

Case 24-80617    Doc 168    Filed 05/01/25    Entered 05/01/25 22:59:59    Desc Main
Document    Page 9 of 11

these missteps have come anywhere near the high level of gross mismanagement, nor have any invited an ongoing diminution of the Debtor's estate.

It is unsurprising that Great Plains, a secured creditor that stood on the cusp of seizing the Debtor's assets pre-petition, wishes not to see this case continued. Yet such a desire does not nearly amount to "cause" under Section 1112, nor does the record herein invite or establish any other variety of "cause." And it is accordingly proper for the Motion to be denied and for CMHM to be permitted to continue its chapter 11 journey toward plan confirmation.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) deny the UST Motion; (ii) deny the Great Plains Motion; and (iii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: May 1, 2025   By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com

Christianna A. Cathcart, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
christianna@dakotabankruptcy.com

*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of May 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Christianna A. Cathcart<br>
Christianna A. Cathcart