FILED IN DISTRICT COURT
OKLAHOMA COUNTY

FEB 24 2025

RICK WARREN
COURT CLERK

111 _____

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

(1) CLINT MEADORS, and
(2) CM HEAVY MACHINERY, LLC,

        Plaintiffs,

vs.

Case No. CJ - 2025 - 1 2 7 0

(1) AXIS INSURANCE COMPANY; and
(2) BOLLES & ASSOCIATES, LLC,

        Defendants.

## PETITION

COME NOW the Plaintiffs, Clint Meadors ("Meadors") and CM Heavy Machinery, LLC (collectively referred to herein as "Plaintiffs"), and for their causes of action against Defendants AXIS Insurance Company ("AXIS") and Bolles & Associates, LLC ("BOLLES") (collectively "Defendants"), hereby alleges and states as follows:

## JURISDICTION AND VENUE

1.      Plaintiff CM Heavy Machinery, LLC is a domestic limited liability company organized and existing under the laws of the State of Oklahoma and headquartered in Okemah, Oklahoma.

2.      Plaintiff Clint Meadors is the sole member, manager, and the owner of Plaintiff CM Heavy Machinery, LLC.

3.      Defendant AXIS Insurance Company is a foreign insurer that is licensed and engaged in the business of insurance in the State of Oklahoma. AXIS may be served via the Oklahoma Insurance Commissioner, Glen Mulready, 400 N.E. 50th Street, Oklahoma City, OK 73105.

4.      Defendant Bolles & Associates, LLC ("Bolles") is a domestic for-profit

corporation organized and existing under the laws of the State of Oklahoma and doing business in and throughout Oklahoma. Defendant Bolles & Associates, LLC may be served through its registered agent, Caden Bolles, 624 W. Independence St., Suite 108, Shawnee, Oklahoma 74804. Caden Bolles ("Bolles") owns and/or operates an insurance agency located in Shawnee, Oklahoma 78404. Bolles was the insurance agent that sold Plaintiffs the subject Policy at issue in this case. Insurance agents are properly joined defendants to this action. *See e.g., Norman v. State Farm,* Remand Order ECF No. 16, CIV-24-1132-R (W.D. Okla. Jan. 30, 2025) (Russell, D.J.); *Bartholomew v. State Farm Fire & Cas. Co.*, 2022 WL 22879674 (W.D. Okla. Dec. 16, 2022) (Jones, D.J.); *Nelson v. State Farm Fire & Cas. Co.*, 647 F. Supp. 3d 1189 (W.D. Okla. 2022) (DeGiusti, C.D.J.); *McDow v. State Farm Fire & Cas. Co.*, 2022 WL 17960457 (W.D. Okla. Dec. 27, 2022) (Friot, D.J.); *Ervin v. Herb Weaver Ins. Agency, Inc.*, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) (Palk, D.J.); *Kyger v. State Farm Fire & Cas. Co.*, 649 F. Supp. 3d 1200 (W.D. Okla. 2022) (DeGiusti, C.D.J.); *Sexton v. State Farm Fire & Cas. Co.*, 2023 WL 11917022 (W.D. Okla. Jan. 5, 2023) (Jones, D.J.); *Phillips v. State Farm Fire & Cas. Co.*, 2023 WL 336142 (W.D. Okla. Jan. 20, 2023) (DeGiusti, C.D.J); *Christy v. State Farm Fire & Cas. Co.*, 2023 WL 2933312 (W.D. Okla. Apr. 13, 2023) (Russell, D.J.); *Shira v. State Farm Fire & Cas. Co.*, 2023 WL 4624701 (W.D. Okla. July 19, 2023) (Russell, D.J.); *Whitby v. State Farm Fire & Cas. Co.*, 2023 WL 11763365 (N.D. Okla. Aug. 21, 2023) (Frizzell, D.J.); *Stacy v. State Farm Fire & Cas. Co.*, 2023 WL 11915451 (W.D. Okla. Dec. 29, 2023) (Wyrick, D.J.); *Champion v. State Farm Fire & Cas. Co.*, 2023 WL 11944492 (W.D. Okla. Dec. 29, 2023) (Wyrick, D.J.); *Ross v. State Farm Fire & Cas. Co.*, 2024 WL 1092540 (W.D. Okla. Mar. 13, 2024) (Dishman, D.J.); *Jessop v. State Farm Fire & Cas. Co.*, 2024 WL 3400543 (E.D. Okla. July 12, 2024) (Melgren, D.J.); *Stayton v. State Farm Fire & Cas. Co.*, (N.D. Okla. April 20, 2023) (Kern, D.J.); *Killingsworth v. State Farm Fire*

& *Cas. Co.*, (N.D. Okla. April 21, 2023) (Kern, D.J.); *Bean v. State Farm Fire & Cas. Co.*, (N.D. Okla. June 26, 2024) (Cartwright, D.J.); *Martin v. Allstate Vehicle & Prop., Ins. Co.*, No. CIV-23-739-SLP, 2024 WL 3510301 (W.D. Okla. July 23, 2024) (Palk, D.J.); *Wedin v. Allstate Vehicle & Prop., Ins. Co.*, 2023 WL 6806995 (N.D. Okla. Oct. 16, 2023) (Eagan, D.J.). As BOLLES is a citizen of the forum-state, removal of this action by any Defendant AXIS would be improper.

5. Venue is proper pursuant to 12 O.S. § 137.

### FACTUAL BACKGROUND

6. Plaintiffs own and operate a heavy machinery business located in Oklahoma. As part of its business, Plaintiffs buy and then resell certain equipment and property for profit. On or around December 2019, Plaintiffs purchased certain wooden "mats" used by entities in various construction projects. Plaintiffs borrowed approximately $6.9 million to purchase the mats at a low price and then planned to store and then resell the mats at a higher price, repay the loan, and earn a profit. Of the mats purchased, Plaintiffs originally stored approximately 20,000 mats at a 9.87 acre outdoor storage yard located at 1139 Shaw Mill Rd in Fayetteville, North Carolina. From 2020 until August 20, 2023, Plaintiffs sold and was in the process of selling the mats for profit. As of August 20, 2023, Plaintiffs were storing more than 16,000 mats at the Fayetteville yard.

7. In this regard, Plaintiffs sought insurance coverage to protect their investment and their business property including the subject mats. Bolles never advised Plaintiffs that the business property did not meet any underwriting requirements or that any risk assessment was performed to meet Plaintiffs' specific business property insurance needs. At no time did BOLLES inform Plaintiffs as to any inspection of the subject property and/or any concerns or issues with its value, pre-existing damage, deterioration, or any other factor that would alter or negate full replacement cost coverage for the subject mats, either at Policy inception or renewal. Thereafter, BOLLES

3

sold Plaintiffs a commercial lines replacement cost policy through AXIS to insure Plaintiffs' business property.

8.    Defendant AXIS insures Plaintiffs' business property owned pursuant to a Replacement Cost Commercial Lines Policy No. A1CMOK0002-036299-04 (the "Policy").

9.    Throughout the life of the Policy, Plaintiffs faithfully paid premiums for its coverage through AXIS. On August 20, 2023, a large fire incident occurred at or near the Fayetteville yard in Fayetteville, NC. As a result of the fire, Plaintiffs' property, including the more than 16,000 wooden mats, were burned and destroyed.



10.    Meadors timely notified Defendant that the fire had caused significant and extensive damage to the insured property, including but not limited to the mats, which were a total

loss. On September 14, 2023, Plaintiffs submitted a Property Loss Notice. Plaintiffs timely and properly submitted the claim to AXIS for the fire damage and destruction of the subject mats.

11.     However, Defendant's handling of Plaintiffs' first-party claim from the beginning caused serious delays, was not timely, was outcome based, and was conducted in bad faith in violation of Oklahoma law and the Oklahoma Unfair Claims Settlement Practices Act.

12.     Defendant AXIS investigated the claim under a reservation of rights.

13.     On June 13, 2024, almost a year after the subject fire, AXIS utilized a third-party consultant, Young & Associates, to conduct a site inspection at the Fayetteville yard. AXIS admitted that Young & Associates "*were unable to fully determine the condition of the mats at the time of our inspection due to the extent of damages from the loss event and the length of time form the date of loss to the inspection*." Remarkably, however, despite the extensive destruction of the subject mats from the fire and without any pre-fire inspection as to the condition of the mats whatsoever, AXIS via Young & Associates determined that the mats were in "various stages of deterioration", had "likely reached the end of their useful life expectancy," and "would not have been in a sellable condition at the time of the loss event." Incredibly, Young & Associates determined that (1) "*2/3 of the mats present at the time of the loss would not have been able to be sold due to exposure to the elements over a period of least (5) years*"; and (2) of the mats that could be resold, those mats "*had less than half of their useful life remaining*." None of this was accurate.

14.     AXIS had no evidence whatsoever to support such serving conclusions as to the value of the subject mats. In fact, a large majority of the mats were completely unused. Relying on these completely biased and unsubstantiated valuations, Young & Associates thereby determined that the ACV of the mats destroyed in the fire was only $1,406,971.00. Such

significant depreciation and low valuation were completely biased, inaccurate, unsupported, and were given for the express purpose of placing the Plaintiffs in a financially untenable position. As the Oklahoma Supreme Court has long acknowledged, "[t]he very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful [insurance company]." *See Buzzard v. Farmers*, 1991 OK 77, ¶ 11, 824 P.2d 1105 (internal citation omitted). Plaintiffs are in dire financial circumstances and have been exposed to oppressive, bad faith tactics on behalf of Defendant.

15.     As a replacement cost policy, AXIS informed Plaintiffs that AXIS could tender the ACV payment, but that Plaintiffs could not recover the Replacement Cost policy benefits until it actually replaced or repurchased the mats. Replacing the mats would cost the Plaintiffs over $10 million, thus creating an impossible scenario whereby Plaintiffs are unable to get benefits owed under the Policy because he cannot afford to replace the mats. As a result of the fact that Plaintiffs cannot obtain $10 million after suffering a huge loss, AXIS has wrongfully avoided paying the replacement cost benefits it owed under the Policy.

16.     AXIS engaged in a bad faith and intentional tactic to low ball the ACV and highly depreciate the subject mats, thereby creating a significant gap between ACV and RCV of Plaintiffs' property that made actually replacing the mats impossible to do. Plaintiffs employed FCG Matting out of Houston, Texas, who conducted an analysis of the cost to replace the subject mats destroyed by the fire. FCG's evaluation as applied to the number of mats destroyed amounted to approximately $12.5 million. Thus, AXIS's biased and self-serving utilization of its hired-gun third party Young & Associates created a scenario whereby Plaintiffs would be forced to come up with almost $11 million to pay for the replacement of the mats and only then, according to AXIS,

6

would Plaintiffs be entitled to their Policy benefits.

17.    Defendant AXIS also conditioned payment of the ACV policy benefits, biased as that evaluation was, on Plaintiffs signing a Proof of Loss with incorrect valuation amounts.

18.    Based on the absurdity of the ACV, the depreciation afforded the mats, and other valuations performed by AXIS, Plaintiffs could not realistically replace the subject mats, could not sell any mats to make the loan payments to its lender, and Plaintiff CM Heavy Machinery, LLC was forced to file Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Oklahoma.  Similarly, the lender who provided the investment money to Plaintiffs to purchase the mats at issue filed suit against Meadors individually in Okfuskee County, *Great Plains National Bank v. Meadors,* Case No. CJ-2024-34.

19.    Young & Associates' report was nothing more than a hired-gun biased report to support AXIS's efforts to avoid paying full replacement cost benefits.  AXIS willfully and wrongfully denied Plaintiffs' claim for full replacement cost benefits for the subject mats destroyed by a covered loss.  AXIS has and continues to avoid payment of the full amount of benefits owed and as Plaintiffs is entitled to pursuant to the Policy. As a result, AXIS has denied Plaintiffs' claim in bad faith. In so doing, AXIS engaged in bad faith claims handling, claiming extensive depreciation to the subject mats prior to the subject loss without any pre-fire inspection or evidence to support such claim of pre-existing damage and other self-serving reasons to prevent AXIS from being able to actually replace the mats.  AXIS' investigation and reliance on Young & Associates was unreasonable and in bad faith.  Young & Associates made such speculation without any evidence of pre-existing damages or deterioration of the subject property.  Regardless, AXIS in bad faith unreasonably relied on the report from Young & Associated, which defied common sense, and denied Plaintiffs' claim de facto by its unreasonable ACV and depreciation afforded to

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 7 of 24

the subject mats.

20.     Defendants misconduct forced Plaintiff CM Heavy Machinery, LLC into Chapter 11 bankruptcy and the lender filed suit against Meadors as the principal owner for the debt as well. Plaintiffs seeks all damages under the Policy as well as damages for bad faith under Oklahoma law, including mental anguish and emotional distress, breach of the peace of mind promised by insurers to their policyholders like the Plaintiffs, financial losses, embarrassment, lost business profits and opportunities, and other related damages.

**COUNT I: BREACH OF CONTRACT**
*Against Defendant AXIS*

21.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

22.     Plaintiffs entered into a contract of insurance with AXIS to provide coverage for its commercial and business property. The Policy was in full force and effect at all material times hereto.

23.     Plaintiffs provided proper and timely notice to AXIS of its claim arising from a fire that took place on August 20, 2023, which caused significant damage to Plaintiffs' business property, including destruction of the subject wooden mats outlined herein.

24.     Plaintiffs complied in all material ways with the terms and conditions of the Policy.

25.     AXIS breached its contractual obligations under the terms and conditions of the Policy by failing to pay Plaintiffs all benefits owed under the terms and conditions of the Policy and for wrongfully underpaying, undervaluing, and denying portions of the Claim. AXIS breached the express and implied terms of the Policy by significantly undervaluing the ACV of the destroyed business property mats and determining significant depreciation of such mats from an incorrect

RCV in a very favorable manner to AXIS, resulting in a gap between ACV and RCV that made actually replacing the property mats impossible for the Plaintiffs.

26.     As a result of AXIS's breach of contract and other wrongful conduct, Plaintiffs incurred damages.

<u>**COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**</u>
**("Bad Faith")**
*Against Defendant AXIS*

27.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

28.     At all relevant times hereto, AXIS owed Plaintiffs a duty of good faith and fair dealing.

29.     AXIS knowingly, intentionally, purposefully, wrongfully, and repeatedly breached its duty to deal fairly and in good faith by engaging in the following acts and omissions:

   a.     Failing to perform a proper investigation regarding Plaintiffs' claim made pursuant to the Policy, including but not limited to a fair and objective investigation of Plaintiffs' damages sustained;

   b.     Unreasonably using and relying on a hired-gun entity to support its de facto denial of Plaintiffs' claim with unreasonable and unsupported ACV and depreciation;

   c.     Failing to pay Plaintiffs the full and fair amount for the property damage sustained by Plaintiffs in accordance with the terms and conditions of the Policy;

   d.     knowingly engaging in a pattern and practice of denial-oriented investigations and claims-handling practices;

   e.     arbitrary and capricious claims handling;

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 9 of 24

f.      denying and or underpaying indemnity payments owed to its first-party insureds on valid property damage claims that require a fair analysis of ACV and RCV;

g.      withholding pertinent benefits, coverages, and other provisions due to Plaintiffs under the terms and conditions of the Policy in violation of the Unfair Claims Settlement Practices Act, 36 O.S. §§1250.1-1250.16;

h.      limiting and/or denying rights inherent to Plaintiffs;

i.      recklessly disregarding said rights;

j.      forcing Plaintiffs to retain counsel to recover insurance benefits owed under the terms and conditions of the Policy;

k.      knowingly and purposely failing to inspect the insured business property prior to inception of the coverage and/or maintain current information as to the condition of the subject mats prior to the loss;

l.      failing to notify Plaintiffs both prior to and at the inception and renewal of the Policy, of any pre-existing damage, deterioration, or other conditions that, if a claim were made, would limit coverage;

m.      failing to communicate all coverages and benefits applicable to the Claim;

n.      failing to perform a proper, timely, fair, and objective investigation of the Claim;

o.      failing to pay the full and fair amount for the damages sustained to the insured business property in accordance with the Policy's terms and conditions;

p.      failing to base its denial of the Claim on a valid, accurate, and reasonable grounds;

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 10 of 24

q.      failing to disclose AXIS's lack of compliance with its own underwriting guidelines, policies, and procedures in denying coverage to Plaintiffs;

r.      engaging in the pattern and practice of denying payment of full replacement cost claim by asserting pre-existing damages and significant depreciation without a pre-inception property inspection and/or without reasonably updated knowledge of the pre-loss condition of the subject property;

s.      significantly undervaluing the ACV of the destroyed business property mats and determining significant depreciation of such mats from an incorrect RCV in a very favorable manner to AXIS, resulting in a gap between ACV and RCV that made actually replacing the property mats impossible for the Plaintiffs;

t.      engaging in the pattern and practice of utilizing hired-gun entities like Young & Associates to support underpaying and denying claims;

30.     AXIS's actions demonstrate a "pattern" theory of bad-faith conduct, liability for which is cognizable under Oklahoma law. *See* 12 Okla. Stat. § 2406; *Vining v. Enter. Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998) (where plaintiff sought to prove insured's pattern and practice of bad faith conduct, evidence regarding other insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)"); *see also Metzger v. Am. Fid. Assur. Co.*, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007); *Markham v. National States Ins. Co.*, 122 Fed. Appx. 392 (10th Cir. 2004) (evidence of nation-wide rescission practice supported bad faith); *Barnes v. Okla. Farm Bur. Mut. Ins. Co.*, 2000 OK 55, 11 P.3d 162, 170 ("*insurer's unreasonable treatment of Barnes was not an isolated incident, but the same or similar tactic was used by insurer repeatedly with other insureds*"; awarding actual and punitive damages).

31.     The conduct of AXIS, as described above, constitutes bad faith and is a material breach of the terms and conditions of the Policy and its underlying insurance contract between

11

the parties. AXIS had no reasonable basis in its refusal to recognize and pay Plaintiffs the full amount of benefits owed pursuant to the Policy for the fire damage to the business property at issue.

32.     In short, Defendants bad faith tactics have caused irreparable financial and emotional toll on the Plaintiffs. Plaintiffs acted and paid premiums to insure the business property it invested in as part of its business model. As a consequence of AXIS's breach of the duty of good faith and fair dealing, Plaintiffs have sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, emotional pain and mental anguish, emotional distress, breach of the peace of mind promised insureds like the Plaintiffs, financial losses, embarrassment, damage to reputation, lost profits and business opportunity, and other damages that naturally results from an insurance failure in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interests.

33.     AXIS's conduct was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

34.     AXIS's actions during the handling of Plaintiffs' claim demonstrate it acted intentionally, and with malice (without justification or excuse) and breached its duty to deal fairly and in good faith. AXIS's actions were consistent with a pattern of practice of bad faith conduct and an overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

35.     AXIS enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to Plaintiffs.

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 12 of 24

## COUNT III: NEGLIGENT PROCUREMENT OF INSURANCE
### *Against Bolles*

34.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

35.     Agents such as Bolles solicit and market what they tout as a replacement cost commercial property insurance coverage to prospective insureds. AXIS uses a form insurance policy to issue property coverage in Oklahoma—while the amount of coverage (and premiums charged therefor) differ from insured to insured, the scope of coverage is in large part materially the same for all insureds.

36.     AXIS considers its approved agents to be the first line of its underwriting division. AXIS's agent plays a crucial role in the sale of AXIS insurance policy to the insured. This role creates key legal duties, which BOLLES and AXIS owes to the insured:[1]

    a.     BOLLES must use reasonable care, skill, and diligence to procure coverage as the insured requested that meets the insured's stated needs;

    b.     By undertaking the calculation of replacement cost for the insured, Bolles must use reasonable care, skill, and diligence to do so; and

    c.     When BOLLES speaks, it owes a duty to do so accurately and truthfully.

37.     BOLLES has a duty to speak and to fully disclose all material information to an insured about AXIS's bad faith claims handling tactics, its reliance on biased hired-gun entities,

---

[1] Under Oklahoma law, a duty to speak may arise from a partial disclosure. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (the law imposes a duty to speak from a partial disclosure because "the speaker is under a duty to say nothing or to tell the whole truth" (citation and internal quotation marks omitted)); *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350,1353-54 (Okla. 1988) ("Although a party may keep absolute silence and violate no rule of equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth."); *see also Ervin v. Herb Weaver Ins. Agency, Inc.*, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) (Palk, D.J.).

13

its pattern and practice to avoid paying for full RCV by low balling ACV and determining extensive depreciation to subject property, the requirement that Plaintiffs would be required to pay for the replacement of business property destroyed in a fire prior to receiving insurance benefits, and other material information any insured would deem reasonable in making a purchasing decision.

38.     Industry standards, as well as BOLLES's legal duty of reasonable skill, care, and diligence in the procurement of insurance, require BOLLES to act in accordance with the training and contractual requirements AXIS imposes upon them. These requirements and training exist to ensure policyholders receive the coverage they request and BOLLES binds coverage in accordance with their representations to the insured and AXIS's internal guidelines.

39.     BOLLES should meet these duties by inter alia performing an in-person inspection of the property prior to the inception of coverage and routinely thereafter to verify the condition and attributes of the insured property for the purposes of (a) the agent's accurate calculation of replacement cost and (b) the agent's accurate representation that the insured property qualifies for coverage under AXIS's guidelines. Indeed, not all properties automatically qualify for AXIS commercial property policies—only those which meet its internal guidelines and thus constitute a good risk for AXIS in insure.

40.     The policy is a contract—one that obligates AXIS to indemnify its insured upon the occurrence of a covered loss. AXIS's issuance of an insurance policy to an insured contains certain critical representations: namely, that the property identified in the policy declarations meets the criteria for the coverage prescribed at the time of inception or renewal.[2] The agent further

---

[2] This must be true, for the issuance of coverage upon a property that does not qualify at the time would constitute an illusory coverage violation.

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 14 of 24

expressly and/or inherently represents that no condition, pre-existing damage, deterioration, wear-and-tear, or other defect negates the property's eligibility for full coverage under the policy.

41.     BOLLES should inspect the property to determine this eligibility for coverage under AXIS's internal underwriting requirements. There is no other way for the agent to gather the information it needs to accurately relay to AXIS (and the insured) whether the property rightfully meets the criteria for coverage.

42.     BOLLES represented expressly and/or impliedly to both AXIS and the insured that the property meets certain criteria and is eligible for coverage. This representation is repeated each time the policy renews, such that the agent represents the property's eligibility (and, thereby, the absence of any condition that would negate that eligibility), each policy year upon renewal.

43.     In the event BOLLES finds the property fails to quality for replacement cost coverage (e.g., the mats are too old, too worn, in poor condition, were deteriorating, or otherwise affected by pre-existing conditions), BOLLES owes an independent duty to report the same to both the insured and to AXIS. This should result in reduction, denial, or cancellation of coverage. Of course, this determination would first require a physical inspection of the subject mats and property.

44.     Ultimately, BOLLES binds coverage for the property on behalf of AXIS. AXIS then issues a resultant commercial insurance policy only when all binding criteria are met. Upon information and belief, BOLLES did not perform or acquire an in-person inspection of the property and mats to be insured as the inception and/or renewal of the Policy. This means they represent the property's eligibility to both AXIS and the insured recklessly and blindly, without ever verifying whether that representation is true.

45.     BOLLES procure full replacement cost commercial insurance coverage from AXIS for Plaintiffs as Plaintiffs requested BOLLES obtain a replacement cost policy that would provide coverage for the insured property in the event of a loss.

46.     To that end, Plaintiffs expressly and/or inherently disclosed concerns and insurance needs to BOLLES. Above all, BOLLES is aware that the Plaintiffs needs coverage under a policy that would fully replace the insured property mats in the event of a loss, without exclusion of any fire related event.

47.     By virtue of the act of procuring the Policy and binding coverage (without limitation), BOLLES independently established, calculated, and set the Policy's replacement cost value. Neither BOLLES nor AXIS required or otherwise asked Plaintiffs to calculate or request a specific amount of coverage for the insured property. Instead, BOLLES insured the insured property to 100% of its alleged replacement cost value.

48.     By virtue of the act of procuring the Policy and binding coverage (without limitation), BOLLES independently selected and calculated coverage and expressly and/or inherently conveyed that such coverage limit was accurate, correct, commensurate with actual replacement costs, and represented 100% of the insured property's insurance to value.

49.     Here, BOLLES committed the following strategic and material omissions:

a.     Neither BOLLES nor AXIS ever inspected the mats or procured such an inspection from a third party prior and/or coverage or subsequent renewal.

b.     Neither BOLLES nor AXIS ever verified the insured property's condition, characteristics, attributes, etc.—whether at Policy inception or upon each subsequent annual renewal of the Policy.

c. Neither BOLLES nor AXIS ever disclosed to Plaintiffs that the insured property was ineligible for the requested replacement cost coverage for any reason.

d. Neither BOLLES nor AXIS ever advised Plaintiffs that the mats had any defect, pre-existing damage, or other conditions that would exclude it from replacement cost coverage or constitute the subsequent depreciation determined in this case.[3]

e. Neither BOLLES nor AXIS ever advised Plaintiffs of any condition that would exclude the mats from full replacement cost coverage.

f. Neither BOLLES nor AXIS ever advised Plaintiffs of AXIS's internal and clandestine definitions of "deterioration," "resale," "pre-existing damage," etc with respect to the mats. Instead, BOLLES by virtue of the act of procuring the Policy and binding coverage (without limitation), acts to ensure coverage for the Plaintiffs under the Policy for all fortuitous losses, regardless of the severity, nature or type was covered.

g. Neither BOLLES nor AXIS required or otherwise asked Plaintiffs to calculate or request a specific amount of coverage for the insured property.

h. Neither BOLLES nor AXIS ever advised or informed Plaintiffs that it would be required to purchase replacement of the mats before Plaintiffs would receive replacement cost benefits under the policy.

i. Neither BOLLES nor AXIS ever advised or informed Plaintiffs that he would be required to pay millions of dollars out of pocket before receiving benefits owed under the Policy.

---

[3] As explained above, had BOLLES identified any such condition, BOLLES would have been required to report the same to both Plaintiffs and AXIS.

j.  At all material times hereto, BOLLES acted as AXIS's agent and AXIS is thereby vicariously liable for the BOLLES's conduct.

50.    Plaintiffs had reasonable expectations that he had coverage under the Policy for the losses they sustained and for which they filed a claim. Neither BOLLES nor AXIS ever advised or informed Plaintiffs that they would be required to pay millions of dollars out of pocket before receiving benefits owed under the Policy. When there are ambiguities, and the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the insured's expectation will prevail over the language of the policy. *Max True Plastering*, 1996 OK 28, ¶ 8. In *Max True*, the Oklahoma Supreme Court provide "[u]nder the doctrine, if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy."1996 OK 28, ¶ 8 (citations omitted).

51.  In procuring the Policy, BOLLES had a duty to:

a.    use reasonable care, skill, and diligence to procure coverage as the insured requested that meets the insured's stated needs;

b.    use reasonable care, skill, and diligence in undertaking the calculation of replacement cost for the insured;

c.    speak accurately and truthfully by informing Plaintiffs of all coverages, advising Plaintiffs of the benefits, risks, limitations and exclusions thereof, and perform a reasonable inspection of the insured property and its condition prior to procuring the replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required; and

18

d. Disclose all material facts with respect to the AXIS's Policy requirements on replacement costs benefits and claim handling outlined within this Petition.

52. BOLLES breached its duty owed to Plaintiffs by knowingly and purposefully procuring and renewing:

a. illusory coverage (in that all fortuitous losses are not covered under the Policy);

b. coverage deviating substantially and materially from that which Plaintiffs requested;

c. a Policy that did not accurately reflect the replacement cost of the Insured Property (i.e., an amount that was 100% insurance to value as represented);

d. a Policy that, as written, did not provide coverage to fully restore the insured property back to its pre-loss condition;

53. BOLLES further breached its duty owed to Plaintiffs by failing to:

a. follow and abide by AXIS underwriting policies/guidelines;

b. perform all necessary inspections of the insured property;

c. disclose pre-existing damage to the insured property;

d. verify whether its inherent representation to AXIS and Plaintiffs that the insured property (including the mats) were in good condition was accurate;

e. procure and renew a policy that provided the requested coverage for all fortuitous losses; and

f. disclose all material facts as outlined within this Petition.

54. Plaintiffs relied on BOLLES's representations and/or omissions to substantial detriment.

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 19 of 24

55. As a result of Defendant's conduct, Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

56. Defendant's conduct was intentional, willful, malicious and in reckless disregard of the rights of others and is sufficiently egregious in nature so as to warrant the imposition of punitive damages. Defendants acted intentionally, and with malice and, breached duties owed to Plaintiffs. Defendant's actions were consistent with their overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims.

## COUNT IV: CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION
### *Against All Defendants*

57. All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

58. Defendants owed a legal and/or equitable duty to disclose all material facts that may arise out of their relationship as insurer and insured. *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 17, 308 P.3d 1041.

59. The concealment of a material fact which substantially affects another person constitutes fraud. *Patel v. OMH Medical Center, Inc*., 1999 OK 33, ¶ 34; *Sutton v. David Stanley Chevrolet*, 2020 OK 87, 475 P.3d 847. Fraudulent representations may consist of half-truths calculated to deceive, and a representation literally true is actionable if used to create an impression substantially false. *Sutton*, 475 P.3d at 15. Where the peculiar circumstances give rise to a duty on the part of one of the parties to a contract to disclose material facts and the party remains silent to his or her benefit and to the other party's detriment, the failure to speak constitutes fraud. *Id*. (citing *Croslin*, ¶ 17) (emphasis added).

Case 24-80617    Doc 171-1    Filed 05/05/25    Entered 05/05/25 14:54:51    Desc Exhibit
State Court Petition    Page 20 of 24

60.     "[A] variety of facts and circumstances [] will give rise to a duty to disclose material facts." The Sutton Court reiterated that it has "consistently found the existence of the requisite circumstances, i.e., that which is necessary to create a duty to disclose, when the offending party created a false impression concerning material facts that was relied upon by the other party to his detriment and to the benefit of the offending party." *Id*. at 15.

61.     A negligent or innocent misrepresentation or concealment for constructive fraud occurs when one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Negligent misrepresentation can also be based on a material omission. *See Lopez v. Rollins*, 2013 OK CIV APP 43, 303 P.3d 911; *Sutton v. David Stanley Chevrolet*, 2020 OK 87; *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 37 P.3d 783; *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 992 (10th Cir. 1994) (applying Oklahoma law).

62.     Defendants owed specific duties to the Plaintiffs. These duties are encompassed in AXIS's duty of good faith and fair dealing owed to its insureds, as well as specific duties owed by BOLLES to Plaintiffs a duty to exercise reasonable diligence and skill in obtaining and accurately notifying of the nature and character of the insurance procured, the duty in undertaking the calculation of replacement cost for the insured to use reasonable care, skill, and diligence to do so, the duty to speak accurately and truthfully, and the duty to disclose all material facts relating to the Policy as outlined within this Petition.

63.     Defendants breached this duty by misrepresenting, concealing, or omitting pertinent material facts from Plaintiffs, including (but not limited to) the following:

Case 24-80617     Doc 171-1     Filed 05/05/25     Entered 05/05/25 14:54:51     Desc Exhibit State Court Petition     Page 21 of 24

a.      Defendants misrepresented the insured property met all underwriting requirements, that all inspections had occurred, and that the replacement cost values it calculated were accurate and commensurate with replacement costs such that the coverage would fully restore and replace the subject mats in the event of a loss by a covered event;

b.      Defendants misrepresented that the insured property was eligible for the comprehensive full replacement coverage (rather than a low ball ACV);

c.      Defendants engaged in an intentional scheme to low-ball the ACV value of the mats, afford unreasonable levels of depreciation onto Plaintiffs' business property, and operate a scheme and practice to avoid paying replacement cost benefits under the Policy;

d.      Defendants failed to disclose that pre-existing issues with the mats would either prevent issuance of the replacement cost coverage or limit coverage for any damage during the Policy period;

e.      BOLLES misrepresented the procurement of the comprehensive coverage Plaintiffs requested;

f.      Defendants misrepresented that the Policy covered all fortuitous losses and that fire damage (even cosmetic)—big or small—was fully covered under the Policy;

g.      Defendants failed to disclose all material information to an insured about AXIS's bad faith claims handling tactics, its reliance on undisclosed definitions and standards outside of the Policy, its pattern and practice of utilizing hired guns to further its scheme to avoid full replacement cost payments, and other material information any insured would deem reasonable in making a purchasing decision; and

h.       Defendants failed to disclose to Plaintiffs any of the above misrepresentations and/or omissions, any facts underlying these misrepresentations, or any material facts regarding the claim handling in this case.

64.      Nevertheless, Defendants sold and renewed illusory replacement cost insurance coverage to Plaintiffs knowing such statement was untrue.

65.      As a result of both Defendants breach of duty, each gained an advantage by misleading Plaintiffs to substantial detriment and prejudice. These breaches of duty induced Plaintiffs to accept, purchase, and renew the AXIS replacement cost policy.

66.      Defendant's conduct constitutes constructive fraud.

67.      As a result of the Defendants' constructive fraud, Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, financial losses, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

68.      Defendants' conduct was intentional, willful, malicious, and in reckless disregard of the rights of others, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.


## PRAYER FOR RELIEF

**WHEREFORE**, this Court should enter judgment on behalf of Plaintiffs against all Defendants for:

(a)      Actual each in an amount in excess of $75,000.00;

(b)      Punitive damages under Oklahoma law;

(c)      Disgorgement of the increased financial benefits derived by any and/or all of the Defendants as a direct result of the Defendants' wrongful conduct; and

(d)     Prejudgment interest, costs, attorneys' fees, and all other relief this Court deems just and equitable.

Respectfully submitted,

*Blake Sonne*

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office:        405.516.7800
Facsimile:     405.516.7859
     rwhitten@whittenburragelaw.com
     mburrage@whittenburragelaw.com
     bsonne@whittenburragelaw.com
     hwhitten@whittenburragelaw.com
**ATTORNEYS FOR PLAINTIFF**

***ATTORNEYS' LIEN CLAIMED***
***JURY TRIAL DEMANDED***