IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-80617 |
| | ) | (Chapter 11) |
| C M HEAVY MACHINERY, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**REPLY TO OPPOSITION OF CHAPTER 7 TRUSTEE TO FIRST
AND FINAL APPLICATION FOR APPROVAL OF FEES,
AND REIMBIRSEMENT OF EXPENSES, FOR COUNSEL FOR DEBTOR**

Comes now the VerStandig Law Firm, LLC ("VLF"), by and through undersigned counsel, in reply to the opposition brief, DE #212 (the "Opposition"), of Kelley G. Loud, chapter 7 trustee herein ("Ms. Loud" or the "Trustee"), to the compensation application, DE #199 (the "Application"), of VLF, and states as follows:

**I.     Introduction**

VLF holds a validly perfected security interest in the pre-petition retainer tendered by C M Heavy Machinery, LLC ("CMHM" or the "Debtor"). Insofar as that retainer is in a sum well less than the fees being sought by VLF—and even well less than the reduced fee award proposed by the United States Trustee (the "UST") in their separate objection to the Application[1]— the whole of the retainer is subject to the lien of VLF and unavailable for utilization for distribution to any other creditor (including any other administrative claimant) herein. It is thusly respectfully suggested the Trustee's Opposition is in legal error.

---

[1] The UST has separately objected to the Application. DE #213. It is reasonably anticipated that objection will be subject to a more formal amicable resolution in the coming days.

1

## II. Argument: VLF Should be Permitted to Withdraw Allowed Fees from Trust and Should Not be Compelled to Turnover the Subject Retainer

Macroscopically, what the Trustee proposes is that any chapter 11 counsel for a debtor-in-possession lose the benefit of a pre-petition retainer (together, presumably, with any fees collected on an interim basis) if a case ultimately converts to chapter 7. Such a theory, if embraced, would assuredly lead to the prompt cessation of capable attorneys taking on reorganization cases that pose even the slightest risk of unsuccessful conclusion. And it is thusly little wonder that well-established law firmly rejects this contention.

As a starting point, the laws of Maryland control the retainer being held by VLF insofar as the firm's trust account is maintained at Middletown Valley Bank, an institution that exclusively operates in the Old Line State. *See* Okla. Stat. tit. 12A, § 1-9-301 (". . . (2) While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral. (3) Except as otherwise provided in paragraph (4) of this section, while . . . money are located in a jurisdiction, the local law of that jurisdiction governs: . . . (C) the effect of perfection or nonperfection and the priority of a nonpossessory security interest in the collateral.").

Fortunately, however, utilization of Maryland law does not occasion a result any different that utilization of Oklahoma law, insofar as both states utilize the same pertinent provisions of the Uniform Commercial Code. Compare Okla. Stat. tit. 12A, § 1-9-301, *et seq*. with Md. Code, Com. Law § 9-101, *et seq*. Under both statutory impositions:

> (a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.
>
> (b) Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

2

(1) Value has been given;

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) One of the following conditions is met: . . .

(A) The debtor has authenticated a security agreement that provides a description of the collateral . . . or . . .

(D) The collateral is deposit accounts. . .

Md. Code, Com. Law § 9-203; Okla. Stat. tit. 12A, § 1-9-301.[2]

Under pertinent case law, value was given not merely when services were performed post-petition but, equally, when VLF agreed, pre-petition, to furnish CMHM with bankruptcy representation. *See, e.g.*, *In re Tuscany Energy, LLC*, 561 B.R. 910, 915 (Bankr. S.D. Fla. 2016) (". . . value was given by the Firm as the Firm promised to represent the Debtor in this bankruptcy case.").

Similarly, the at-issue retainer was the valid property of CMHM—in which CMHM had applicable "rights"—at the time the transfer to VLF's attorney trust account was undertaken. *See id.* (". . . at the time the Debtor paid the Pre-Petition Retainer to the Firm the Debtor owned the funds in its SunTrust Bank account, the source of the Pre-Petition Retainer.").

Of equal importance, VLF and CMHM entered into an engagement agreement that identifies the subject retainer and the manner in which the tendered funds will be held and disposed. *See id.* (". . . the Firm and the Debtor entered into an engagement agreement that

---

[2] Three distinctions exist in the manner in which this text is codified in Oklahoma and Maryland: (i) the Maryland codification capitalizes the first letters of certain clauses that are not capitalized in the Oklahoma codification; (ii) in the Oklahoma codification, an elipses would appear between "The collateral is" and "deposit accounts," with the list of collateral types being rearranged in section (b)(3)(D) of the Oklahoma iteration; and (iii) the Oklahoma codification uses the word "signed" in lieu of the word "authenticated" in subsection (b)(3)(A). It is respectfully urged none of these distinctions are material in nature.

3

specifically addresses the retainer and its use for payment of fees and expenses in this case."). Similarly, the retainer has been under VLF's control since before this bankruptcy case was filed, with the monies being held in VLF's attorney trust account. *See id.* ("Also, the Firm is, and has been . . . in possession of the Pre-Petition Retainer by virtue of holding the Pre-Petition Retainer in the Firm's trust account.").

To be sure, the retainer was tendered on August 5, 2024 and August 7, 2024. *See* Statement of Financial Affairs, DE #1, at p. 41, §§ 11.1, 11.2. This case was not filed until August 8, 2024. *Id.* (date stamps and signature lines). And the giving of the retainer followed CMHM entering into an engagement agreement pursuant to which, *inter alia*, "[t]he funds held in the Firm's trust account shall be security for the payment of fees and expenses incurred on behalf of the Business." Engagement Agreement, DE #4-2, at § 5. VLF also therein made express that it would *not* file this case, for CMHM, unless and until the full sum of the retainer was paid into trust. *Id.* at § 6.

Indeed, as observed by the *Tuscany Energy* Court: "Debtor-in-possession counsel who obtains a pre-petition retainer to ensure payment of fees and expenses in a chapter 11 case (or a post-petition retainer authorized by court order) becomes a secured creditor, secured by a possessory security interest in money." *Tuscany Energy*, 561 B.R. at 915 (citing *In re Outdoor RV & Marine, LLC*, 2011 Bankr. LEXIS 1698 at **20-25 (Bankr. S.C. 2011); *In re Advanced Imaging Techs., Inc.*, 306 B.R. 677, 680-81 (Bankr. W.D. Wash. 2003); *In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr. N.D. Ill. 1988)).

The *Advanced Imaging Technologies* Court has stated the relevant premise with similar simplicity: "The prevailing view among bankruptcy courts is that security retainers are allowed and recognized in the context of bankruptcy proceedings." *Advanced Imaging Techs.*, 306 B.R. at 680 (citing *In re Printcrafters, Inc.*, 233 B.R. 113, 118 (D. Colo 1999); *In re Zukoski*, 237 B.R.

194, 198 (Bankr. M.D. Fla. 1998); *In re Insilco Technologies, Inc., et al.*, 291 B.R. 628, 636 (Bankr. D. Del. 2003)).

To be sure, and without engaging too far adrift a "parade of horribles," if the proposition urged by the Trustee were accepted, and general reorganization counsel's retainer became unprotected and at the whim of generalized distribution to other administrative creditors (before or after a conversion to chapter 7), such would assuredly have a profound chilling effect on the chapter 11 ecosystem. There is innate risk in doing debtor-side reorganization work; fees and expenses over and above a retainer are already a palpable collection risk when representing companies that, by their very definition, are in financially emperilled circumstances. If such a risk attached, too, to the retainers garnered pre-petition, counsel would be compelled to either abandon such an economically perilous line of work or, alternatively, significantly raise hourly rates so that the efforts of debtors able to successfully reorganize may compensate for those of debtors that ultimately fail to find a fruitful exit from chapter 11.

The Trustee's Opposition also begets procedural questions. This is a case that pended for far more than 120 days, yet VLF elected to not seek interim compensation as part of an effort to focus, instead, on case administration. Had such interim compensation been sought and awarded, however, the subject monies would now be in an operating account and not a trust account. 11 U.S.C. § 331. Would the Trustee suggest those funds to be ripe for disgorgement upon conversion to chapter 7? And, if not, would such not create a regime whereby it would be fiscally irresponsible for general reorganization counsel to not constantly file applications for interim compensation?

Perhaps most alarmingly, however, the Opposition implicitely suggests a regime whereby counsel's retainer, in a bankruptcy case, amounts to little more than a means of segregating funds from the control of a client, essentially holding monies at bay in a nanny-esque effort to ensure

funds not be otherwise expended. Conflating retainer monies with the funds held in a debtor's DIP account (which appears to be a fair summation of the Opposition) would render retainer monies little more than an administrative burden, substantively indistinguishable from operating funds. And such would seem, at core, to more or less undermine the entire system of legal retainers that has permeated the bankruptcy system since well before an act became a code in the late 1970s.

For these reasons—as set forth in the Uniform Commercial Code, as expounded upon by relevant case law, and as supported by the sensibilities of the chapter 11 system—it is respectfully urged the Application be granted.

### III. Conclusion

WHEREFORE, Maurice Belmont VerStandig and The VerStandig Law Firm, LLC respectfully pray this Honorable Court grant the Application over the Trustee's Opposition and afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: August 31, 2025  By:  /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for The VerStandig Law Firm, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

6