IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

C M HEAVY MACHINERY, LLC,

Debtor.

Case No. 24-80617
Chapter 7

## GREAT PLAINS NATIONAL BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND TO COMPEL ABANDONMENT AND TO LIFT 14-DAY STAY UNDER FED. R. BANKR. P. 4001(A)(4)

Great Plains National Bank ("GPNB"), pursuant to 11 U.S.C. §§ 362(d) and 544(b), Fed. R. Bankr. P. 4001, and Local Rule 4001-1, moves the Court for an Order: (i) terminating the automatic stay to permit GPNB to proceed in recovering and liquidating the real estate owned by the Debtor, C M Heavy Machinery, LLC (the "Debtor"), in the pending state court case in the District Court of Okfuskee County, Oklahoma, Case No. CJ-2024-34; (ii) lifting the fourteen (14) day stay of the order granting relief from the automatic stay relief imposed by Fed. R. Bankr. P. 4001(a)(4); and (iii) compelling the chapter 7 trustee to abandon the assets set forth herein pursuant to 11 U.S.C. § 554. In support of this Motion, GPNB provides the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.

2. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### SUMMARY OF RELIEF REQUESTED

4. GPNB requests that the Court terminate the automatic stay so it can recommence recovering and liquidating the real property owned by the Debtor, which is the collateral of GPNB, in the pending state court case in the District Court of Okfuskee County, Oklahoma, Case No. CJ-

2024-34 ("State Court Litigation"), effective immediately upon entry of the order without the fourteen (14) day stay imposed by Fed. R. Bankr. P. 4001(a)(4).

5. GPNB requests that the Court enter an order compelling the chapter 7 trustee to abandon the property set forth above and more fully described below because there is no value to these assets above the secured claim of GPNB and there is no benefit to administering the assets through the bankruptcy estate.

6. In this Motion, GPNB *is not* requesting that the automatic stay be lifted with respect to: (i) its interest in insurance proceeds—not yet collected by the Debtor—that are currently pursued by the Debtor in *CM Heavy Machinery LLC, et al. v. Axis Insurance Company, et al.*, District Court of Oklahoma County, Oklahoma, Case No. CJ-2025-1270 ("Bad Faith Litigation"); and (ii) any equipment or other tangible personal property owned by the Debtor that is GPNB's collateral. GPNB reserves the right to pursue its secured interest in this collateral at a later time.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Relationship between the Debtor and GPNB**

7. GPNB is a national banking association that does business in Oklahoma and Texas. On or around December 16, 2019, GPNB, the Debtor, and the Debtor's principal, Clint Meadors ("Meadors"), entered into that certain Business Loan Agreement for Loan No. 705244044 (hereinafter, the "Loan Agreement") to effectuate the purchase of a large quantity of digging mats for the Debtor's business. Claim No. 13 at 11-14.

8. The Debtor executed that certain Promissory Note dated December 16, 2019 ("Prior Note"), in connection with the Loan Agreement. *Id.* at 15-17.

9. On or about September 30, 2020, for good and valuable consideration, the Debtor executed and delivered to GPNB that certain Promissory Note payable to GPNB in the face amount of $5,786,839.90 (the "Note"), as a modification to the Prior Note. *Id.* at 18-20.

2

10. To secure payment on the Note, GPNB and the Debtor also entered into a Commercial Security Agreement on September 30, 2020 ("Security Agreement"). *Id.* at 30-35. The Security Agreement granted GPNB a security interest in the all the Debtor's assets, including but not limited to equipment, accounts, inventory, instruments, general intangibles, investment property, chattel paper, titled vehicles, deposit accounts, whether then owned or thereafter acquired, and the proceeds thereof. *Id.* at 30.

11. On October 11, 2023, after default by the Debtor, GPNB and the Debtor entered into that certain Loan Modification Agreement, which modified the Loan, the Prior Note, and the Note. *Id.* at 21-28.

12. Additionally, pursuant to the Loan Modification Agreement, the Debtor entered into that certain Amended and Restated Commercial Real Estate Mortgage dated October 11, 2023 ("Mortgage"). In the Mortgage, the Debtor granted GPNB a mortgage covering, *inter alia*, the Debtor's real property in Okfuskee County, Oklahoma, together with all improvements thereon. *Id.* at 39-59. This includes the following real property (hereinafter, the "Business Real Property"):

THAT PART OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4) OF SECTION TWENTY-FIVE (25), TOWNSHIP ELEVEN (11) NORTH, RANGE NINE (9) EAST OF THE INDIAN MERIDIAN, OKFUSKEE COUNTY, STATE OF OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4); THENCE ON A GRID BEARING OF N00 DEGREES 59'49"E ALONG THE EAST LINE OF SAID SOUTHEAST QUARTER OF THE NORTHWEST QUARTER (SE/4 NE/4) A DISTANCE OF 25.00 FEET; THENCE S89 DEGREES 20'31"W ON A LINE PARALLEL WITH THE SOUOTH LINE OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER (SE/4 NE/4) A DISTANCE OF 50.00 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF PRESENT STATE HIGHWAY NO. 27 AND THE POINT OF BEGINNING; THENCE CONTINUING S89 DEGREES 20'31"W A DISTANCE OF 330.51 FEET; THENCE N00 DEGREES 49'06"E A DISTANCE OF 681.44 FEET; THENCE N89 DEGREES 20'31"E A DISTANCE OF 308.92 FEET TO A POINT ON THE WEST RIGHT OF WAY LINE OF PRESENT STATE HIGHWAY NO. 27; THENCE S00 DEGREES 59'49"E ALONG SAID WEST RIGHT OF WAY LINE A DISTANCE OF 681.25 FEET TO THE POINT OF THE BEGINNING, CONTAINING 5.00 ACRES. AND

```
COMMENCING AT THE SE/C SE SW; THENCE S89DEG48'43"W 745' TO THE POB; THENCE N00DEG21'00"W 100';
THENCE N45DEG51'27"E 180.09'; THENCE N00DEG21'00"W 944.97'; THENCE N59DEG16'00"W 291.91'; THENCE
S89DEG48'45"W 455.56'; THENCE S00DEG20'40"E 1319.98'; THENCE N89DEG48'43"E 575.69' TO THE POB & THAT
PART OF THE SW SW LYING SOUTH OF THE NORTH CANADIAN RIVER & NW SW SOUTH OF THE RIVER, LESS AND
EXCEPT A 10 ACRE TRACT 24-10-9 BEARDEN TWP 1969 MELODY 12X50 VIN #8958 OTC #601899054002 (STG
VALUE) 19.24 Acres
```

13. The Mortgage was recorded on October 17, 2023, in the office of the Okfuskee County Clerk as Document No. 2023-475391 in Book 001327 at Pages 0358-0378. *Id.* at 39-59.

14. The Business Real Property totals approximately 24.24 acres valued at $420,000.00. *Id.* at 3.

15. The Debtor failed and refused to pay the Note in accordance with the terms of the Loan Modification Agreement. The Debtor is in default under the terms of the Loan Modification Agreement because the Debtor failed to make monthly installments when due and failed to pay the indebtedness owed under the Note. Additionally, the Debtor failed to provide monthly financial documentation as required by the terms of the Loan Modification Agreement.

16. As of the Petition Date, the Debtor was indebted to GPNB in the amount of $4,582,159.45, which consisted of $3,880,689.55 in principal, $563,566.91 in accrued interest, $129,510.28 in fees, and $8,392.71 in late charges. Claim No. 13 at 2.

17. The Debtor's principal, Meadors, was a guarantor of the Note and a Mortgagor under the Mortgage. The Mortgage secured approximately 520 acres of real property owned by Meadors individually in addition to the Business Real Property. The District Court of Okfuskee County entered orders confirming the Sherrif's Sale of Meadors' properties on June 20, 2025, in the amount of $930,000.00 and $421,000.00, respectively.[1]

---

[1] These sheriff sales were authorized by this Court's Order entered September 5, 2024, wherein GPNB was granted relief from the automatic stay to pursue its claims against Meadors and his individual property in the State Court Litigation. Doc. No. 36 at 2.

18. After applying the proceeds and credit bid from the sales of Meadors' property, GPNB's claim against the Debtor has been reduced to $3,726,046.59 plus, to the extent permitted by 11 U.S.C. § 506(b), reasonable attorneys' fees and costs and interest accruing thereon at a rate of $352.81 per diem until paid. GPNB will be filing an Amended Proof of Claim in this case to reflect this change.

II. **The State Court Litigation, the Insurance Proceeds, and the Bankruptcy Case**

19. On June 6, 2024, GPNB commenced an action in the District Court of Okfuskee County, Oklahoma against the Debtor, Meadors, and others, styled *Great Plains National Bank v. CM Heavy Machinery, LLC et al.*, Case No. CJ-2024-34. In the State Court Litigation, GPNB sought judgment against Debtor and Meadors and to foreclose on the collateral secured by the Security Agreement and the Mortgage. **Exhibit 1**, Verified Petition. Concurrently with the filing of the Verified Petition, GPNB filed in the State Court Litigation an Application for Temporary Restraining Order, Writ of Replevin, and Temporary Injunctive Relief (the "Application"). **Exhibit 2**, Application.

20. A hearing on the Application was scheduled in the State Court Litigation on August 8, 2024, at 9:30 a.m. The morning of the hearing, the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code ("Petition Date"). Doc. No. 1. The Petition was filed the morning of the hearing in the State Court Litigation because the Debtor stood to "lose most—if not all—of its property" to GPNB at the hearing. Doc. No. 56 at 3.

21. The Debtor's Schedules grossly inflate the value of the Debtor's Business Real Property. He contends the Business Real Property—approximately 24.24 acres in Okfuskee County, Oklahoma—is worth $1,315,000.00. *Id.* at 7.

22. The bulk of the value of the Debtor's estate lies in the proceeds of the Bad Faith Litigation, which is an outstanding insurance claim—and its accompanying litigation—that stems

5

from a result of a fire in North Carolina in August 2023. *See id.* at 8. The Debtor alleges the value of this insurance claim exceeds $12 million dollars. *See id.*

23. The Debtor operated as a debtor in possession for eight (8) months. On June 27, 2025, the Court entered an Order of Conversion converting the case to a chapter 7 case. Doc. No. 184. Kelley Loud was subsequently appointed as the Chapter 7 trustee in the case ("Trustee").

**ARGUMENT AND AUTHORITY**

**I. The Court should lift the automatic stay so that GPNB may proceed with recovering the Business Real Property in the State Court Litigation.**

24. Under 11 U.S.C. § 362, "the court shall grant relief" from the automatic stay if: "the debtor does not have an equity in such property;" and (i) "such property is not necessary to an effective reorganization."[2] The Bankruptcy Code imposes the burden of proof on all issues—except for whether the Debtor has equity in property—on the party opposing relief from the automatic stay.[3]

25. Accordingly, a movant need only make "an initial showing" for relief from the automatic stay.[4] Upon doing so, "the burden shifts to the debtor to go forward with evidence, and ultimately, to prove that the collateral is not declining in value, or that the secured party is

---

[2] 11 U.S.C. § 362(d).

[3] *See* 11 U.S.C. § 362(g) ("In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section— (1)the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues.").

[4] *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("Section 362(d)(1) requires an initial showing of cause by the movant … . If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("While section 362(g) allocates the burden of ultimate persuasion, under either ground, the movant must still make a prima facie showing that it is entitled to the relief that it seeks."); *see, e.g.*, *In re Lakota Canyon Ranch Dev. LLC*, Case No. 11-26157 HRT, 2012 WL 243741, at *4 (Bankr. D. Colo. Jan. 25, 2012) (shifting the burden of proof to the debtor).

6

adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization."[5]

26. With respect to the debtor's equity, courts have held that—for the purposes of Section 362(d)(2)—a debtor has no equity in property if the debts secured by liens on the property exceed its value.[6] Once this is established, the burden is on the debtor to demonstrate that property is necessary to an effective reorganization.[7] As acknowledged by the Supreme Court in *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, this burden is steep. It requires "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'"[8]

27. Here, granting this Motion is appropriate under § 362(d)(2). To begin, the Debtor has no equity in the Business Real Property. The Debtor has previously asserted that the Business Real Property, which equates to approximately 24.24 acres in Okfuskee County, Oklahoma, is

---

[5] *In re ELMIRA LITHO, INC.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (collecting cases). *See also, e.g., In re Vita Craft Corp.*, 625 B.R. 491, 504 (Bankr. D. Kan. 2020) ("The ultimate burden of establishing that BMO's interest in the Collateral is adequately protected thus shifts to [the debtor].").

[6] *In re Indian Palms Assocs., Ltd*, 61 F.3d 197, 209 n.17 (3d Cir. 1995) ("Under the proper equity calculation, the outstanding liens against the property exceed the current stipulated value of the property and the debtor thus retains no equity in the property."); *Sutton v. Bank One, Texas, N.A.*, 904 F.2d 327, 329 (5th Cir. 1990) ("'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it."); *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984) ("The majority has adopted the definition relied upon by the bankruptcy court below: that 'equity' refers to the difference between the value of the property and all encumbrances upon it.").

[7] *Timbers of Inwood Forest Assocs.*, 484 U.S. at 375-76; *accord In re Anthem Cmtys./RBG, LLC*, 267 B.R. at 871.

[8] *Timbers of Inwood Forest Assocs.*, 484 U.S. at 375-76 (emphasis in original).

7

worth $1.2 Million dollars. There is no basis in fact for this assertion. Based on publicly available information from the County Treasurer's office, the Business Real Property is worth approximately $420,000.00. In either instance, the value of the Business Real Property is significantly less than GPNB's $3,726,046.59 lien against it. Further, the Business Real Property is not necessary for an effective reorganization. This is a chapter 7 liquidation; the Debtor's business will not be rehabilitated. Relief from the stay is warranted so that GPNB can proceed against the Business Real Property in the State Court Litigation.

28. Furthermore, the Court should provide relief from the automatic stay effective immediately by lifting the fourteen (14) day stay imposed by Fed. R. Bankr. P. 4001(a)(4). The Debtor's principal, Meadors, has demonstrated a disregard for these chapter 7 proceedings. *See* Doc. No. 239, Motion for Contempt. Though the Trustee currently has the property secured, immediate relief from the automatic stay is necessary to ensure GPNB can promptly take control of the Business Real Property without interference by Meadors and without exposing the Business Real Property to the risk of vagrancy and vandalism.

II. **The Court should order the Trustee to abandon the Business Real Property and the Business Assets.**

29. Under the Bankruptcy Code, "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."[9] This requires a finding that "1) the property is burdensome to the estate; *or*, 2) the property is both of inconsequential value *and* inconsequential benefit to the estate."[10] This reflects the "trustee's purpose . . . to

---

[9] 11 U.S.C. § 554(b).

[10] *In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 245 (6th Cir. 1987) (emphasis in original); *Prime Lending II, LLC v. Buerge (In re Buerge)*, Nos. KS-12-074, KS-12-077, KS-12-078, KS-13-022,

8

Case 24-80617    Doc 243    Filed 10/27/25    Entered 10/27/25 08:44:35    Desc Main
Document      Page 8 of 10

liquidate the estate for the benefit of unsecured creditors."[11] In these circumstances, courts compel the abandonment of real or personal property when properties' security interests exceed their value.[12]

30. The Court should compel the Trustee to abandon the Business Real Property. As discussed above, the value of each of these assets is less than GPNB's security interests in the same. Accordingly, the Court should find that the Business Real Property is of inconsequential value and provides no benefit to the estate. Abandoning the Business Real Property is appropriate.

## CONCLUSION

Based on the foregoing, Great Plains National Bank respectfully requests that the Court enter an Order: (i) granting this Motion; and (ii) lifting the automatic stay, without the fourteen (14) day stay imposed under Fed. R. Bankr. P. 4001(a)(4), with respect only to the Business Real Property so that Great Plains National Bank may continue the collection action in District Court of Okfuskee County, Oklahoma, Case No. CJ-2024-34; (iii) compelling the abandonment of the Business Real Property; and (iv) providing such other and further relief the Court deems just and proper.

---

KS-13-023, KS-13-024, KS-13-025, 2014 Bankr. LEXIS 1264, at *65 n.129 (B.A.P. 10th Cir. Apr. 2, 2014).

[11] *In re K.C. Mach. & Tool Co.*, 816 F.2d at 245-46.

[12] *See, e.g.'s*, *Chase Manhattan Bank v. Edmondson (In re Cunningham)*, 48 Bankr. 509 (Bankr. M.D. Tenn. 1985) ("There seems to be no dispute that the remaining balance of the First Federal mortgage exceeds the value to the estate of the Marshall tract. Thus, there is no equity in the tract and the trustee is ordered to abandon this property which is 'of inconsequential value and benefit to the estate.'" (quoting 11 U.S.C. § 544)); *Continental Bank v. Freehling (In re Karl A. Neise, Inc.)*, 31 Bankr. 409 (Bankr. S.D. Fla. 1983) (ordering abandonment of personal property because "the estate has no equity in the property pledged by the Debtors); *In re Anspach*, 13 Bankr. 208 (Bankr. E.D. Pa. 1981); *In re Brannan*, 5 Bankr. 505 (D.V.I. 1980) (abandoning property when the party admitted "that the total amount of liens on the property exceeds the fair market value of the property").

Dated: October 28, 2025.				Respectfully submitted,

**HALL, ESTILL HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/Connor M. Andreen*
Steven W. Soulé, OBA No. 13781
Christopher J. Gnaedig, OBA No. 33892
Connor M. Andreen, OBA No. 35047
521 East 2nd St., Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: ssoule@hallestill.com
Email: cgnaedig@hallestill.com

-and-

Daniel V. Carsey, OBA No. 21490
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: dcarsey@hallestill.com

**ATTORNEYS FOR GREAT PLAINS NATIONAL BANK**