# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1   C M Heavy Machinery, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Eastern District of Oklahoma**

Case number:  **24–80617**

FILED

**U.S. Bankruptcy Court**
**Eastern District of Oklahoma**

2/26/2025

**Bonnie N. Hackler, Clerk**

Official Form 410
# Proof of Claim

**04/24**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Komatsu Financial Limited Partnership

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Komatsu Financial Limited Partnership

Name

Vedder Price P.C., Attn: Mitchell D. Cohen, Esq.
1633 Broadway, 31st Floor
New York, NY 10019

Contact phone _____ (212) 407–6980 _____

Contact email
_____ mcohen@vedderprice.com _____

Uniform claim identifier (if you use one):
_____

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Case 24-80617   Claim 295-1   Filed 02/26/25   Entered 04/08/26 13:18:54   Page Desc3
Exhibit A    Page 2 of 27

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 63890.51 | **Does this amount include interest or other charges?**<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned – See Attached

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe: Equipment See Attached

**Basis for perfection:** UCC Financing Statements

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | | |
|---|---|---|
| **Value of property:** | $ 63890.51 | |
| **Amount of the claim that is secured:** | $ 63890.51 | |
| **Amount of the claim that is unsecured:** | $ 0.00 | (The sum of the secured and unsecured amounts should match the amount in line 7.) |

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

| | | |
|---|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ | |

| | | |
|---|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ | |

Case 24-80617   Claim 295-1   Filed 02/28/25   Entered 04/08/26 18:11:54   Page 2 of 3
Exhibit A    Page 3 of 27

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No <br> ☐ Yes. *Check all that apply*: | | **Amount entitled to priority** |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ _____ |
| | | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    2/26/2025

MM / DD / YYYY

/s/  Jason Lee

Signature

Print the name of the person who is completing and signing this claim:

Name        Jason Lee

First name        Middle name        Last name

Title        Senior Operations Manager

Company        Komatsu Financial Limited Partnership

Identify the corporate servicer as the company if the authorized agent is a servicer

Address        8770 W Bryn Mawr Ave.

Number  Street

Chicago, IL 60631

City  State  ZIP Code

Contact phone    (847) 437–3581        Email    jason.lee@global.komatsu

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-80617 |
| C M Heavy Machinery, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## ADDENDUM TO PROOF OF CLAIM OF
## KOMATSU FINANCIAL LIMITED PARTNERSHIP

Komatsu Financial Limited Partnership ("Claimant") asserts this secured proof of claim (this "Proof of Claim") against C M Heavy Machinery, LLC ("Debtor") pursuant to the following three (3) Security Agreement – Conditional Sales Contracts (collectively, as amended, restated, supplemented or modified from time to time, the "Finance Agreements"), by and between Claimant (as assignee of Kirby-Smith Machinery, Inc.) and Debtor, pursuant to which Debtor granted to Claimant a first priority lien on and security interest in the equipment more specifically described in the Finance Agreements, and summarized below, together with all present attachments, accessories, replacement parts, additions and all proceeds thereof (collectively, the "Financed Equipment") and agreed to pay Claimant the amounts set forth therein:

| Agreement No. | Financed Equipment |
|---|---|
| Ending 012 | One (1) Komatsu D65PX-18 Crawler Dozer (S/N 90651) |
| Ending 013 | One (1) Komatsu D85PX-18 Crawler Dozer w/ Rockland Angle Blade (S/N 23074) |
| Ending 014 | One (1) Komatsu GD655-6 Motor Grader (S/N 60468) |

To perfect and notify others of its security interest in the Financed Equipment, Claimant filed UCC financing statements regarding the Financed Equipment with the State of Oklahoma (collectively, the "UCC Financing Statements").

True and correct copies of the Finance Agreements, Assignments, and UCC Financing Statements are attached hereto as **Exhibit 1**. [1]

## AMOUNT OF CLAIM

The amount due to Claimant as of August 8, 2024 (the "Petition Date") is no less than **$63,890.51** (as detailed in the chart below), plus all accrued and accruing taxes, fees, costs and all other amounts due and owing under the Finance Agreements, including, but not limited to accruing attorneys' fees and costs:

---

[1] Some of the exhibits have been redacted to remove certain confidential information of Debtor.

| Agreement No. | Unpaid Balance |
|---|---|
| Ending 012 | $1,187.85 |
| Ending 013 | $1,490.83 |
| Ending 014 | $61,211.83 |
| **TOTAL:** | **$63,890.51** |

Claimant reserves the right to amend, update and/or supplement this Proof of Claim at any time and in any respect and to assert any and all other claims of whatever kind or nature that it has, or it may have, against Debtor. The filing of this Proof of Claim shall not be deemed (i) a waiver or release of any claims or rights of Claimant, (ii) an election of remedy, (iii) a waiver of any past, present or future defaults or events of default, and/or (iv) a waiver or release of any setoff rights. Further, nothing contained herein shall be deemed or construed as a waiver of any administrative expense claims that Claimant has or may have against Debtor and Claimant retains the right to assert such claims. This Proof of Claim is filed without prejudice to the filing by Claimant or any other applicable party or additional proofs of claim with respect to any other liability or indebtedness.

# EXHIBIT 1

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | KIRBY-SMITH MACHINERY, INC.<br>6715 W. RENO<br>PO BOX 270360<br>OKLAHOMA CITY, OK 73127 | Quote No. ▮ |
|---|---|---|

**Buyer's Information**
C M HEAVY MACHINERY, LLC
111097 HWY 27
OKEMAH, OK 74859

Physical Location: 111097 HWY 27 OKEMAH, OK 74859

County: OKFUSKEE
State Charter Number: 3512150971
State of Registration: OK
Tax ID: ▮

County: OKFUSKEE
Telephone: 405-831-0831

### Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| KOMATSU | D65PX-18 | Crawler Dozer | | 90651 | $279,000.00 |

### Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Schedule of Payments | | | | | Statement of Transaction | | |
|---|---|---|---|---|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW. | | | | | 1. Sales Price | | $279,000.00 |
| | | | | | 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| | | | | | 3. Sales Tax | $0.00 | |
| | | | | | 4. Cash Price (1+2+3) | | $279,000.00 |
| Payments | Start Date | End Date | Payment | Total | 5. a. Cash Down Payment | $27,900.00 | |
| 47 | 01/27/2019 | 11/27/2022 | $5,239.58 | $246,260.26 | b. Net Trade In | $0.00 | |
| 1 | 12/27/2022 | 12/27/2022 | $5,239.74 | $5,239.74 | c. Less Insurance | $0.00 | |
| 48 | | | | $251,500.00 | Total Down Payment (5a+5b-5c) | | $27,900.00 |
| | | | | | 6. Net Cash Price (4-5) | | $251,100.00 |
| | | | | | 7. a. Lien & Filing Fees | $0.00 | |
| | | | | | b. Other Fees | $400.00 | |
| | | | | | Total Other Charges | | $400.00 |
| | | | | | 8. Amount Financed (6 + 7) | | $251,500.00 |
| | | | | | 9. Finance Charge (0.00%) | | $0.00 |
| | | | | | 10. Total of Payments (8 + 9) | | $251,500.00 |
| | | | | | 11. Total Time Price (4 + 7 + 9) | | $279,400.00 |

Date finance charge begins to accrue (if different than contract date)

Buyer's Initials _CM_

Case 24-80617 Claim 7-1 Part 2 Filed 04/02/25 Entered 04/02/26 13:18:54 Page 4 of 23
Case 24-80617 Doc 295 Filed 04/26/25 Entered 04/26/25 13:18:54 Desc
Exhibit A    Page 8 of 27

# KOMATSU FINANCIAL

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency    J. K. Mendors | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| 1-405·377-0006 | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:    Michelle<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Partner Names and Addresses (if applicable)**

Name                    Address                    Tax ID

Delinquency Charge: After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

Security Interest: In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

Location of Property: Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

ENTIRE AGREEMENT: BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.

### BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| | | |
|---|---|---|
| Buyer:    C M HEAVY MACHINERY, LLC | Effective Contract Date: | 12/27/2018 |
| By:                    Title | Salesman's Signature: | |
| Co-Signer: | Signature For Seller Approval: | |
| By:                    Title: | | |

Case 24-24681 Claim 7-15 Part 2 Filed 04/02/26 Entered 04/06/26 13:18:54 Page 6 of 23
Case 24-24681 Doc 129-5 Filed 04/02/25 Desc Exhibit A    Page 9 of 27

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it; f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List", "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

### 5. Seller's Remedies After Default; Consent to Enter Premises:

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

### 6. Waiver of Defaults; Exclusive Agreement:

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

### 7. Buyer's Agreements:

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default; c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the Indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the Insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the Insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

Case 24-80761 Claim 17-1 Part 2 Filed 04/02/25 Entered 04/06/26 18:54 Page 8 of 23
Exhibit A    Page 12 of 27

**KOMATSU FINANCIAL**

# SELLER'S ASSIGNMENT

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between C M HEAVY MACHINERY, LLC ("Buyer") and undersigned ("Assignor"), dated 12/27/2018 having a present unpaid balance of $251,500.00 covering D65PX-18S/N 90651 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

KIRBY-SMITH MACHINERY, INC.
(Assignor)

By:

Justin D. Young
VP, CFO

12/27/2018
(executed)

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

Case 24-24681 Claim 7-1 Part 2 Filed 04/02/26 Entered 04/02/26 13:18:54 Page 9 of 23
Exhibit A    Page 13 of 27

# KOMATSU FINANCIAL

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | KIRBY-SMITH MACHINERY, INC.<br>6715 W. RENO<br>PO BOX 270360<br>OKLAHOMA CITY, OK 73127 | Quote No. ███ |
|---|---|---|

**Buyer's Information**
C M HEAVY MACHINERY, LLC
111097 HWY 27
OKEMAH, OK 74859

Physical Location: 111097 HWY 27 OKEMAH, OK 74859

| County | OKFUSKEE | County: | OKFUSKEE |
|---|---|---|---|
| Telephone: | 405-831-0831 | State Charter Number: | 3512150971 |
| | | State of Registration: | OK |
| | | Tax ID: | ████ |

### Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| KOMATSU | D85PX-18 | Crawler Dozer | INCLUDES A ROCKLAND ANGLE BLADE | 23074 | $430,000.00 |

### Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

### Schedule of Payments

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 47 | 01/27/2019 | 11/27/2022 | $8,070.83 | $379,329.01 |
| 1 | 12/27/2022 | 12/27/2022 | $8,070.99 | $8,070.99 |
| 48 | | | | $387,400.00 |

### Statement of Transaction

| | | |
|---|---|---|
| 1. Sales Price | | $430,000.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $0.00 | |
| 4. Cash Price (1+2+3) | | $430,000.00 |
| 5. a. Cash Down Payment | $43,000.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $43,000.00 |
| 6. Net Cash Price (4-5) | | $387,000.00 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $400.00 | |
| Total Other Charges | | $400.00 |
| 8. Amount Financed (6 + 7) | | $387,400.00 |
| 9. Finance Charge (0.00%) | | $0.00 |
| 10. Total of Payments (8 + 9) | | $387,400.00 |
| 11. Total Time Price (4 + 7 + 9) | | $430,400.00 |

Date finance charge begins to accrue (if different than contract date)

Buyer's Initials _CM_

# KOMATSU FINANCIAL

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency  J. K. Meadors | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:  1-105-377-0000 | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |
| Phone#  Michelle | |

### Partner Names and Addresses (if applicable)

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER:** 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.

### BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer: C M HEAVY MACHINERY, LLC | Effective Contract Date: 12/27/2018 |
|---|---|
| By: _____ Title _____ | Salesman's Signature: |
| Co-Signer: | Signature For Seller Approval: |
| By: _____ Title: _____ | |

Buyer's Initials

Page 2 of 5    KF524R    ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

### 1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

### 2. Waiver of Defenses Acknowledgment; Place of Payment:

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

### 3. Buyer's Warranties and Representations:

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List", "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

### 4. Events of Default; Acceleration:

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

### 5. Seller's Remedies After Default; Consent to Enter Premises:

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

### 6. Waiver of Defaults; Exclusive Agreement:

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

### 7. Buyer's Agreements:

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default; c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"): all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

## 8. Insurance and Risk of Loss: Liability Insurance coverage for bodily and property damage caused to others is NOT included herein.

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts or risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the Insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the Insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

## 9. Miscellaneous:

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

Case 24-80617 Claim 17-1 Part 2 Filed 04/08/25 Desc Attachment 18:18:54 Page 14 of 23
Exhibit A     Page 18 of 27

**KOMATSU FINANCIAL**

**SELLER'S ASSIGNMENT**

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between C M HEAVY MACHINERY, LLC ("Buyer") and undersigned ("Assignor"), dated 12/27/2018 having a present unpaid balance of $387,400.00 covering D85PX-18S/N 23074 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

KIRBY-SMITH MACHINERY, INC.
(Assignor)

By:

Justin D. Young
VP, CFO

12/27/2018
(executed)

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

KF521R

Page 1 of 1

Case 24-80610 Claim 17-1 Part 2 Filed 04/08/25 Desc Attachment 13 18:18:54 Page 15 of 23
Case 24-80610 Doc 729 Filed 03/26/25 Entered 04/08/26 Page 15 of
Exhibit A    Page 19 of 27



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. _____

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

| Seller's Information | KIRBY-SMITH MACHINERY, INC.<br>6715 W. RENO<br>PO BOX 270360<br>OKLAHOMA CITY, OK 73127 | Quote No. ▉ |
|---|---|---|

**Buyer's Information**
C M HEAVY MACHINERY, LLC
111097 HWY 27
OKEMAH, OK 74859

| | | Physical Location | 111097 HWY 27<br>OKEMAH, OK 74859 |
|---|---|---|---|
| County | OKFUSKEE | County:<br>State Charter Number:<br>State of Registration:<br>Tax ID: | OKFUSKEE<br>3512150971<br>OK<br>▉ |
| Telephone | 4058310831 | | |

## Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| KOMATSU | GD655-6 | Motor Grader | | 60468 | $234,441.69 |

## Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

### Schedule of Payments

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 47 | 05/26/2021 | 03/26/2025 | $3,692.54 | $173,549.38 |
| 1 | 04/26/2025 | 04/26/2025 | $3,692.31 | $3,692.31 |
| 48 | | | | $177,241.69 |

### Statement of Transaction

| | | |
|---|---|---|
| 1. Sales Price | | $234,441.69 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $0.00 | |
| 4. Cash Price (1+2+3) | | $234,441.69 |
| 5. a. Cash Down Payment | $57,600.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $57,600.00 |
| 6. Net Cash Price (4-5) | | $176,841.69 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $400.00 | |
| Total Other Charges | | $400.00 |
| 8. Amount Financed (6 + 7) | | $177,241.69 |
| 9. Finance Charge (0.00%) | | $0.00 |
| 10. Total of Payments (8 + 9) | | $177,241.69 |
| 11. Total Time Price (4 + 7 + 9) | | $234,841.69 |

Date finance charge begins to accrue (if different than contract date)

Page 1 of 5   KF524R   ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)   Buyer's Initials X CM



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |

Physical Damage Insurance Covering The Property Is Required.

Physical Location:

BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R SUBMITTED WITH THIS CONTRACT.

Insurance Agency *Multi County Insurance Shawnee, OK*

*ARA Insurance 273*

Contact: *Shawnee Kaden Booles 273-2720*

Phone# *KB Kaden Booles*

BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.

THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.

IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE:

**Partner Names and Addresses (if applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer: C M HEAVY MACHINERY, LLC | | Effective Contract Date: | 04/26/2021 |
|---|---|---|---|
| By: | Title *Pres.* | Salesman's Signature: | |
| CoSigner: | | Signature For Seller Approval: | |
| By: | Title: | | |

Case 24-80617 Claim 7-1 Part 2 Filed 04/08/25 Desc Exhibit A Page 21 of 27
Case 24-80617 Doc 295 Filed 04/26/25 Entered 04/06/26 13:18:54 Page 15 of 23



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

**Conditional Terms and Conditions:**

### 1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature. it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

### 2. Waiver of Defenses Acknowledgment; Place of Payment:

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

### 3. Buyer's Warranties and Representations:

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions", The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

### 4. Events of Default; Acceleration:

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a)  any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b)  Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c)  Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d)  it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e)  any of the property is lost or destroyed;
(f)  a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g)  property of Buyer be attached or a receiver be appointed for Buyer;
(h)  whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i)  any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

### 5. Seller's Remedies After Default; Consent to Enter Premises:

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

### 6. Waiver of Defaults; Exclusive Agreement:

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

### 7. Buyer's Agreements:

Buyer agrees: a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials _CM_



Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

## 8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

## 9. Miscellaneous:

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

Case 24-80617    Claim 7-1 Part 2    Filed 04/08/26    Desc Attachment 18:18:54    Page 23 of 23
Exhibit A    Page 24 of 27

# KOMATSU    SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO:    KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re:    Security Agreement/Contract between C M HEAVY MACHINERY, LLC ("Buyer") and undersigned
("Assignor"), dated 04/26/2021 having a present unpaid balance of $177,241.69 covering
GD655-6 S/N 60468 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

KIRBY-SMITH MACHINERY, INC.

(Assignor)

Sign: _____

04/28/2021
(executed)

Name: Justin D. Young

Title: CFO - VP

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

KF521R

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

2017021702016215O UC1
02/17/2017 09:29:23 AM
Book:   Page:0
PageCount:1
Filing Fee:$10.00
Doc. Tax:$.00
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
David B. Hooten

A. NAME & PHONE OF CONTACT AT FILER(optional)
PSALUJA   713-533-4661

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT LIEN SOLUTIONS
P.O. Box 29071

Glendale, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME; Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME   C M HEAVY MACHINERY, LLC | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS   12712 ARROWHEAD DRIVE | CITY   OKEMAH | STATE   OK | POSTAL CODE   73120 | COUNTRY |
|---|---|---|---|---|

2. DEBTOR'S NAME; Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any word of the Debtor's name).

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. SECURED PARTY'S NAME:(or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY ): Provide only one Secured Party name ( 3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME   KOMATSU FINANCIAL LIMITED PARTNERSHIP | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS   1701 W. Golf Rd. Ste 1-300 | CITY   Rolling Meadows | STATE   IL | POSTAL CODE   60008 | COUNTRY |
|---|---|---|---|---|

4.COLLATERAL: This FINANCING STATEMENT covers the following collateral:

New or used construction, utility, mining, industrial, forestry, forklift and/or lift truck equipment and machines and all attachments related to any of the foregoing (in each case, of any manufacturer), sold and/or specifically financed by secured party, or leased by the debtor from the secured party, Â including any such equipment, machines and attachments held by debtor as inventory for sale or lease, and all replacements, substitutions, trade-ins, accessions and repairs of or to any of the foregoing and all proceeds of any of the foregoing, including, without limitation, all accounts, contract rights, chattel paper and general intangibles arising out of the sale, lease or other disposition of any of the foregoing.

| 5. Check only if applicable and check only one box: Collateral is | held in a Trust (see instructions) | being administered by a Decedent's Personal Representative |
|---|---|---|

6a. Check only if applicable and check only one box:  ☐ Public- Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b.Check only if applicable and check only one box  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA

**UCC FINANCING STATEMENT (FORM UCC1) (REV. 11/01/15)**

2022012502008220
01/25/2022 01:27:18 PM  Pgs: 1
Fee: $10.00
David B. Hooten, County Clerk
Oklahoma County - State of Oklahoma



# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

WOLTERS KLUWER LIEN SOLUTIONS (800) 331-3282
UCCFILINGRETURN@WOLTERSKLUWER.COM
P.O. BOX 29071
GLENDALE,CA
91209

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 2017021702016 2150 | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9. For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of the these two boxes:                                  **AND Check one of these three boxes to:**

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address complete item 6a or 6b and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b.

6. CURRENT RECORD INFORMATION: Complete for Party Information Change-provide only one name(6a or 6b)(use exact, full name:do not omit.modify or abbreviate any word in the Debtor's name)

| OR | 6a. ORGANIZATION'S NAME CM HEAVY MACHINERY LLC | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:Complete for Assignment or Party Information Change - provide only one name(7a or 7b)(use exact,full name;do not omit,modify, or abbreviate any word in the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | FIRST PERSONAL NAME | | | |
| | ADDITIONAL NAME(S)/INITIAL(S) That are part of the name of this Debtor | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** *Also check one of these four boxes:* ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b)(name of Assignor,if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing DEBTOR

| OR | 9a. ORGANIZATION'S NAME KOMATSU FINANCIAL LIMITED PARTNERSHIP | | | |
|---|---|---|---|---|
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10.OPTIONAL FILE REFERENCE DATA

**FILING OFFICE COPY - UCC FINANCING STATEMENT AMENDMENT(FORM UCC3) (REV. 11/01/15)**