# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In Re:** | ) |
| | ) |
| **CM HEAVY MACHINERY, LLC** | ) **Case No. 24-80617** |
| | ) **Chapter 7** |
| | ) |
| **Debtor.** | ) |

## NOTICE OF ISSUANCE OF SUBPOENA INA BANKRUPTCY CASE

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 45, made applicable by Fed. R. Bank. P. 9016, on May21, 2026, Kelley G. Loud, Chapter 7 Trustee in the above-captioned chapter 7 case, by and through its counsel of record, caused a subpoena *duces tecum* (the "Subpoena") to be issued on Janae L. Wright and associated accounting firm. A copy of the Subpoena is attached hereto as Exhibit 1.

Dated May 21, 2026.

Respectfully submitted:

_/s/ Kelley G. Loud_____
Kelley G. Loud, OBA #15808
kloud@titushillis.com
**TITUS HILLIS REYNOLDS LOVE**
15 East Fifth Street, Suite 3700
Tulsa, Oklahoma 74103
(918) 587-6800 FAX: (918) 587-6822
*Attorney for Chapter 7 Trustee*

## Certificate of Service

I certify that on May 21, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Oklahoma.

_/s/ Kelley G. Loud_____
Kelley G. Loud

**EXHIBIT 1**

# UNITED STATES BANKRUPTCY COURT

_____EASTERN_____ District of ___OKLAHOMA___

In re ___CM Heavy Machinery LLC___
Debtor

Case No. __24-80617__

_(Complete if issued in an adversary proceeding)_

Chapter _7_

_____
Plaintiff
v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: _____Janae L. Wright and associated accounting firm_____
_(Name of person to whom the subpoena is directed)_

[X] _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Schedule A

| PLACE   Kelley G. Loud, Chapter 7 Trustee, c/o Titus Hillis Reynolds Love 15 East Fifth Street, Suite 3700, Tulsa, Oklahoma 74103 | DATE AND TIME June 5, 2026 |
|---|---|

[ ] _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5/21/2026

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

_____
Attorney's signature

The name, address, email address, and telephone number of the attorney representing _(name of party)_ _____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**SCHEDULE A**

**<u>DEFINITIONS APPLICABLE TO ALL REQUESTS</u>**

1.  "Debtor" means C M Heavy Machinery, LLC, including any predecessors, successors, subsidiaries, divisions, joint ventures, and affiliates, and all present and former officers, directors, members, managers, employees, agents, and representatives acting or purporting to act on its behalf.

2.  "CPA" or You means Janae L. Wright and/or associated accounting firm, including its current and former partners, members, principals, directors, officers, employees, contractors, agents, and anyone acting or purporting to act on its behalf.

3.  "Documents" has the broadest meaning allowed under Fed. R. Civ. P. 34 and Fed. R. Evid. 1001 and includes all written, printed, typed, recorded, graphic, or electronically stored matter, drafts, non-identical copies, and metadata.

4.  "Communications" means any transmission of information, including emails, letters, memoranda, text messages, chat messages, notes of conversations, voicemails and voicemail transcripts, and messages on collaboration platforms.

5.  "ESI" means electronically stored information, including but not limited to emails, native files, spreadsheets, databases, accounting system data, text messages, chat logs, and associated metadata.

6.  "Engagement" means any retention, agreement, or understanding—formal or informal— under which CPA provided services to or for the benefit of the Debtor.

7.  "Workpapers" means all materials created, obtained, or maintained by CPA in connection with an Engagement, including audit, review, compilation, tax, bookkeeping, agreed-upon

procedures, consulting, and advisory workpapers, and all supporting schedules and source documents.

8.  "Financial Statements" means any balance sheets, income statements, statements of cash flows, statements of owners' equity, and accompanying notes, whether audited, reviewed, compiled, or prepared for internal or external use.

9.  "Tax Returns" means any federal, state, or local tax returns, schedules, statements, and attachments; extensions; amended returns; informational returns; and e-file authorization forms (e.g., Forms 8879), together with all supporting workpapers and correspondence with taxing authorities.

10. "General Ledger" means the Debtor's complete ledger of accounts for all periods, including chart of accounts, subledgers, journals, and any mapping tables.

11. "Trial Balance" means any pre-closing or post-closing trial balances, year-end or period-end adjusting and reclassifying entries, and supporting detail.

12. "Bank Reconciliations" means all bank reconciliation workpapers and supporting documents, including bank statements, cancelled checks, check images, deposit slips, ACH/wire confirmations, and reconciliation summaries.

13. "Fixed Asset Schedule" means detailed fixed asset listings, rollforwards, additions and disposals, depreciation schedules, and book/tax depreciation workpapers.

14. "Inventory" means any records or workpapers concerning the Debtor's inventory, including listings, counts, valuations, costing, write-downs, and adjustments.

15. "A/R" means accounts receivable records, including customer listings, agings, reconciliations, credit memos, write-offs, and collection notes.

16. "A/P" means accounts payable records, including vendor listings, agings, reconciliations, credit/debit memos, and write-offs.

17. "Payroll" means payroll registers, employee/payee listings, wage detail, benefits, withholdings, payroll tax returns and filings, and related workpapers.

18. "1099/W-2" means all Forms 1099, W-2, W-3, 1096, and related support and correspondence.

19. "Budgets/Forecasts" means budgets, forecasts, projections, cash flow models, and any variance analyses or management reports comparing actual results to budget/forecast.

20. "Valuations" means any valuation, solvency analysis, going-concern assessment, impairment testing, or similar analyses or memoranda.

21. "Litigation/Bankruptcy Support" means any Documents or Communications prepared or provided in connection with threatened or actual litigation, arbitration, investigations, or this bankruptcy case, including materials relating to the Debtor's schedules and statements.

Date Range: January 1, 2022, to present.

## GENERAL INSTRUCTIONS

1. Form of Production: Produce all Documents, including bank and credit card statements, static statements, emails (with their attachments), Communications, Workpapers, Financial Statements, Tax Returns and related materials, ledgers, journals, reconciliations, payroll and information returns, fixed asset materials, inventory materials, budgets/forecasts, valuations/going-concern materials, irregularities/controls materials, lender/banking reporting, bankruptcy filing support, insurance/casualty materials, and third-party bookkeeping materials, as searchable PDF files.

2. ESI and Metadata: Preserve and produce available system metadata for all ESI (e.g., created/modified dates, authors, file paths) either embedded in the PDF or via an accompanying metadata load file; do not alter metadata during conversion.

3. Accounting System Data: For accounting software used for or on behalf of the Debtor (e.g., QuickBooks, Sage, Xero), produce: (a) reports exported to PDF for non-spreadsheet materials; and (b) any spreadsheets or spreadsheet-based exports (including general ledger detail, trial balances, journals, customer/vendor lists, and item lists) in native Excel format with formulas and metadata intact; identify the software name, version, hosting method, and any third-party plug-ins in PDF.

4. Organization: Segregate productions by individual Request number and provide, in PDF, a listing of custodians and systems searched, search terms used, and date ranges applied; maintain email attachment relationships when organizing by Request.

5. Privilege: If withholding materials based on privilege, provide a contemporaneous privilege log in PDF identifying for each item: date, author, recipients (with roles), general subject matter, privilege asserted, and the specific Request(s) to which it is responsive.

6. Completeness: If a Document cannot be produced in full, produce it to the extent possible in PDF (or native for spreadsheets) and explain the limitation in PDF; if Documents were lost, destroyed, or are otherwise unavailable, state the circumstances, date, and persons with knowledge in PDF.

7. Business Records Declaration: Provide business-record certifications compliant with Fed. R. Evid. 902(11) and 803(6) for each category produced, in PDF.

8. Continuing Duty: These Requests are continuing; supplement productions on a rolling basis in accordance with the foregoing format requirements (PDF for all materials except native format for spreadsheets).

## REQUESTS FOR PRODUCTION
## ACCOUNTS IDENTIFICATION AND OPENING/KYC

1. Engagement and Compensation a. All Engagement letters, contracts, proposals, scope-of-services descriptions, and modifications relating to the Debtor. b. All invoices, billing statements, time records, and fee arrangements for services to or for the Debtor. c. All records of payments received from or on behalf of the Debtor, including payment method, date, and amount, and any accounts receivable ledgers reflecting the Debtor.

2. Communications a. All Communications between You and the Debtor, its principals, employees, or agents regarding accounting, bookkeeping, taxes, financial condition, cash flow, budgets, insolvency/solvency, going concern, audits/reviews/compilations, or this bankruptcy. b. All Communications with any lender, bank, or creditor (including Mabrey Bank and Great Plains Bank) concerning the Debtor's financial information, reporting packages, covenant compliance, borrowing base, collateral, or cash management. The Debtor disclosed a checking account at Mabrey Bank and disputed secured claims asserted by Great Plains Bank c. All Communications with the Debtor's counsel concerning preparation of financial statements, tax returns, bankruptcy schedules/statements, or amendments.

3. Tax Materials a. All Tax Returns (federal, state, local) prepared for the Debtor for tax years 2021 forward; all extensions, amended returns, e-file authorization forms, depreciation schedules, trial balances used for tax prep, and tying workpapers. b. All correspondence with taxing authorities regarding the Debtor, including notices, exams, inquiries, penalties, abatements, and payment

plans. c. All payroll tax filings (Forms 940/941/943/944, state equivalents) and related workpapers.

4. Financial Statements and Adjustments a. All Financial Statements You prepared, compiled, reviewed, or audited for any period; management representation letters; engagement quality control reviews; and management letters or internal control communications. b. All adjusting, reclassifying, closing, and top-side journal entries and supporting workpapers for each period.

5. Ledgers, Journals, and Supporting Records a. Complete General Ledger detail for all accounts and periods within the Date Range, in native format with account numbers, descriptions, and classes/departments. b. Chart of accounts, Trial Balances (pre- and post-close), and all journal entries (cash receipts, cash disbursements, sales, purchases, payroll, and general journals), with supporting documentation.

6. Cash and Banking a. Bank Reconciliations and workpapers for all accounts and months; bank statements; check images; deposit details; wire/ACH confirmations; and lists of outstanding checks and deposits in transit. b. Cash receipts and disbursements journals; petty cash logs; credit card statements and reconciliations.

7. Receivables and Payables a. A/R agings, customer master files, credit policies, write-off approvals, and notes/Communications relating to significant customers or disputes. b. A/P agings, vendor master files, vendor terms, write-off approvals, and notes/Communications relating to significant vendors or disputes.

8. Payroll and Information Returns a. Payroll registers, employee/payee listings, compensation summaries, benefits/deductions reports, and year-end wage records. b. 1099/W-2 files, transmittals, support, and any backup withholding documentation.

9. Fixed Assets and Depreciation a. Fixed Asset Schedules and rollforwards; capitalization policies; invoices and documentation of acquisitions; depreciation methodologies and tax/book differences. b. Records of asset dispositions, trade-ins, gains/losses, and like-kind exchanges, with supporting documents.

10. Inventory a. Inventory listings, counts, valuation methods, cost build-ups, obsolescence/write-down analyses, and any periodic or cycle count procedures and results. b. Any workpapers or Communications concerning inventory or materials related to the Debtor's operations, including assets affected by casualty events. The Debtor reports an insurance claim for oil mats lost to a fire in North Carolina valued at $12,596,813.68

11. Budgets, Forecasts, and Variances a. Budgets/Forecasts and projections prepared for or relating to the Debtor, including supporting assumptions and data. b. Variance analyses, management dashboards, KPI reports, and cash flow models.

12. Valuations and Going-Concern a. Any Valuations, solvency analyses, impairment testing, or going-concern assessments concerning the Debtor.

13. Irregularities and Controls a. Documents relating to any suspected fraud, misappropriation, irregularities, internal control deficiencies, restatements, or error corrections concerning the Debtor.

14. Banking and Lender Reporting a. All Documents provided to or received from any bank or lender relating to the Debtor, including account-opening packets, financial covenants, compliance certificates, borrowing base certificates, field exams, and periodic financial reporting packages. Mabrey Bank was identified as holding the Debtor's checking account with a reported balance of $114,331.61 on the petition date

15. Accounting Software and Data Exports a. Backup/archival exports and full native data sets from any accounting or payroll software used for or on behalf of the Debtor (e.g., full QuickBooks company file and password, audit trail, user lists, custom templates), together with read-only credentials if necessary to access hosted systems.

16. Bankruptcy Filings Support a. All Documents and ESI used or relied upon to prepare the Debtor's bankruptcy petitions, schedules, statements, monthly operating reports, or amendments, including drafts, support, and Communications with the Debtor or its counsel. The Debtor filed its voluntary petition and initial schedules on August 8, 2024 Amended Schedule A/B and related materials were later filed and supported by a declaration of Clint Meadors dated May 30, 2025

17. Insurance and Casualty a. Documents and workpapers concerning any casualty losses, insurance claims, or proceeds, including support for claimed values, inventories, and computations related to fire losses in North Carolina. The filings describe a large insurance claim stemming from the loss to fire of property stored in North Carolina and estimate its value in excess of $10 million

18. Third-Party Bookkeeping a. Documents reflecting the role, duties, and work product of any bookkeeper or third party who maintained the Debtor's books and records, and Communications with such persons regarding access to or quality of financial records. The filings state a dispute arose prepetition with the individual who maintained the Debtor's books and records, impacting record currency and reliability, and that the Debtor would seek to engage a third-party bookkeeper

19. Lender/Creditor Litigation Support a. Documents provided for, or generated in connection with, any litigation, arbitration, or governmental matters involving the Debtor's lenders or creditors, including Great Plains Bank and Caterpillar Financial, to the extent such Documents

were prepared, provided, or maintained by You. The Statement of Financial Affairs lists litigation involving Great Plains National Bank and Caterpillar Financial Services within one year before filing

20. Custodian and Systems Identification a. A list identifying all custodians, mailboxes, devices, and systems within Your control likely to contain responsive materials, including accounting, tax, payroll, document management, and email systems, and the date ranges for each.

Reservation of Rights All rights are reserved to modify or supplement these requests, and to seek additional relief or production based on materials produced or information learned in discovery.